CONNOLLY BOVE LODGE & HUTZ LLP
ATTORNEYS AT LAW

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

Jeffrey B. Bove
Partner

TEL (302) 888-6241
FAX: (302) 656-9072
EMAIL jbove@cblh.com
REPLY TO Wilmington Office

August 25, 2006

**VIA ELECTRONIC FILING**
The Honorable Gregory M. Sleet
United States District Court
844 North King Street
Lock Box 19
Wilmington, DE 19801

**REDACTED VERSION DI 76 FILED:**
**September 13, 2006**
**FILED UNDER SEAL**

**RE: Talecris Biotherapeutics, Inc. & Bayer Healthcare LLC v. Baxter International, Inc. and Baxter Healthcare Corp., C.A. No. 05-349-GMS**

Dear Judge Sleet:

**Introduction.** This motion presents precisely the circumstances that Rule 1.9 of the Rules of Professional Conduct was intended to prevent. On August 1, 2006, a retired in-house Bayer attorney who worked at Bayer's facility in Berkeley California, James A. Giblin, Esquire ("Giblin"), was deposed in this case by Defendants. To his complete surprise, the Baxter attorney deposing him was Susan M. Spaeth, managing partner of Townsend and Townsend and Crew LLP ("Townsend"). Ms. Spaeth was former counsel to Bayer with whom he worked closely in a case involving substantially related subject matter. Current Bayer representatives, recognizing the seriousness of the issue and the critical timing of its discovery, immediately investigated Mr. Giblin's concerns. On August 9, 2006, counsel for Bayer received documents which verified that Townsend and, in particular, Susan M. Spaeth, had indeed worked closely with Mr. Giblin in the prior litigation involving facts also asserted against Bayer by Baxter in the present case. The evidence establishes that the threat of prejudice to Bayer is not theoretical. Rather, it is actual prejudice, which in any jurisdiction, under any interpretation of Rule 1.9, mandates disqualification.

It is demonstrated in the attached Exhibits and Giblin Declaration that: (1) Townsend gained access through its representation of Bayer to highly confidential and attorney client communications and technical documents directly related to the technology in this case ("Giblin Dec." ¶¶ 18-24, Exhibit 1); (2) [REDACTED] (Giblin Dec. ¶ 12); (3) [REDACTED]; and, (4) Townsend acquired knowledge of individuals which Baxter has in the past few days now noticed for deposition in this case (e.g., Notice Of Deposition Of Gautram Mitra and Ralph Rousell; Exhibit

7)(Giblin Dec. ¶ 25). Finally, Townsend has variously asserted in this case as the closest prior art and grounds for invalidity of the patent in-suit, a Bayer patent, upon which Townsend previously filed suit as Bayer's counsel (Giblin Dec. ¶ 9; Exhibit 3 ¶ 2; Exhibit 4, BXTR015959).

Plaintiffs Talecris Biotherapeutics, Inc. ("Talecris") and Bayer Healthcare LLC ("Bayer") (collectively "Plaintiffs") have therefore moved (Exhibit 5) to disqualify the Townsend law firm and Susan M. Spaeth, Esquire ("Spaeth") from representing Defendants Baxter International Inc. and Baxter Healthcare Corporation (collectively "Baxter") based on the Rules of Professional Conduct, Rule 1.9. This is Plaintiffs letter brief in support.

**Facts**. Talecris sued Baxter for infringement of U.S. Patent No. 6,686,191 ("'191 Patent", Exhibit 6) awarded to William R. Alonzo on February 3, 2004. Baxter by Townsend, then sued Bayer in a counterclaim. Bayer Healthcare LLC is a wholly owned subsidiary of Bayer Corporation, formerly Miles Inc. ("Bayer Corp") (Exhibit 7). Talecris is the exclusive licensee of the '191 Patent and current owner of the worldwide plasma business of Bayer. The '191 Patent is assigned to Bayer, and was prosecuted by Giblin on behalf of Bayer. Claim 1 of the '191 Patent, the only independent claim, covers a method of treating a solution of antibodies to reduce virus activity and then incubating the solution "under conditions of controlled time, pH, temperature, and ionic strength, such that the increased anticomplement activity of the solution is reduced to an acceptable level suitable for intravenous administration."

In this case, Baxter asserts that the second step of the '191 Patent process which employs the conditions of low pH and ionic strength under controlled time and temperature as a means to reduce anticomplement activity ("ACA") in an immune globulin intravenous solution is obvious in view of another Bayer patent, U.S. Patent No. 4,396,608 ("Tenold Patent") (Exhibit 4). The Tenold Patent has been asserted by Baxter in this case to be the closest prior art and a basis of invalidity of the '191 Patent and its foreign counterpart.

**The Prior Case Handled by Townsend**. From sometime prior to June 1, 1992 (date of complaint) until at least January 15, 1993, Townsend represented Miles, Inc. ("Miles"). Townsend filed suit on behalf of Miles against Alpha Therapeutic Corporation, ("ATC") in the United States District Court for the Northern District of California, Civil Action Number C92 1975 VRW (the "ATC Case"). The ATC Case was an action for infringement, *inter alia*, of the Tenold Patent. (Giblin Dec. ¶ ¶ 9-11). ATC asserted in response to the complaint, non-infringement, invalidity, and unenforceability of the Tenold Patent in several defenses and counterclaims. (Exhibit 8).

Like the present matter, the ATC Case concerned immune serum globulin, which helps the human immune system fight off certain infectious diseases (e.g., hepatitis). Miles

contended, *inter alia*, that ATC was making and selling a product trademarked Venoglobulin-S® which infringed the Tenold Patent (Exhibit 9, p.2). A central issue in the ATC Case was the limitation in the Tenold Patent to a pH range of "about 3.5 – 5.0." Miles further contended that the Venoglobulin-S® product had a pH of 5.3, and that this pH was close enough to the stated range to be encompassed within the Tenold Patent claims directly or under the doctrine of equivalents. pH range also is at issue in the present litigation. (See attached Denial of Request to Admit Nos. 13, 14, Exhibit 10).

A stipulated Protective Order was entered in the ATC Case. Pursuant to the Protective Order, Giblin was designated as the representative of Miles to be given access to ATC confidential materials and to "closely monitor the progress of this action" on Mile's behalf. (Giblin Dec. ¶¶ 13,14) The ATC Case was ultimately settled by the parties and the suit dismissed. Ms. Spaeth was directly involved in litigation of the ATC Case on behalf of Miles (Giblin Dec. ¶¶ 17-26), executed pleadings in the case (Giblin Dec. ¶ 26) and reviewed Miles documents in preparation for deposition of Tenold. (Giblin Dec. ¶ 24).

In 1995, Miles Inc. was renamed Bayer Corporation. (Exhibit 7) Townsend was aware of the relationship of Bayer to Miles at least from the date of its first set of interrogatories (4/5/06), wherein it defined Bayer as including Miles (Exhibit 11). Ms. Spaeth took the deposition of Giblin in the current action on August 1, 2006. [redacted] . (Exhibit 12).

**<u>The Applicable Law</u>**. The court has inherent power to supervise the professional conduct of attorneys appearing before it. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir.1980). This power includes the authority to disqualify an attorney. *Id.* Pursuant to Local Rule 83.6(d)(2), the District of Delaware has adopted the Model Rules of Professional Conduct. Rule 1.9(a) provides, in pertinent part, that:

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing. *Id.*

Thus, the standard applicable to Rule 1.9 motions is the "substantial relationship" test. *Conley v. Chaffinch*, 431 F.Supp.2d 494, 496 (D.Del. 2006). The rule protects against "even the potential that a former client's confidences and secrets may be used against him"; maintaining "public confidence in the integrity of the bar"; and upholding the duty of loyalty that a client has the right to expect. *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 589 (3d Cir. 1999). In determining whether a "substantial relationship" exists, "the court need not, nor should it, inquire into whether an attorney actually acquired confidential information during the prior representation related to the current representation. Rather,

the court's primary concern is whether 'confidential information that might have been gained in the first representation [may be] used to the detriment of the former client in the subsequent action.' " *Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F.Supp. 1200, 1204 (E.D.Pa.1992), *quoting, Realco Services, Inc. v. Holt*, 479 F.Supp. 867, 871 (E.D.Pa.1979). As stated, in this case, Townsend and Spaeth actually acquired confidential information of Bayer.

In order to determine whether Townsend and Spaeth have violated Rule 1.9(a), there are three questions: (1) What was the nature and scope of the prior representation; (2) What is the nature of the present lawsuit; and (3) In the course of the prior representation, might the client have disclosed to its attorney confidences which could be relevant to the present action and, "[i]n particular, could any such confidences be detrimental to the former client in the current litigation?" *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F.Supp. 1281, 1283 (D.Del.1987). "[T]here is a substantial relationship between the two representations if facts pertinent to the problems for which the original legal services were sought *are relevant* to subsequent litigation." *United States Football League v. National Football League*, 605 F.Supp. 1448, 1459 (S.D.N.Y.1985) (emphasis added). Any doubts about whether disqualification is appropriate should be resolved in favor of the movant to ensure protection of client confidences. *INA Underwriters v. Nalibotsky, 594 F.Supp. 1199, 1207 (E.D.Pa.1984).*

**California Law Also Mandates Disqualification**. Townsend is a California law firm. Spaeth is a member of the California bar. The ATC Case was litigated in the U.S. District Court for the Northern District of California. For these reasons, California law is relevant to the disqualification analysis because it is under California law that Bayer's expectations of loyalty and confidentiality arose. California applies the "substantial relationship" test, but unlike Delaware, once a substantial relationship is established and the attorney's representation is such that confidences could have been exchanged, such confidences will be conclusively presumed to have been exchanged and disqualification is mandatory. Cal. R. Prof. Conduct, Rule 3-310 (current rule in effect since September 14, 1992); *Pour Le Bebe, Inc. v. Guess Inc.* 5 Cal.Rptr.3d 442, 112 Cal.App.4th 810 (App. 2 Dist. 2003), *review denied.* Under California law, Townsend and Spaeth should be disqualified. *See e.g. Hitachi, Ltd. v. Tatung Co.*, 419 F.Supp.2d 1158 (2006); *Flatt v. Superior Court*, 9 Cal.4th 275, 885 P.2d 950, 954, 36 Cal.Rptr.2d 537 (Cal. 1994).

**A Substantial Relationship Exists**. Disqualification of Townsend and Spaeth Pursuant to Rule 1.9 is absolutely necessary. Baxter cannot reasonably dispute that: (1) Townsend represented Miles in infringement litigation over the Tenold Patent and in the negotiation of the settlement which followed; (2) Bayer is Miles; (3) the pending action is materially adverse to Bayer Corp.; (4) Bayer Corp, Bayer and Talecris have refused to consent to such adverse representation; and (5) the issue was raised by Plaintiffs timely after the prior representation was uncovered. The only remaining issue is whether the

pending action is substantially related to Townsend's representation of Miles in the Alpha Therapeutic Case.

It is clear that the current litigation and the ATC Case are substantially related. Both cases arise from Bayer's protection of its patents in immune serum globulin technology. The Tenold Patent is central to the current matter as asserted prior art and An alleged basis for invalidity (Exhibit 3).

__**Information Disclosed and Now Used Against Bayer**__. More critically, as the attached documents and declaration confirm, in its position as litigation counsel for the ATC Case, Townsend and Spaeth were privy to confidential and attorney-client protected information of Miles. Townsend [redacted]. (Giblin Dec. ¶ 12).[1] [redacted]. (Giblin Dec. ¶ 21). These are matters directly at issue here. Further, Townsend conferred with Giblin about knowledgeable individuals which it now seeks to depose in the present case. (Giblin Dec. ¶¶ 22, 25).

A protective order was entered - indicating the presence of confidential and privileged information during the ATC Case. (Giblin Dec. Exhibit B) Given the similarity of the issues between the current matter and the prior case, other confidential information relevant to the present action and potentially detrimental to Bayer was disclosed to Townsend and Spaeth.

On the basis of the foregoing facts, Plaintiffs respectfully request that the Court enter an Order disqualifying Townsend and Spaeth.

Respectfully submitted,

*/s/ Jeffrey B. Bove*

JBB/llw

Jeffrey B. Bove (#998)

cc: Philip A. Rovner, Esquire (via e-filing & e-mail)
Susan Spaeth, Esquire (via e-mail)
Bradford J. Badke, Esquire (via e-mail)

487318_1

---

1 Substantial pre-suit investigation was required. The docket includes a Rule 11 certification by Townsend. (Exhibit 13).