# CONNOLLY BOVE LODGE & HUTZ LLP
### ATTORNEYS AT LAW

**Jeffrey B. Bove**
Partner

TEL (302) 888-6241
FAX: (302) 656-9072
EMAIL jbove@cblh.com
REPLY TO Wilmington Office

WILMINGTON, DE

The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
TEL: (302) 658 9141
FAX: (302) 658 5614
WEB: www.cblh.com

September 8, 2006

**VIA ELECTRONIC FILING**
The Honorable Gregory M. Sleet
United States District Court
844 North King Street
Lock Box 19
Wilmington, DE 19801

**REDACTED VERSION OF DI 107 FILED:**
**September 13, 2006**
**FILED UNDER SEAL**

RE:   **Talecris & Bayer v. Baxter, C.A. No. 05-349-GMS**

Dear Judge Sleet:

    In its response to Plaintiffs' Motion to Disqualify, Baxter argues that Plaintiffs raised Townsend's violation of Rule 1.9 as a litigation tactic. As shown below, this is incorrect. While Baxter asserts that disqualification will disrupt discovery and postpone trial, Plaintiffs have not requested a scheduling change. First, delay is not in Plaintiffs' interest. Second, Townsend's conflict was raised as soon as it became known. Third, this classic "blame the other guy" approach does not vitiate the actual prejudice to Plaintiffs caused by Townsend's ethical violation. Remarkably, Townsend does not contest the facts establishing the substantial relationship between the prior *Alpha* litigation and this case. As this chart demonstrates, Townsend and Ms. Spaeth had access to Bayer's confidential, privileged information in the prior *Alpha* litigation and this information is substantially related to the current litigation:

| TOPIC | *Talecris and Bayer v. Baxter* CURRENT LITIGATION | *Miles v. Alpha Therapeutics* PRIOR LITIGATION |
|---|---|---|
| Bayer | X | X |
| Gamimune®N | X | X |
| Gautam Mitra | X | X |
| Ralph Rousell | X | X |
| Robert Tenold | X | X |
| Jim Giblin | X | X |
| Joan Robertson | X | X |
| Confidential ▮▮▮▮ | X | X |

**Bayer**: Defendants themselves define Plaintiff/Counterdefendant Bayer HealthCare LLC as Miles Laboratories, Inc. in all of their discovery requests, including those served on August 30, 2006. Ex. 13, *see also* Ex. 11. Alonso, the inventor of the '191 patent-in-suit, worked at Miles on his invention during the time of the prior litigation.

**Gamimune®N**: Defendants recently propounded extensive discovery requests on Gamimune®N. Ex. 14 (Req. for Adm. Nos. 69-84; Inter. No. 35; Doc. Req. 127). Gamimune®N is Bayer's competitive product to the Venoglobulin-S accused product in the *Alpha* litigation. Ex.15 at 2. Townsend had access to confidential information pertaining to the manufacture and sale of Gamimune®N during its prior representation of Bayer, as evidenced by, *inter alia*, Townsend's privileged communications with Bayer analyzing the impact Venoglobulin-S sales would have on Bayer's Gamimune®N sales. Ex. 16 (Giblin noting that Gamimune®N information ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Ms. Spaeth also prepared a memo circulated to Bayer employees with instructions for document collection in the *Alpha* litigation, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 15 at 2.

The Honorable Gregory M. Sleet
September 8, 2006
Page 2

**Mitra**: Defendants subpoenaed Gautam Mitra on August 23, 2006. Ex. 17. On October 7, 1992, Ms. Spaeth sent confidential and privileged draft interrogatory responses, bearing her handwritten notes, to Mr. Giblin (whom she deposed on August 1, 2006) identifying Mitra as an individual whose files were searched in order to respond to Alpha's discovery requests. Ex. 18 at 4. Defendants seek the production of the same documents from Mitra's files in this litigation, in addition to his deposition. Exs. 2, 17.

**Rousell**: Defendants subpoenaed Ralph Rousell on August 23, 2006. Ex. 19. On October 7, 1992, Ms. Spaeth sent confidential and privileged draft interrogatory responses, bearing her handwritten notes, to Mr. Giblin identifying Ralph Rousell as a "person involved in the development of an immune serum globulin...on behalf of Cutter or Miles...." Ex. 18 at 6. Defendants are seeking the production of documents on this same subject matter from Rousell in this litigation, in addition to his deposition. Exs. 2,9.

**Tenold**: Defendants have asserted the Tenold patent as the closest prior art in this case. Exs. 3, 4. Townsend had access to confidential information from Robert Tenold himself during their prior representation of Bayer. The draft responses Ms. Spaeth sent to Mr. Giblin on October 7, 1992 indicate that ███████████████. Ex. 18 at 7. ███████████████. Ex. 20 (███████████████). Baxter's arguments confirm that Tenold is very much at issue here.

**Giblin**: Ms. Spaeth deposed Mr. Giblin in this litigation on August 1, 2006. Ex. 21. He prosecuted the '191 patent for Miles/Bayer. Giblin was the in-house attorney designated under the Protective Order in the *Alpha* litigation, and communicated and met with Townsend attorneys, including Ms. Spaeth, extensively throughout the *Alpha* litigation concerning confidential and privileged information. Ex. 18 at 1 (███████████████); see also Exs.1B, 15, 16, 20, 25.

**Robertson**: Ms. Spaeth deposed Joan Robertson, the Deputy Director of Regulatory Affairs, in this litigation on August 16, 2006. Ex. 22. During her deposition, Robertson testified that she was formerly a Quality Assurance Documentation Manager for Miles/Bayer. Ex. 23 at 8-10. This is the same information that Spaeth received from Giblin's assistant during her prior representation of Bayer in the *Alpha* litigation, and conveyed to Giblin in a memo regarding the location of documents to make available to Alpha for inspection. Exs. 24,25.

**Agreements**: Defendants requested and received ███████████████. Ex. 26. Defendants used them as deposition exhibits. Ex. 27. ███████████████. Ex. 28. Defendants also questioned Christine Hansen, Esq. and Giblin ███████████████ during their respective depositions. See Ex. 29 at 61-67; Ex. 30 at 180-81.

* * *

**Rebuttal**: Townsend suggests that the information it received is unimportant. This is belied by the facts. Townsend has noticed depositions of new witnesses and sought new discovery directed to the very issues it now denies are relevant to this action. While asserting that only the public disclosure of the Tenold and Mitra patents is relevant, Townsend ignores its demands in discovery for information underlying these same patents. In fact, Townsend demands documents reaching back to 1980 – the period of the Tenold patent application. Moreover, that Townsend may have obtained some publicly available information about the Tenold patent and other issues is of no consequence when a substantial relationship exists and Townsend was privy to privileged information. *NCK Organization Ltd. v. Bregman*, 542 F.2d 128, 134 (2d Cir. 1976).

Townsend asserts that Miles is not a party to this suit. Miles became Bayer Corp and Talecris acquired from Bayer the assets of its worldwide plasma business. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985). Bayer Healthcare is wholly owned by Bayer Corp, and may raise conflicts of interest on behalf of its parent, especially when, as here, the parent joins in the motion. *See In re Corn Derivatives Antitrust Litigation*, 748 F.2d 157, 162 (3d Cir. 1984); *see also*, Restatement 3d Law

The Honorable Gregory M. Sleet
September 8, 2006
Page 3

Governing Lawyers § 121, Comment d. Representation of a client (and cases cited therein). ████████████████████ Townsend and Spaeth knew Miles had become Bayer.

That Townsend has no files regarding its "brief" representation of Miles and that Ms. Spaeth has no current recollection of representing Miles or receiving confidential information is irrelevant. *W.L. Gore & Associates, Inc. v. International Medical Prosthetics*, 745 F.2d 1463, 1468 (Fed. Cir. 1984) ("absence of present recollection does not rebut the presumption of shared confidences."); *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc.*, 607 F.2d 186, 195 (7th Cir. 1979). Moreover, while Ms. Spaeth avers lack of current knowledge regarding confidential information received from Miles, no similar representation is made by her partner Mr. Chambers. The merger Townsend underwent, effective January 1, 1993, is also a red herring. Townsend's representation of Miles extended into 1993. *See* Bxtr Ex. 2,A. Even if the representation had ended "before the merger", as Mr. Gilliland inaccurately avers (Bxtr Ex. 1, ¶6), this would have no effect upon the conflict analysis.

Next, Townsend asserts waiver by Bayer and Connolly Bove for failure to object earlier. Townsend asserts, falsely, that "Bayer and its counsel have known of ... [Townsend's] prior work for Bayer, for many years." [P.5]. Bayer and Connolly Bove learned of Townsend's representation of Miles only when alerted to this fact by Mr. Giblin on August 1, 2006. Indeed, court records and long archived Miles records had to be obtained to verify it.[1] Plaintiffs' knowledge of Townsend's representation of Baxter is irrelevant, as is the Joint Defense Agreement from the unrelated *Natterman* litigations (involving different products), in which Baxter is not suing Bayer.

Townsend's argument that Plaintiffs have impliedly waived the conflict by waiting until this litigation was 15 months old ignores the key fact that neither Plaintiffs nor Connolly Bove knew of the conflict until just before this motion was filed.[2] Further, it is not the client but the attorney who has the duty to avoid conflicts of interest. If anything is "suspicious", it is Townsend's failure to raise the issue. Baxter's response shows that Townsend was clearly aware of the relationship of Miles to Bayer before suing Bayer here and knew it had a conflict from the inception of this case, but chose not to give Bayer notice and request a waiver.

Plaintiffs respectfully request that the Court enter an Order disqualifying Townsend and Spaeth.

Respectfully submitted,

/s/ Jeffrey B. Bove

JBB/llw
487315_1

Jeffrey B. Bove (#998)

cc:  Philip A. Rovner, Esquire (via e-filing & e-mail)
     Susan Spaeth, Esquire (via e-mail)
     Bradford J. Badke, Esquire (via e-mail)

---

[1] ████████████████████ This fact proves nothing about Plaintiffs, Bayer's or Connolly Bove's knowledge of the prior representation. Baxter fails to provide details as to what files or to whom they were returned. This assertion is insufficient to overcome Plaintiffs' declaration that it learned of the conflict only through Mr. Giblin when he recognized Ms. Spaeth at his deposition. *See INA Underwriters Ins. Co. v. Nalibotsky*, 594 F.Supp. 1199, 1204 (E.D.Pa.1984).

[2] Subsections (a) and (b) of Rule 1.9 were amended in 2002 (long before Baxter sued Bayer here) to require that a former client's informed consent be in writing. No cases have addressed the impact of the written waiver rule on "implied waiver", however, the requirement for a written waiver would suggest implied waivers, if still viable, should be strictly limited. The *Elonex* and *Conley* cases cited by Baxter on the subject of waiver are not even remotely similar to the facts of this matter.