# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TALECRIS BIOTHERAPEUTICS, INC. and )
BAYER HEALTHCARE LLC, )
)
        Plaintiffs, )
)   C. A. No. 05-349-GMS
        v. )
)   JURY TRIAL DEMANDED
BAXTER INTERNATIONAL INC. and )
BAXTER HEALTHCARE CORPORATION, )
)
        Defendants )
)
————————————————— )

BAXTER HEALTHCARE CORPORATION, )
)
        Counterclaimant, )
)
        v. )
)
TALECRIS BIOTHERAPEUTICS, INC. and )
BAYER HEALTHCARE LLC, )
)
        Counterdefendants. )

## DEFENDANT'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO PLAINTIFFS/COUNTERDEFENDANTS

Pursuant to Federal Rule of Civil Procedure 34, Defendant Baxter International

Inc. and Defendant/Counterclaimant Baxter Healthcare Corporation (collectively

"Baxter") hereby request that Plaintiffs and Counterdefendants Talecris Biotherapeutics,

Inc. and Bayer HealthCare, LLC produce the following documents and things within

thirty (30) days of the service hereof at the law offices of Townsend and Townsend and

Crew LLP, 379 Lytton Avenue, Palo Alto, California, 94301, or at such other time and

place as may be mutually agreed upon by counsel for the parties. The following definitions and instructions shall apply:

## DEFINITIONS

As used herein:

1.     "TALECRIS" refers to Plaintiff and Counterdefendant Talecris Biotherapeutics, Inc. and Talecris Biotherapeutics, Holding Corp. AND ALL predecessors, successors, subsidiaries, divisions, parents AND affiliates thereof, past OR present, joint ventures, AND other legal entities that are OR were wholly OR partially owned OR controlled by TALECRIS, either directly OR indirectly, AND ALL past OR present directors, principles, officers, owners, agents, representatives, attorneys AND others acting for OR on behalf of these same entities.

2.     "BAYER" refers to Counterdefendant Bayer HealthCare, LLC AND ALL predecessors, successors, subsidiaries, divisions, parents AND affiliates thereof, past OR present, joint ventures, AND other legal entities that are OR were wholly OR partially owned OR controlled by BAYER, either directly OR indirectly, including but not limited to Miles Laboratories, Inc. AND Cutter Laboratories, Inc., AND ALL past OR present directors, principles, officers, owners, agents, representatives, attorneys AND others acting for OR on behalf of these same entities.

3.     "BAXTER" refers to Defendant Baxter International Inc. and Defendant/ Counterclaimant Baxter Healthcare Corporation collectively.

4.     "PERSON(S)" means ANY natural person, corporation, proprietorship, partnership, joint venture, association, firm, OR entity recognized in law, AND shall include the owners, officers, directors, agents, trustees, parents, subsidiaries, affiliates, .

- 2 -

assigns, predecessors AND successors of such person.

5.    "PLAINTIFFS/COUNTERDEFENDANTS" refers to TALECRIS AND

BAYER collectively.

6.    "THIRD PARTY" OR "THIRD PARTIES" means anyone other than

TALECRIS, BAYER, or BAXTER.

7.    "YOU," "YOUR," OR "YOURS" refers to TALECRIS OR BAYER.

8.    "ALL DOCUMENTS" means each AND every DOCUMENT that is

known to YOU AND each AND every of such DOCUMENTS that can be located OR

discovered by reasonably diligent efforts.

9.    "COMMUNICATION" means ANY oral, electronic, OR written

transmission of information from one PERSON to another, including but not limited to,

discussions, conversations, negotiations, agreements, understandings, personal meetings,

telephone conversations, facsimiles, letters, electronic mail, notes, memoranda,

telegrams, advertisements, OR other forms of information exchanged.

10.    "DATE" means the exact day, month AND year, if ascertainable, AND if

the exact day, month, AND year are not ascertainable, then the best approximation

thereof.

11.    "DESCRIBE IN DETAIL" means to state AND describe, with specificity,

each AND every fact, ultimate fact, circumstance, incident, act, omission, event, DATE,

AND/OR legal contention RELATING TO the matter(s) inquired.

12.    "DOCUMENT" OR "DOCUMENTS" is used in its customary broad

sense within the context of the Federal Rules of Civil Procedure AND means ANY

written, printed, recorded OR graphic matter, computer memory, computer tapes AND

diskettes, tapes, films, photographs, drawings, OR ANY other tangible means by which

information is contained, stored OR displayed, of every kind OR description, however

produced OR reproduced, whether draft OR final, original OR reproduction, signed OR

unsigned, AND regardless of whether approved, signed, sent, received, redrafted, OR

executed, including without limitation written AND electronic COMMUNICATIONS,

letters, correspondence, notes, memoranda of telephone conversations OR meetings,

diaries, desk calendars, interoffice COMMUNICATIONS, fax messages, E-mail

messages, telegrams, telex messages, records, studies, bills, receipts, checks, checkbooks,

purchase orders, invoices, requisitions, studies, summaries, analyses, statistical AND

financial statements, charts, graphs, reports, computer printouts, laboratory notebooks,

invention disclosure DOCUMENTS, patent applications AND drafts thereof, test records,

test reports, assignments, licenses, bills of sale, sale of business agreements, market

studies, articles, publications, patents, manuals, magnetic tapes, tabulations, work papers,

journals, microfiche, microfilm, photographic film, surveys, forms, printed brochures OR

material similar to ANY of the foregoing, however denominated, by whomever prepared,

AND to whomever addressed, which are in YOUR possession, custody OR control OR to

which YOU have, have had, OR can obtain access. If the DOCUMENT bears ANY

marks, including but not limited to initials, stamped indicia, comments OR notations that

are not part of the original text OR photographic reproduction thereof, these should be

provided in a separate copy of the DOCUMENT.

13.    "GAMIMUNE® N S/D" refers to both GAMIMUNE® N S/D 5% and

GAMIMUNE® N S/D 10%.

14.    "IDENTIFY" when used in conjunction with a DOCUMENT OR other

THING means to specify the DOCUMENT OR THING in sufficient detail to permit BAXTER to locate said DOCUMENT OR THING.

15.    "IDENTIFY" when used in conjunction with a PERSON means to provide the name, current OR last known address, AND telephone number of the PERSON, AND current OR last known employer, position title, AND relationship of the PERSON to ANY party herein.

16.    "IMMUNOGLOBULIN PRODUCT" means ANY product containing immunoglobulin ("Ig") antibodies, including but not limited to one OR more of IgA, IgD, IgE, IgG AND IgM antibodies, notwithstanding whether regulatory approval was sought OR obtained for such product.

17.    "PERTAINING TO," "PERTAIN TO," "RELATING TO," AND "RELATE TO" mean constituting, consisting of, relating to, referring to, evidencing, supporting, contradicting, reflecting, OR resulting from the matter specified.

18.    "PRIOR ART" means ALL DOCUMENTS, THINGS, patents, publications, disclosures, sales, offers for sale, public uses, prior inventions, derivation OR other acts OR occurrences that could be considered prior art within the broadest possible meaning of 35 U.S.C. §§ 102 OR 103.

19.    "PROSECUTING ATTORNEY OR AGENT" means ANY attorney OR agent involved in the prosecution, reexamination, OR opposition of THE '191 PATENT OR ANY RELATED PATENT(S) OR RELATED APPLICATION(S), including but not limited to James A. Giblin, Mary Boguslaski, Dr. Frank Burkert, Christine Hansen, Dr. Frank Spaltmann, AND Dr. Joseph Taormino, AND ANY other attorney OR agent from PLAINTIFFS/COUNTERDEFENDANTS, Connolly Bove Lodge & Hutz, LLP, OR

Hoffmann Eitle who was involved in the prosecution, reexamination, OR opposition of THE '191 PATENT OR ANY RELATED PATENT(S) OR RELATED APPLICATION(S).

20.    "RELATED PATENT(S) " OR "RELATED APPLICATION(S)" means ANY patent claiming priority to the European Patent Office Application Number 96 114 439 filed September 10, 1996 OR U.S. Patent Application No. 08/532,211 filed September 22, 1995, whether foreign OR domestic, including ANY letters patent, reissued patent, reexamination certificate, Supplementary Protection Certificate, OR inventor's certificate, OR ANY patent application claiming priority to European Patent Office Application Number 96 114 439 filed September 10, 1996 OR U.S. Patent Application No. 08/532,211 filed September 22, 1995, whether foreign OR domestic, including ANY regular patent application, ANY continuation, continuation-in-part OR divisional application, ANY reissue application, ANY reexamination application, OR ANY extension of ANY of these.

21.    "THE '191 PATENT" refers to U.S. Patent No. 6,686,191.

22.    "THING" OR "THINGS" means ANY tangible object other than a DOCUMENT including but not limited to objects of every kind AND nature, as well as prototypes, samples, models, drafts, OR specimens thereof.

23.    Miscellaneous: "AND" AND "OR" shall each be considered as either conjunctive OR disjunctive, whichever is more inclusive in content. The terms "ANY" AND "ALL" shall be considered to include "each and every." The singular form of a noun OR pronoun shall be considered to include within its meaning the plural form of the noun OR pronoun so used, AND vice versa.

## INSTRUCTIONS

1.    In producing DOCUMENTS OR THINGS requested, YOU shall furnish

ALL DOCUMENTS AND THINGS known OR available to YOU within YOUR

possession, custody OR control, wherever located, regardless of whether such

DOCUMENTS OR THINGS are possessed directly by YOU OR by ANY of YOUR

agents, officers, employees, attorneys, representatives, OR those acting on behalf of

PLAINTIFFS/COUNTERDEFENDANTS.

2.    This Second Set of Requests for Production of DOCUMENTS and Things

is deemed to be continuing AND must be supplemented as required by the Federal Rules

of Civil Procedure. If, after producing DOCUMENTS, YOU obtain OR become aware

of ANY further DOCUMENTS, THINGS, OR information responsive to this Second Set

of Requests for Production of DOCUMENTS and Things, YOU are required to produce

to BAXTER such additional DOCUMENTS and THINGS, AND/OR to provide

BAXTER with such additional information as required by the Federal Rules of Civil

Procedure.

3.    In the event that PLAINTIFFS/COUNTERDEFENDANTS withhold

ANY DOCUMENT OR THING on the basis that it is privileged, subject to work product

immunity, OR otherwise excludable from discovery, YOU are requested to list each such

DOCUMENT OR THING, grouped by request number, AND to state the following

information: (a) the type of DOCUMENT OR THING (*e.g.*, letter, memorandum,

contract); (b) its title; (c) its DATE; (d) its number of pages; (e) its subject matter; (f) the

name, address, AND present occupation of the PERSON(S) now in possession of it; (g)

the name, present address, AND occupation at the time of preparation of the PERSON(S)

who prepared it; (h) the name, present address, AND occupation at the time of dissemination of the addressee(s) who had access thereto; (i) the basis upon which the DOCUMENT is withheld; AND such other particulars as would enable BAXTER to assess the applicability of the asserted privilege OR protection. *See* Federal Rule of Civil Procedure 26(b)(5).

      4.     If ANY request is objected to as overly broad OR unduly burdensome, produce those DOCUMENTS AND/OR THINGS which are unobjectionable AND specifically identify the respect in which that request is allegedly overly broad OR unduly burdensome.

      5.     If a DOCUMENT OR THING was but is no longer in PLAINTIFFS/ COUNTERDEFENDANTS' possession, custody OR control, OR in existence, state whether it is: (a) missing OR lost; (b) has been destroyed; (c) has been transferred, voluntarily OR involuntarily, to others; OR (d) has been otherwise disposed of. In each instance of such DOCUMENTS OR THINGS, please: (a) explain the circumstances surrounding AND authorization for the nonavailability, destruction, OR disposition thereof; (b) state the DATE OR approximate DATE thereof; (c) state the name AND title of the author(s), sender(s), AND recipient(s) thereof; (d) state the name(s) AND address(es) of ALL PERSONS having knowledge of the nonavailability, destruction, OR disposition thereof; (e) state the name(s) AND address(es) of ALL PERSONS responsible for the nonavailability, destruction OR disposition thereof; AND (f) if applicable, state the name(s) AND address(es) of ALL PERSONS that now possess, have custody thereof, OR control the DOCUMENT OR THING.

6.    ALL questions regarding the meaning of interpretation of these requests should be directed to the undersigned counsel.

## REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS
### REQUEST NO. 91:

PLAINTIFFS'/COUNTERDEFENDANTS' financial records related to Gamimune®N S/D and Gamunex® from the date of first sale of the products to the present, including (separately, for each product):

   a.  Audited and internal financial statements (including, without limitation, income statements, balance sheets, cash flow statements and annual reports)

   b.  Internal financial statements (including, without limitation, income statements, balance sheets and cash flow statements) related to the divisions of TALECRIS and BAYER, which sold Gamimune®N S/D and/or Gamunex®.

   c.  Internal financial statements (including, without limitation, income statements, balance sheets and cash flow statements) related specifically to Gamimune®N S/D and Gamunex®.

### REQUEST NO. 92:

ALL DOCUMENTS that RELATE TO OR PERTAIN TO internal pricing data for Gamimune®N S/D and Gamunex®, including:

   a.  Data and/or information on the prices of Gamimune®N S/D and Gamunex® and any peripheral products from the first date of sale of

each product to the present, including retail prices, wholesale prices, and bundled product pricing;

b.  Any price lists internally or externally distributed by PLAINTIFFS/ COUNTERDEFENDANTS related to Gamimune®N S/D and Gamunex® and peripheral products from the first date of sale to the present;

c.  DOCUMENTS, including any analyses and/or reports, focusing on prices of Gamimune®N S/D and Gamunex®, whether internally prepared by PLAINTIFFS/COUNTERDEFENDANTS or prepared by a third party; and

d.  DOCUMENTS that show pricing information related to similar and/or competing products available in the market place subsequent to the issuance date of the '191 patent.

**REQUEST NO. 93:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO transfer prices of Gamimune®N S/D and Gamunex® between internal divisions of PLAINTIFFS/ COUNTERDEFENDANTS (i.e., the sale price from the manufacturing subsidiary).

**REQUEST NO. 94:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO third-party data or reports regarding pricing and/or sales of Gamimune®N S/D and Gamunex®, as well as competing and/or substitute products sold in the marketplace.

**REQUEST NO. 95:**

Detailed financial reports relating to sales of Gamimune®N S/D and Gamunex®, indicating for each month:

      a.  Number of units sold;

      b.  Selling price of units sold and total dollar amount (gross revenue) of units sold;

      c.  Detail related to any rebates or other discount programs associated with the products sold in order to derive net revenue;

      d.  Detailed breakout of the costs of goods sold ("COGS") associated with producing the units sold;

      e.  Detailed breakout of the operating costs associated with the units sold;

      f.  Detailed breakout of any additional costs associated with units sold; and

      g.  Identification of sales made in the U.S. versus sales made internationally.

**REQUEST NO. 96:**

ALL DOCUMENTS that identify standard costs by material, labor variable overhead and fixed overhead for any corporate divisions involved in the manufacture of Gamimune®N S/D and Gamunex®.

**REQUEST NO. 97:**

ALL DOCUMENTS (including reports) that RELATE TO OR PERTAIN TO any variance from standard costs for Gamimune®N S/D and Gamunex®, by material, labor and overhead variances.

**REQUEST NO. 98:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO any analysis of fixed

versus variable costs, marginal costs, or incremental costs to produce Gamimune®N S/D

and Gamunex®.

**REQUEST NO. 99:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO contribution margin

analyses and/or reports for Gamimune®N S/D and Gamunex®.

**REQUEST NO. 100:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO capital expenditure

requests and actual capital expenditures for the development of Gamimune®N S/D and

Gamunex®.

**REQUEST NO. 101:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO research, development

and design expenditures for the historical and continuing development of Gamimune®N

S/D and Gamunex®.

**REQUEST NO. 102:**

ALL market or competitive studies prepared either internally by

PLAINTIFFS/COUNTERDEFENDANTS or by a third party that contain information

relevant to Gamimune®N S/D and Gamunex®, including DOCUMENTS that:

      a.  identify each company that has historically had or currently offers

          products that are sold in the marketplace that are competitive to

          Gamimune®N S/D and Gamunex®;

    b.  identify each of the products sold by those companies, including

       peripheral products, over time; and

    c.  identify market shares, broken down by product type and product line, of

       those companies over time.

## REQUEST NO. 103:

ALL advertising and marketing materials related to Gamimune®N S/D and Gamunex®.

## REQUEST NO. 104:

ALL DOCUMENTS that RELATE TO OR PERTAIN TO past, present or future market share in the United States and foreign countries of Gamimune®N S/D and Gamunex®.

## REQUEST NO. 105:

ALL DOCUMENTS that RELATE TO OR PERTAIN TO market summaries, assessments, reviews, analysis, evaluation, studies and/or comments, including but not limited to market projections and market projection models, projected market penetration and market share studies, market surveys, focus group studies, customer satisfaction surveys and competitive position analyses for Gamimune®N S/D and Gamunex®.

## REQUEST NO. 106:

ALL DOCUMENTS that RELATE TO OR PERTAIN TO financial plans, projections, forecasts, studies and/or market analysis regarding sales, costs, prices, profits, profit margins, and cash flow both in total and product by product basis for Gamimune®N S/D and Gamunex®.

**REQUEST NO. 107:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO financial analysis of Gamimune®N S/D and Gamunex®, including but not limited to financial ratio analysis, inventory reports and analysis, and valuations of Gamimune®N S/D and Gamunex®.

**REQUEST NO. 108:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO the sales of Gamimune®N S/D and Gamunex® that demonstrate pricing based on bundling of the product with other products.

**REQUEST NO. 109:**

Copies of any licensing agreements entered into by PLAINTIFFS/ COUNTERDEFENDANTS related to Gamimune®N S/D, Gamunex® and/or any other products licensed by TALECRIS or BAYER (the biological products division).

**REQUEST NO. 110:**

All license agreements in the possession, custody or control of PLAINTIFFS/ COUNTERDEFENDANTS that RELATE TO products or manufacturing processes in the immunoglobulins, blood or plasma industry.

**REQUEST NO. 111:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO negotiations and/or discussions that took place between PLAINTIFFS/COUNTERDEFENDANTS and any non-affiliated business entity or individual concerning the licensing and/or possible licensing of Gamimune®N S/D and/or Gamunex®.

**REQUEST NO. 112:**

ALL DOCUMENTS that identify potentially comparable license agreements and/or report how the subject matter of these license agreements is comparable to Gamimune®N S/D and/or Gamunex®.

**REQUEST NO. 113:**

Copies of PLAINTIFFS'/COUNTERDEFENDANTS' licensing policies.

**REQUEST NO. 114:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO any internally-perceived or market-perceived advantages or benefits of Gamimune®N S/D and/or Gamunex® relative to competing or substitute products in the marketplace, including perceived advantages or benefits of Gamunex® over Gamimune®N S/D and vice-versa.

**REQUEST NO. 115:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO any communications between or among customers or potential customers, both in the United States and in foreign countries, regarding the performance of Gamimune®N S/D, including any requests or comments suggesting changes in the products.

**REQUEST NO. 116:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO the manufacturing capacity, including any excess capacity, for Gamimune®N S/D and Gamunex® by PLAINTIFFS/COUNTERDEFENDANTS from the first date of each product sale to the present.

**REQUEST NO. 117:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO the supply of plasma in the marketplace for purposes of manufacturing Gamimune®N S/D and/or Gamunex®, including any and ALL constraints on supply of plasma.

**REQUEST NO. 118:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO PLAINTIFFS'/ COUNTERDEFENDANTS' sources of supply of recovered and/or source plasma.

**REQUEST NO. 119:**

ALL DOCUMENTS (including, without limitation, contracts and purchase orders) that RELATE TO OR PERTAIN TO the amounts of recovered and source plasma provided to PLAINTIFFS/COUNTERDEFENDANTS.

**REQUEST NO. 120:**

ALL sales contracts and purchase orders for Gamimune®N S/D and/or Gamunex® between PLAINTIFFS/COUNTERDEFENDANTS and actual or potential customers.

**REQUEST NO. 121:**

ALL DOCUMENTS demonstrating customer demand for Gamimune®N S/D and/or Gamunex® that cannot be fulfilled or met by PLAINTIFFS/ COUNTERDEFENDANTS.

**REQUEST NO. 122:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO the reasons that customer demand for Gamimune®N S/D and/or Gamunex® could not be fulfilled or met

- 16 -

by PLAINTIFFS/COUNTERDEFENDANTS (e.g., plasma supply constraints,

manufacturing capacity, etc.).

**REQUEST NO. 123:**

ALL DOCUMENTS demonstrating the manner in which Gamimune®N S/D

and/or Gamunex® are allocated to customers by PLAINTIFFS/

COUNTERDEFENDANTS.

**REQUEST NO. 124:**

All business plans, projections or budgets related to Gamimune®N S/D and/or

Gamunex®, including, for example, DOCUMENTS sufficient to show projected number

of units sold, a breakout of expected customers, and corresponding projected revenues,

costs, and profits for Gamimune®N S/D and/or Gamunex®.

**REQUEST NO. 125:**

ALL DOCUMENTS that RELATE TO OR PERTAIN TO TALECRIS'

acquisition of BAYER's "U.S. plasma operations of its Biological Products division" by

Cerberus Capital Management and Ampersand Ventures on or about March-April 2005,

including, without limitation, ALL financial statements, financial projections, valuations,

Board presentations, offering memoranda, deal and/or pitch books.

**REQUEST NO. 126:**

ALL DOCUMENTS containing information responsive to the Interrogatories and

Requests for Admission served concurrently herewith.

**REQUEST NO. 127:**

ALL DOCUMENTS that RELATE OR PERTAIN TO Gamimune N 5% and 10%

including but not limited to the product insert, product specifications and the Chemistry

Manufacturing Controls (CMC) section or its equivalent in the PLA or BLA of the

Gamimune N 5% and 10% products.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:
James G. Gilliland, Jr.
Susan M. Spaeth
Anne M. Rogaski
Angus M. MacDonald
TOWNSEND AND TOWNSEND AND
CREW LLP
379 Lytton Avenue
Palo Alto, California 94301
(650) 326-2400

Dated: August 30, 2006

748260

By: _____
Philip A. Rovner (#3215)
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
Email: provner@potteranderson.com

*Attorneys for Defendant*
*Baxter International Inc. and*
*Defendant/Counterclaimant*
*Baxter Healthcare Corporation*

- 18 -

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on August 30, 2006, true and correct copies of the within document were served on the following counsel of record at the addresses and in the manner indicated:

| BY HAND DELIVERY AND E-MAIL | BY FEDERAL EXPRESS AND E-MAIL |
| --- | --- |
| Jeffrey B. Bove, Esq. <br> Mary W. Bourke, Esq. <br> Mark E. Freeman, Esq. <br> Jaclyn M. Mason, Esq. <br> Donna Hallowell <br> Connolly Bove Lodge & Hutz LLP <br> 1007 N. Orange Street <br> P. O. Box 2207 <br> Wilmington, DE  19899-2207 <br> jbove@cblh.com <br> mbourke@cblh.com <br> mfreeman@cblh.com <br> jmason@cblh.com <br> dhallowell@cblh.com | Bradford J. Badke, Esq. <br> Gabrielle Ciuffreda, Esq. <br> Ropes & Gray LLP <br> 1251 Avenue of the Americas <br> New York, NY  10020-1105 <br> bradford.badke@ropesgray.com <br> gabrielle.ciuffreda@ropesgray.com |

Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TALECRIS BIOTHERAPEUTICS, INC. and BAYER HEALTHCARE LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C. A. No 05-349-GMS ) |
| BAXTER INTERNATIONAL INC. and BAXTER HEALTHCARE CORPORATION, | ) JURY TRIAL DEMANDED ) ) |
| Defendants | ) ) ) |
| _____ | ) |
| BAXTER HEALTHCARE CORPORATION, | ) ) |
| Counterclaimant, | ) ) |
| v. | ) ) |
| TALECRIS BIOTHERAPEUTICS, INC. and BAYER HEALTHCARE LLC, | ) ) ) |
| Counterdefendants. | ) |

**DEFENDANT'S SECOND SET OF INTERROGATORIES (NOS. 12-45)
TO PLAINTIFFS AND COUNTERDEFENDANTS**

Pursuant to Federal Rule of Civil Procedure 33, Defendant Baxter International

Inc. and Defendant/Counterclaimant Baxter Healthcare Corporation (collectively

"Baxter") hereby request that Plaintiffs and Counterdefendants Talecris Biotherapeutics,

Inc. and Bayer HealthCare, LLC respond to the following interrogatories within thirty

(30) days of the service hereof. Each interrogatory herein is to be answered fully and in

writing under oath within thirty (30) days after service of these interrogatories. In

answering the interrogatories, Plaintiffs and Counterdefendants Talecris Biotherapeutics,

Inc. and Bayer HealthCare, LLC are requested to give full and complete answers based

on personal knowledge, as well as the knowledge of any agents, employees, investigators, attorneys, or other persons who may have obtained information on Talecris' or Bayer's behalf. The following definitions and instructions shall apply:

## DEFINITIONS

As used herein:

1.    "TALECRIS" refers to Plaintiff and Counterdefendant Talecris Biotherapeutics, Inc. AND ALL predecessors, successors, subsidiaries, divisions, parents AND affiliates thereof, past OR present, joint ventures, AND other legal entities that are OR were wholly OR partially owned OR controlled by TALECRIS, either directly OR indirectly, AND ALL past OR present directors, principles, officers, owners, agents, representatives, attorneys AND others acting for OR on behalf of these same entities.

2.    "BAYER" refers to Plaintiff and Counterdefendant Bayer HealthCare, LLC. AND ALL predecessors, successors, subsidiaries, divisions, parents AND affiliates thereof, past OR present, joint ventures, AND other legal entities that are OR were wholly OR partially owned OR controlled by BAYER, either directly OR indirectly, including but not limited to Miles Laboratories, Inc. AND Cutter Laboratories, Inc., AND ALL past OR present directors, principles, officers, owners, agents, representatives, attorneys AND others acting for OR on behalf of these same entities.

3.    "BAXTER" refers to Defendant Baxter International Inc. and Defendant/Counterclaimant Baxter Healthcare Corporation.

4.    "PERSON(S)" means ANY natural person, corporation, proprietorship, partnership, joint venture, association, firm OR entity recognized in law, AND shall include the owners, officers, directors, agents, trustees, parents, subsidiaries, affiliates,

2

assigns, predecessors AND successors of such person.

5.      "PLAINTIFFS/COUNTERDEFENDANTS" refers to TALECRIS AND BAYER collectively.

6.      "THIRD PARTY" OR "THIRD PARTIES" means anyone other than TALECRIS, BAYER, OR BAXTER.

7.      "YOU," "YOUR," OR "YOURS" refers to TALECRIS OR BAYER.

8.      "ALL DOCUMENTS" means each AND every DOCUMENT that is known to YOU AND each AND every of such DOCUMENTS that can be located OR discovered by reasonably diligent efforts.

9.      "COMMUNICATION" means ANY oral, electronic, OR written transmission of information from one PERSON to another, including but not limited to, discussions, conversations, negotiations, agreements, understandings, personal meetings, telephone conversations, facsimiles, letters, electronic mail, notes, memoranda, telegrams, advertisements OR other forms of information exchanged.

10.     "DATE" means the exact day, month AND year, if ascertainable, AND if the exact day, month AND year are not ascertainable, then the best approximation thereof.

11.     "DESCRIBE IN DETAIL" means to state AND describe, with specificity, each AND every fact, ultimate fact, circumstance, incident, act, omission, event, DATE, AND/OR legal contention RELATING TO the matter(s) inquired.

12.     "DOCUMENT" OR "DOCUMENTS" is used in its customary broad sense within the context of the Federal Rules of Civil Procedure AND means ANY written, printed, recorded OR graphic matter, computer memory, computer tapes AND

diskettes, tapes, films, photographs, drawings, OR ANY other tangible means by which

information is contained, stored OR displayed, of every kind OR description, however

produced OR reproduced, whether draft OR final, original OR reproduction, signed OR

unsigned, AND regardless of whether approved, signed, sent, received, redrafted, OR

executed, including without limitation written AND electronic COMMUNICATIONS,

letters, correspondence, notes, memoranda of telephone conversations OR meetings,

diaries, desk calendars, interoffice COMMUNICATIONS, fax messages, E-mail

messages, telegrams, telex messages, records, studies, bills, receipts, checks, checkbooks,

purchase orders, invoices, requisitions, studies, summaries, analyses, statistical AND

financial statements, charts, graphs, reports, computer printouts, laboratory notebooks,

invention disclosure DOCUMENTS, patent applications AND drafts thereof, test records,

test reports, assignments, licenses, bills of sale, sale of business agreements, market

studies, articles, publications, patents, manuals, magnetic tapes, tabulations, work papers,

journals, microfiche, microfilm, photographic film, surveys, forms, printed brochures OR

material similar to ANY of the foregoing, however denominated, by whomever prepared,

AND to whomever addressed, which are in YOUR possession, custody OR control OR to

which YOU have, have had, OR can obtain access. If the DOCUMENT bears ANY

marks, including but not limited to initials, stamped indicia, comments OR notations that

are not part of the original text OR photographic reproduction thereof, these should be

provided in a separate copy of the document.

13.    "IDENTIFY" when used in conjunction with a DOCUMENT OR other

THING means to specify the DOCUMENT OR THING in sufficient detail to permit

BAXTER to locate said DOCUMENT OR THING.

4

14.    "IDENTIFY" when used in conjunction with a PERSON means to provide the name, current OR last known address, AND telephone number of the PERSON, AND current OR last known employer, position title, AND relationship of the PERSON to ANY party herein.

15.    "IMMUNOGLOBULIN PRODUCT" means ANY product containing immunoglobulin ("Ig") antibodies, including but not limited to one OR more of IgA, IgD, IgE, IgG, AND IgM antibodies, notwithstanding whether regulatory approval was sought OR obtained for such product.

16.    "PERTAINING TO," "PERTAIN TO," "RELATING TO," AND "RELATE TO" mean constituting, consisting of, relating to, referring to, evidencing, supporting, contradicting, reflecting, OR resulting from the matter specified.

17.    "PRIOR ART" means ALL DOCUMENTS, THINGS, patents, publications, disclosures, sales, offers for sale, public uses, prior inventions, derivation OR other acts OR occurrences that are or could be considered prior art within the broadest possible meaning of 35 U.S.C. §§ 102 OR 103.

18.    "RELATED PATENT(S) " OR "RELATED APPLICATION(S)" means ANY patent claiming priority to the European Patent Office Application Number 96 114 439 filed September 10, 1996 OR U.S. Patent Application No. 08/532,211 filed September 22, 1995, whether foreign OR domestic, including ANY letters patent, reissued patent, reexamination certificate, Supplementary Protection Certificate, OR inventor's certificate, OR ANY patent application claiming priority to European Patent Office Application Number 96 114 439 filed September 10, 1996 OR U.S. Patent Application No. 08/532,211 filed September 22, 1995, whether foreign OR domestic,

including ANY regular patent application, ANY continuation, continuation-in-part, OR divisional application, ANY reissue application, ANY reexamination application, OR ANY extension of ANY of these.

19.    "THE '191 PATENT" refers to U.S. Patent No. 6,686,191.

20.    "December 1995 PLA" refers to the Product License Application filed by Bayer in December 29, 1995 with the FDA (specifically, TAL 018537-018564).

21.    "THING" OR "THINGS" means ANY tangible object other than a DOCUMENT including but not limited to objects of every kind AND nature, as well as prototypes, samples, models, drafts, OR specimens thereof.

22.    Miscellaneous: "AND" AND "OR" shall each be considered as either conjunctive OR disjunctive, whichever is more inclusive in content. The terms "ANY" AND "ALL" shall be considered to include "each and every." The singular form of a noun OR pronoun shall be considered to include within its meaning the plural form of the noun OR pronoun so used, AND vice versa.

## INSTRUCTIONS

1.    In lieu of IDENTIFYING a DOCUMENT when identification is requested, a copy of the DOCUMENT may be attached to YOUR response to these interrogatories in accordance with Federal Rule of Civil Procedure 33(d). If ANY of the PLAINTIFFS/COUNTERDEFENDANTS elects to avail itself of the procedure authorized by Rule 33(d) for answering interrogatories, BAXTER requests that YOU, for each interrogatory so answered, specify by production number the particular DOCUMENTS responsive to that specific interrogatory, AND, for each DOCUMENT, specify its source (*e.g.*, from which files it was taken), AND its author, recipients, AND

6

DATE of preparation, if not apparent from the face of the DOCUMENT. If ANY

DOCUMENTS are withheld from production under said rule because of an alleged

privilege, the PLAINTIFFS/COUNTERDEFENDANTS withholding such

DOCUMENTS shall, nonetheless, IDENTIFY each such DOCUMENT by providing the

information required above, AND shall fully state the nature of the privilege claimed

AND reason why each DOCUMENT is being withheld.

    2.    This Second Set of Interrogatories is deemed to be continuing AND must

be supplemented as required by the Federal Rules of Civil Procedure. If, after responding

to these interrogatories, the PLAINTIFFS/COUNTERDEFENDANTS obtain OR become

aware of ANY further information responsive to this Second Set of Interrogatories, YOU

are required to provide BAXTER with such additional information as required by the

Federal Rules of Civil Procedure.

    3.    In the event the PLAINTIFFS/COUNTERDEFENDANTS withhold ANY

information on the basis that it is privileged, subject to work product immunity, OR

otherwise excludable from discovery, YOU are requested to list such information,

DOCUMENTS, COMMUNICATIONS, OR THINGS not produced OR disclosed,

grouped by interrogatory number, AND to state the following information:  (a) the type

of DOCUMENT OR THING withheld (*e.g.*, letter, memorandum, contract); (b) its title;

(c) its DATE; (d) its subject matter; (e) its number of pages; (f) the name, address, AND

present occupation of the PERSON(S) now in possession of it; (g) the name, present

address, AND occupation at the time of preparation of the PERSON(S) who prepared it;

(h) the name, present address, AND occupation at the time of dissemination of the

addressee(s) who had access thereto; (i) a statement of the grounds for refusal to answer

7

such interrogatory; AND such other particulars as would enable BAXTER to assess the applicability of the asserted privilege OR protection. *See* Federal Rule of Civil Procedure 26(b)(5).

4.      Unless the parties otherwise agreed in writing, PLAINTIFFS/ COUNTERDEFENDANTS are requested to produce ALL electronic data responsive to these requests translated, as necessary, into useable form. For ALL data compilations responsive to these requests, YOU are requested to produce an exact duplicate of such data on a computer disk that can be read by a common spreadsheet program, as well as a hard-copy version of such data. In addition, YOU are requested to provide a detailed description of how the data are stored, including the format in which they were saved, the name of each field, AND the number of records.

5.      If ANY interrogatory is objected to as overly broad OR unduly burdensome, answer those portions of the interrogatory which are unobjectionable AND specifically IDENTIFY the respect in which the request is allegedly overly broad OR burdensome, respectively.

6.      ALL questions regarding the meaning OR interpretation of these interrogatories should be directed to the undersigned counsel.

## INTERROGATORIES

### INTERROGATORY NO. 12:

Identify by production number all laboratory notebooks, ACA measurements, raw data and/or results for all experiments where you measured the ACA value before and after solvent/detergent treatment of any product, whether or not a commercialized product.

8

**INTERROGATORY NO. 13**:

Identify by production number all laboratory notebooks, ACA measurements, raw data and/or results for all experiments reflected in the '191 patent, including but not limited to Tables 6 and 7 of the '191 patent.

**INTERROGATORY NO. 14**:

Identify by production number all laboratory notebooks, ACA measurements, raw data and/or results for all experiments where the ACA value was above 45 CH50/mL before incubation and below 45 CH50/mL after a 10-day or 21-day incubation.

**INTERROGATORY NO. 15**:

Identify the person(s) currently associated with Plaintiffs/ Counterdefendants who are most knowledgeable about the development, scale-up, manufacture, ingredients and characteristics of, and FDA submissions of Gamimune® N S/D 5%, Gamimune® N S/D 10% and Gamunex®.

**INTERROGATORY NO. 16**:

Identify each type of damages that Plaintiffs and Counterdefendants are seeking, if any, other than a reasonable royalty.

**INTERROGATORY NO. 17**:

For each type of damages that Plaintiffs and Counterdefendants are seeking (including a reasonable royalty), please describe in detail all facts supporting your damages claim(s) of which you were aware at the time that Plaintiffs and Counterdefendants filed their Amended and Supplemental Complaint.

**INTERROGATORY NO. 18**:

Identify by product name and manufacturer all products available in the marketplace (at all points in time subsequent to the date the '191 patent issued) that Plaintiffs and Counterdefendants consider to be competing and/or substitute products to Gamimune® N S/D 5%, Gamimune® N S/D 10% and Gamunex®.

**INTERROGATORY NO. 19**:

For all products identified in response to the previous Interrogatory, please identify whether any of these products have been or are currently accused of infringing the '191 patent or any related patents.

**INTERROGATORY NO. 20**:

Identify all of Plaintiffs'/Counterdefendants' sources of supply of recovered and source plasma and the amounts of such plasma provided by each supplier for the past five years and/or contracts into the future.

**INTERROGATORY NO. 21**:

Describe in detail all facts supporting your contention that Baxter infringes the claims identified in your response to Interrogatory No. 6.

**INTERROGATORY NO. 22**:

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of Ng et al., *Vox Sang.* 65:81-96 (1993).

**INTERROGATORY NO. 23**:

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of U.S. Patent No. 5,256,771.

**INTERROGATORY NO. 24:**

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of U.S. Patent No. 5,648,472.

**INTERROGATORY NO. 25:**

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of U.S. Patent No. 5,419,906.

**INTERROGATORY NO. 26:**

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of U.S. Patent No. 4,396,608.

**INTERROGATORY NO. 27:**

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of U.S. Patent No. 4,540,573.

**INTERROGATORY NO. 28:**

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of European Patent Application EP525502 A1.

**INTERROGATORY NO. 29:**

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of Prince et al., *Proc. Natl. Acad. Sci. USA* 85:6944-6948 (1988).

**INTERROGATORY NO. 30:**

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of Barandun *et al.*, *Vox*

11

*Sang.* 7:157-174 (1962).

**INTERROGATORY NO. 31**:

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of Rousell, *J. Hospital Infection* (1988) 12 (Supplement D), 17-27.

**INTERROGATORY NO. 32**:

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of Hamalainen, *Vox Sang.*, 63:6-11 (1992).

**INTERROGATORY NO. 33**:

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of Gao et al., *Vox Sang.*, 64:204-209 (1993).

**INTERROGATORY NO. 34**:

Describe in detail all facts supporting your contention that the claims identified in your response to Interrogatory No. 6 are not invalid in view of Piet et al., *Transfusion* 30(7):591-598 (1990).

**INTERROGATORY NO. 35**:

Describe in detail all facts pertaining to the first sale or offer for sale of Gamimune N 5% and Gamimune N 10% (**without** S/D), including but not limited to the date(s) such sale or offer for sale occurred, the person(s) who made each such sale or offer for sale, the person(s) to whom such sale or offer for sale was made, and the circumstances surrounding each sale or offer for sale.

12

**INTERROGATORY NO. 36**:

Identify the ACA assay(s), including but not limited to the protocol(s), used to determine the ACA levels set forth in all experiments reflected in the '191 patent.

**INTERROGATORY NO. 37**:

Identify the ACA assay(s), including but not limited to the protocol(s), used to determine the ACA levels set forth in all experiments reflected in the report at TAL 018537-018564.

**INTERROGATORY NO. 38**:

Identify all ACA assays used to determine the ACA levels reported by you to any regulatory agency for any immunoglobulin product since 1992.

**INTERROGATORY NO. 39**:

Identify all variability factors (and their numerical values) associated with the ACA assay used to determine the ACA levels reported in the '191 patent, including but not limited to precision (intermediate or otherwise), accuracy, variance, assay variability, error and/or standard deviation.

**INTERROGATORY NO. 40**:

Identify all variability factors (and their numerical values) associated with the ACA assay used to determine the ACA levels of Gamimune N S/D 5% and Gamimune N S/D 10%, including but not limited to precision (intermediate or otherwise), accuracy, variance, assay variability, error and/or standard deviation.

**INTERROGATORY NO. 41**:

Identify all communications related to the decision whether or not to submit data reported in the document at TAL 018537-018564 in the application leading to the '191

patent.

**INTERROGATORY NO. 42:**

Identify all communications related to your decision whether or not to include the A4 sample data (which is reported in the '191 patent) in the document at TAL 018537-018564.

**INTERROGATORY NO. 43:**

Identify all communications related to your decision whether or not to include the data that appears in the second column of Table 1 (TAL 018558) of the document at TAL 018537-18564 in the '191 patent application.

**INTERROGATORY NO. 44:**

Identify each witness, including expert witnesses, you intend to call or may call during the trial of this matter and set forth a summary of expected testimony or area of testimony of such witnesses who you will or expect to provide at trial and the exhibits such witnesses will or expect to rely upon in support of such testimony.

**INTERROGATORY NO. 45:**

For each Request for Admission in Defendants' Requests for Admission to Plaintiffs and Counterdefendants for which your response is not an unequivocal admission, please describe in detail all facts explaining the basis for your response.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:
James G. Gilliland, Jr.
Susan M. Spaeth
Anne M. Rogaski
Angus M. MacDonald
TOWNSEND AND TOWNSEND AND
CREW LLP
379 Lytton Avenue
Palo Alto, California 94301
(650) 326-2400

Dated: August 30, 2006

7482720

By: _____
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    Email:  provner@potteranderson.com

*Attorneys for Defendant*
*Baxter International Inc. and*
*Defendant/Counterclaimant*
*Baxter Healthcare Corporation*

15

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on August 30, 2006, true and correct copies of the within document were served on the following counsel of record at the addresses and in the manner indicated:

| BY HAND DELIVERY AND E-MAIL | BY FEDERAL EXPRESS AND E-MAIL |
|---|---|
| Jeffrey B. Bove, Esq.<br>Mary W. Bourke, Esq.<br>Mark E. Freeman, Esq.<br>Jaclyn M. Mason, Esq.<br>Donna Hallowell<br>Connolly Bove Lodge & Hutz LLP<br>1007 N. Orange Street<br>P. O. Box 2207<br>Wilmington, DE  19899-2207<br>jbove@cblh.com<br>mbourke@cblh.com<br>mfreeman@cblh.com<br>jmason@cblh.com<br>dhallowell@cblh.com | Bradford J. Badke, Esq.<br>Gabrielle Ciuffreda, Esq.<br>Ropes & Gray LLP<br>1251 Avenue of the Americas<br>New York, NY  10020-1105<br>bradford.badke@ropesgray.com<br>gabrielle.ciuffreda@ropesgray.com |

Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TALECRIS BIOTHERAPEUTICS, INC. and BAYER HEALTHCARE LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| | ) C. A. No. 05-349-GMS |
| v. | ) ) JURY TRIAL DEMANDED |
| BAXTER INTERNATIONAL INC. and BAXTER HEALTHCARE CORPORATION, | ) ) ) |
| Defendants | ) ) ) |
| ———————————————— | ) |
| BAXTER HEALTHCARE CORPORATION, | ) ) |
| Counterclaimant, | ) ) |
| v. | ) ) |
| TALECRIS BIOTHERAPEUTICS, INC. and BAYER HEALTHCARE LLC, | ) ) ) |
| Counterdefendants. | ) ) |

## DEFENDANTS' FIRST REQUEST FOR ADMISSIONS (NOS. 1-124) TO PLAINTIFFS AND COUNTERDEFENDANTS

Pursuant to Federal Rule of Civil Procedure 36, Defendant Baxter International Inc. and Defendant/Counterclaimant Baxter Healthcare Corporation (collectively "Baxter") hereby request that Plaintiffs and Counterdefendants Talecris Biotherapeutics, Inc. and Bayer HealthCare, LLC respond to the following Requests for Admission within thirty (30) days of the service hereof.

## DEFINITIONS

1.    "TALECRIS" refers to Plaintiff and Counterdefendant Talecris

Biotherapeutics, Inc. AND ALL predecessors, successors, subsidiaries, divisions, parents AND affiliates thereof, past OR present, joint ventures, AND other legal entities that are wholly OR partially owned OR controlled by TALECRIS, either directly OR indirectly, AND ALL past OR present directors, principles, officers, owners, employees, agents, representatives, consultants, attorneys AND others acting for OR on behalf of these same entities.

2.     "BAYER" refers to Plaintiff and Counterdefendant Bayer HealthCare, LLC. AND ALL predecessors, successors, subsidiaries, divisions, parents AND affiliates thereof, past OR present, joint ventures, AND other legal entities that are OR were wholly OR partially owned OR controlled by BAYER, either directly OR indirectly, including but not limited to Miles Laboratories, Inc. AND Cutter Laboratories, Inc., AND ALL past OR present directors, principles, officers, owners, agents, representatives, attorneys AND others acting for OR on behalf of these same entities.

3.     "BAXTER" refers to Defendant Baxter International Inc. and Defendant/Counterclaimant Baxter Healthcare Corporation.

4.     "PERSON(S)" means ANY natural person, corporation, proprietorship, partnership, joint venture, association, firm OR entity recognized in law, AND shall include the owners, officers, directors, agents, trustees, parents, subsidiaries, affiliates, assigns, predecessors AND successors of such person.

5.     "PLAINTIFFS/COUNTERDEFENDANTS" refers to TALECRIS AND BAYER collectively.

6.     "THIRD PARTY" OR "THIRD PARTIES" means anyone other than TALECRIS, BAYER, OR BAXTER.

7.    "YOU," "YOUR," OR "YOURS" refers to TALECRIS OR BAYER.

8.    "ALL DOCUMENTS" means each AND every DOCUMENT that is known to YOU AND each AND every of such DOCUMENTS that can be located OR discovered by reasonably diligent efforts.

9.    "COMMUNICATION" means ANY oral, electronic, OR written transmission of information from one PERSON to another, including but not limited to, discussions, conversations, negotiations, agreements, understandings, personal meetings, telephone conversations, facsimiles, letters, electronic mail, notes, memoranda, telegrams, advertisements OR other forms of information exchanged.

10.    "DATE" means the exact day, month AND year, if ascertainable, AND if the exact day, month AND year are not ascertainable, then the best approximation thereof.

11.    "DESCRIBE IN DETAIL" means to state AND describe, with specificity, each AND every fact, ultimate fact, circumstance, incident, act, omission, event, DATE, AND/OR legal contention RELATING TO the matter(s) inquired.

12.    "DOCUMENT" OR "DOCUMENTS" is used in its customary broad sense within the context of the Federal Rules of Civil Procedure AND means ANY written, printed, recorded OR graphic matter, computer memory, computer tapes AND diskettes, tapes, films, photographs, drawings, OR ANY other tangible means by which information is contained, stored OR displayed, of every kind OR description, however produced OR reproduced, whether draft OR final, original OR reproduction, signed OR unsigned, AND regardless of whether approved, signed, sent, received, redrafted, OR executed, including without limitation written AND electronic COMMUNICATIONS,

letters, correspondence, notes, memoranda of telephone conversations OR meetings,
diaries, desk calendars, interoffice COMMUNICATIONS, fax messages, E-mail
messages, telegrams, telex messages, records, studies, bills, receipts, checks, checkbooks,
purchase orders, invoices, requisitions, studies, summaries, analyses, statistical AND
financial statements, charts, graphs, reports, computer printouts, laboratory notebooks,
invention disclosure DOCUMENTS, patent applications AND drafts thereof, test records,
test reports, assignments, licenses, bills of sale, sale of business agreements, market
studies, articles, publications, patents, manuals, magnetic tapes, tabulations, work papers,
journals, microfiche, microfilm, photographic film, surveys, forms, printed brochures OR
material similar to ANY of the foregoing, however denominated, by whomever prepared,
AND to whomever addressed, which are in YOUR possession, custody OR control OR to
which YOU have, have had, OR can obtain access. If the DOCUMENT bears ANY
marks, including but not limited to initials, stamped indicia, comments OR notations that
are not part of the original text OR photographic reproduction thereof, these should be
provided in a separate copy of the document.

13.     "IDENTIFY" when used in conjunction with a DOCUMENT OR other
THING means to specify the DOCUMENT OR THING in sufficient detail to permit
BAXTER to locate said DOCUMENT OR THING.

14.     "IDENTIFY" when used in conjunction with a PERSON means to provide
the name, current OR last known address, AND telephone number of the PERSON, AND
current OR last known employer, position title, AND relationship of the PERSON to
ANY party herein.

15.     "IMMUNOGLOBULIN PRODUCT" means ANY product containing

- 4 -

immunoglobulin ("Ig") antibodies, including but not limited to one OR more of IgA, IgD, IgE, IgG, AND IgM antibodies, notwithstanding whether regulatory approval was sought OR obtained for such product.

16.    "PERTAINING TO," "PERTAIN TO," "RELATING TO," AND "RELATE TO" mean constituting, consisting of, relating to, referring to, evidencing, supporting, contradicting, reflecting, OR resulting from the matter specified.

17.    "PRIOR ART" means ALL DOCUMENTS, THINGS, patents, publications, disclosures, sales, offers for sale, public uses, prior inventions, derivation OR other acts OR occurrences that are or could be considered prior art within the broadest possible meaning of 35 U.S.C. §§ 102 OR 103.

18.    "RELATED PATENT(S) " OR "RELATED APPLICATION(S)" means ANY patent claiming priority to the European Patent Office Application Number 96 114 439 filed September 10, 1996 OR U.S. Patent Application No. 08/532,211 filed September 22, 1995, whether foreign OR domestic, including ANY letters patent, reissued patent, reexamination certificate, Supplementary Protection Certificate, OR inventor's certificate, OR ANY patent application claiming priority to European Patent Office Application Number 96 114 439 filed September 10, 1996 OR U.S. Patent Application No. 08/532,211 filed September 22, 1995, whether foreign OR domestic, including ANY regular patent application, ANY continuation, continuation-in-part, OR divisional application, ANY reissue application, ANY reexamination application, OR ANY extension of ANY of these.

19.    "THE '191 PATENT" refers to U.S. Patent No. 6,686,191.

20.    "THING" OR "THINGS" means ANY tangible object other than a

DOCUMENT including but not limited to objects of every kind AND nature, as well as prototypes, samples, models, drafts, OR specimens thereof.

21.    Miscellaneous: "AND" AND "OR" shall each be considered as either conjunctive OR disjunctive, whichever is more inclusive in content. The terms "ANY" AND "ALL" shall be considered to include "each and every." The singular form of a noun OR pronoun shall be considered to include within its meaning the plural form of the noun OR pronoun so used, AND vice versa.

## REQUESTS FOR ADMISSIONS

### REQUEST NO. 1:

Admit that anticomplement activity ("ACA") measurements were not taken both before and after solvent detergent treatment of any single solution or lot for any of the data reported in the '191 patent.

### REQUEST NO. 2:

Admit that no laboratory notebooks reflect the data reported in Tables 6 and 7 in the '191 patent.

### REQUEST NO. 3:

Admit that an assay based on References 19 and 20 in the '191 patent was used to measure the ACA levels reported in the '191 patent.

### REQUEST NO. 4:

Admit that the ACA assay protocol published by the European Pharmacopoeia ("EP assay") was not used to measure the ACA levels reported in the '191 patent.

### REQUEST NO. 5:

Admit that an ACA assay based on or derived from the EP assay was not used to

measure the ACA levels reported in the '191 patent.

### REQUEST NO. 6:

Admit that an ACA level of less than 50% determined using the EP assay was acceptable under European Pharmacopoeia guidelines for intravenous immunoglobulin products in 1995.

### REQUEST NO. 7:

Admit that an ACA result of less than 50% determined using the EP assay is currently acceptable under European Pharmacopoeia guidelines for intravenous immunoglobulin products.

### REQUEST NO. 8:

Admit that diafiltration alone is insufficient to remove cholate from an immunoglobulin solution or reduce its concentration to low residual levels.

### REQUEST NO. 9:

Admit that different steps or methods are needed to substantially remove polysorbate 80 (hereafter "Tween 80") from an immunoglobulin solution than would be needed to substantially remove cholate from an immunoglobulin solution.

### REQUEST NO. 10:

Admit that different steps or methods are needed to substantially remove octoxynol 9 ("hereafter Triton X-100") from an immunoglobulin solution than would be needed to substantially remove cholate from an immunoglobulin solution.

### REQUEST NO. 11:

Admit that cholate is more difficult to remove from an immunoglobulin solution than is caprylate.

**REQUEST NO. 12:**

Admit that ACA data for Bayer immunoglobulin samples RB21872-44, RB22645-20, and RB21869-83 were not disclosed to the United States Patent and Trademark Office ("PTO") at any time during prosecution of the '191 patent.

**REQUEST NO. 13:**

Admit that the '191 patent does not provide any data showing any effect on ACA levels of an incubation at more than 5°C for fewer than 10 days.

**REQUEST NO. 14:**

Admit that IgM is a type of antibody.

**REQUEST NO. 15:**

Admit that the following statement was true as of September 22, 1995: "Elevated ACA levels were always detected at the sterile bulk stage (i.e., after compounding as 5% or 10% IGIV and filtration with 0.2 µm sterile filters) of all tri-n-butyl phosphate (TNBP)/detergent treated IGIV preparations regardless of process scale."

**REQUEST NO. 16:**

Admit that the following statement was false as of September 22, 1995: "Elevated ACA levels were always detected at the sterile bulk stage (i.e., after compounding as 5% or 10% IGIV and filtration with 0.2 µm sterile filters) of all tri-n-butyl phosphate (TNBP)/detergent treated IGIV preparations regardless of process scale."

**REQUEST NO. 17:**

Admit that the following statement is true: "contacting an antibody solution with a trialkylphosphate and a detergent under conditions sufficient to substantially reduce any lipid-enveloped virus activity always results in an increased level of anticomplement

- 8 -

activity."

### REQUEST NO. 18:

Admit that the following statement is <u>false</u>: "contacting an antibody solution with a trialkylphosphate and a detergent under conditions sufficient to substantially reduce any lipid-enveloped virus activity always results in an increased level of anticomplement activity."

### REQUEST NO. 19:

Admit that the following statement is <u>true</u>: "contacting a solution comprising Cohn's Fraction II or III filtrate with a trialkylphosphate and a detergent under conditions sufficient to substantially reduce any lipid-enveloped virus activity always results in an increased level of anticomplement activity."

### REQUEST NO. 20:

Admit that the following statement is <u>false</u>: "contacting a solution comprising Cohn's Fraction II or III filtrate with a trialkylphosphate and a detergent under conditions sufficient to substantially reduce any lipid-enveloped virus activity always results in an increased level of anticomplement activity."

### REQUEST NO. 21:

Admit that diafiltration alone is not sufficient to remove Tween 80 or reduce its concentration to amounts safe for intravenous injection after an antibody solution has been contacted with a trialkylphosphate and Tween 80 under conditions sufficient to substantially reduce any lipid-enveloped virus.

### REQUEST NO. 22:

Admit that hydrophobic chromatography alone is not sufficient to remove Tween

80 or reduce its concentration to amounts safe for intravenous injection after an antibody solution has been contacted with a trialkylphosphate and Tween 80 under conditions sufficient to substantially reduce any lipid enveloped virus.

### REQUEST NO. 23:

Admit that diafiltration and hydrophobic chromatography combined are not sufficient to remove Tween 80 or reduce its concentration to amounts safe for intravenous injection after an antibody solution has been contacted with a trialkylphosphate and Tween 80 under conditions sufficient to substantially reduce any lipid enveloped virus.

### REQUEST NO. 24:

Admit that the '191 patent teaches that an ACA level of more than "45 $CH_{50}$ units/mL" for a 5% immunoglobulin G intravenous ("IGIV") solution, as measured in the '191 patent, was an unacceptable level of ACA for intravenous administration.

### REQUEST NO. 25:

Admit that the '191 patent teaches that an ACA level of less than "45 $CH_{50}$ units/mL" for a 5% IGIV solution, as measured in the '191 patent, was an acceptable level of ACA for intravenous administration.

### REQUEST NO. 26:

Admit that the '191 patent teaches that an ACA level of more than "60 $CH_{50}$ units/mL" for a 10% IGIV solution, as measured in the '191 patent, was an unacceptable level of ACA for intravenous administration.

### REQUEST NO. 27:

Admit that the '191 patent teaches that an ACA level of less than "60 $CH_{50}$

- 10 -

units/mL" for a 10% IGIV solution, as measured in the '191 patent, was an acceptable level of ACA for intravenous administration.

### REQUEST NO. 28:

Admit that the reported "sterile bulk (day zero)" ACA level (43 $CH_{50}$/mL) for Sample A1 in Table 7 of the '191 patent is less than "45 $CH_{50}$ units/mL" as used in claim 3 of the '191 patent.

### REQUEST NO. 29:

Admit that the reported "sterile bulk (day zero)" ACA level (31 $CH_{50}$/mL) for Sample A2 in Table 7 of the '191 patent is less than "45 $CH_{50}$ units/mL" as used in claim 3 of the '191 patent.

### REQUEST NO. 30:

Admit that the reported "sterile bulk (day zero)" ACA level (44 $CH_{50}$/mL) for Sample A3 in Table 7 of the '191 patent is less than "45 $CH_{50}$ units/mL" as used in claim 3 of the '191 patent.

### REQUEST NO. 31:

Admit that the reported "sterile bulk (day zero)" ACA level (49 $CH_{50}$/mL) for Sample B2 in Table 7 of the '191 patent is less than "60 $CH_{50}$ units/mL" as used in claim 5 of the '191 patent.

### REQUEST NO. 32:

Admit that the reported "sterile bulk (day zero)" ACA level (53 $CH_{50}$/mL) for Sample B3 in Table 7 of the '191 patent is less than "60 $CH_{50}$ units/mL" as used in claim 5 of the '191 patent.

**REQUEST NO. 33:**

Admit that the reported ACA levels in the Figure in the '191 patent were measured in a 5% immunoglobulin solution.

**REQUEST NO. 34:**

Admit that the "NO INCUBATION" bar of the Figure in the '191 patent illustrates the average "sterile bulk (day zero)" ACA values of samples A1, A2, A3 and A4 in Table 7 of the '191 patent.

**REQUEST NO. 35:**

Admit that the "WITH INCUBATION" bar of the Figure in the '191 patent illustrates the average ACA values after incubation of samples A1, A2, A3 and A4 in Table 7 of the '191 patent.

**REQUEST NO. 36:**

Admit that the "CONTROL (TENOLD)" bar of the Figure in the '191 patent illustrates the control data point shown in the first row of Table 1 of the '191 patent.

**REQUEST NO. 37:**

Admit that the experimental conditions used for the experiment whose ACA value is reflected in the "CONTROL (TENOLD)" bar were not the same experimental conditions used for the experiment(s) whose ACA values are reflected in the "NO INCUBATION" and "WITH INCUBATION" bars of the Figure in the '191 patent.

**REQUEST NO. 38:**

Admit that the data reported in the '191 patent show that high ACA levels following TNBP/cholate treatment was not due to the presence of aggregated IgG molecules.

**REQUEST NO. 39:**

Admit that the data reported in the '191 patent show that high ACA levels following solvent/detergent treatment was not due to the presence of aggregated IgG molecules.

**REQUEST NO. 40:**

Admit that the percentage of aggregates reported in Table 4 of the '191 patent could be lower than actually existed in the samples due to removal of aggregates by either sterile filtration or a HPLC guard column.

**REQUEST NO. 41:**

Admit that the data reported in the '191 patent show that lowering of ACA levels following incubation at pH 5.8 was not due to a reduction of aggregated IgG molecules.

**REQUEST NO. 42:**

Admit that the data reported in the '191 patent show that lowering of ACA levels following incubation at pH 4.25 was not due to a reduction of aggregated IgG molecules.

**REQUEST NO. 43:**

Admit that Ng et al., *Vox Sang.* 65:81-96 (1993) is prior art to the '191 patent.

**REQUEST NO. 44:**

Admit that Ng et al., *Vox Sang.* 65:81-96 (1993) was published in 1993, more than a year before September 22, 1995.

**REQUEST NO. 45:**

Admit that U.S. Patent No. 5,256,771 is prior art to the '191 patent.

**REQUEST NO. 46:**

Admit that U.S. Patent No. 5,256,771 issued on October 26, 1993, more than a

year before September 22, 1995.

### REQUEST NO. 47:

Admit that U.S. Patent No. 5,648,472 is prior art to the '191 patent.

### REQUEST NO. 48:

Admit that the application leading to U.S. Patent No. 5,648,472 was filed with the

PTO on October 26, 1994.

### REQUEST NO. 49:

Admit that U.S. Patent No. 5,419,906 is prior art to the '191 patent.

### REQUEST NO. 50:

Admit that the application leading to U.S. Patent No. 5,419,906 was filed with the

PTO on October 23, 1992.

### REQUEST NO. 51:

Admit that U.S. Patent No. 4,396,608 is prior art to the '191 patent.

### REQUEST NO. 52:

Admit that U.S. Patent No. 4,396,608 issued August 2, 1983, more than a year

before September 22, 1995.

### REQUEST NO. 53:

Admit that U.S. Patent No. 4,540,573 is prior art to the '191 patent.

### REQUEST NO. 54:

Admit that U.S. Patent No. 4,540,573 issued September 10, 1985, more than a

year before September 22, 1995.

### REQUEST NO. 55:

Admit that European Patent Application EP525502 A1 is prior art to the '191

patent.

**REQUEST NO. 56:**

Admit that European Patent Application EP525502 A1 was published on

February 3, 1993, more than a year before September 22, 1995.

**REQUEST NO. 57:**

Admit that Prince et al., *Proc. Natl. Acad. Sci. USA* 85:6944-6948 (1988) is prior

art to the '191 patent.

**REQUEST NO. 58:**

Admit that Prince et al., *Proc. Natl. Acad. Sci. USA* 85:6944-6948 (1988) was

published in 1988, more than a year before September 22, 1995.

**REQUEST NO. 59:**

Admit that Barandun et al., *Vox Sang.* 7:157-174 (1962) is prior art to the '191

patent.

**REQUEST NO. 60:**

Admit that Barandun et al., *Vox Sang.* 7:157-174 (1962) was published in 1962,

more than a year before September 22, 1995.

**REQUEST NO. 61:**

Admit that Rousell, *J. Hospital Infection* (1988) 12 (Supplement D), 17-27 is

prior art to the '191 patent.

**REQUEST NO. 62:**

Admit that Rousell, *J. Hospital Infection* (1988) 12 (Supplement D), 17-27 was

published in 1988, more than a year before September 22, 1995.

**REQUEST NO. 63:**

Admit that Hamalainen, *Vox Sang.*, 63:6-11 (1992) is prior art to the '191 patent.

**REQUEST NO. 64:**

Admit that Hamalainen, *Vox Sang.*, 63:6-11 (1992) was published in 1992, more than a year before September 22, 1995.

**REQUEST NO. 65:**

Admit that Gao et al., *Vox Sang.*, 64:204-209 (1993) is prior art to the '191 patent.

**REQUEST NO. 66:**

Admit that Gao et al., *Vox Sang.*, 64:204-209 (1993) was published in 1993, more than a year before September 22, 1995.

**REQUEST NO. 67:**

Admit that Piet et al., *Transfusion* 30(7):591-598 (1990) is prior art to the '191 patent.

**REQUEST NO. 68:**

Admit that Piet et al., *Transfusion* 30(7):591-598 (1990) was published in 1990, more than a year before September 22, 1995.

**REQUEST NO. 69:**

Admit that Gamimune-N 10%, in the form in which it was sold prior to September 1994, was substantially free of lipid enveloped viruses.

**REQUEST NO. 70:**

Admit that Gamimune-N 10%, in the form in which it was sold prior to September 1994, was incubated at about 23-27° C for about 24 days to inactivate viruses.

- 16 -

**REQUEST NO. 71:**

Admit that Gamimune-N 10%, in the form in which it was sold prior to September 1994, was an intravenously injectable immune serum globulin preparation.

**REQUEST NO. 72:**

Admit that Gamimune-N 10%, in the form in which it was sold prior to September 1994, had an ionic strength less than about 0.001.

**REQUEST NO. 73:**

Admit that Gamimune-N 10%, in the form in which it was sold prior to September 1994, had a pH between about 3.5 and about 5.0.

**REQUEST NO. 74:**

Admit that Gamimune-N 10%, in the form in which it was sold prior to September 1994, had an antibody concentration of about 10% wt./wt.

**REQUEST NO. 75:**

Admit that Gamimune-N 10%, in the form in which it was sold prior to September 1994, had a glycine concentration of about 0.2 M.

**REQUEST NO. 76:**

Admit that Gamimune-N 10% was first sold in 1992, more than a year before September 22, 1995.

**REQUEST NO. 77:**

Admit that Gamimune-N 5%, in the form in which it was sold prior to September 1994, was substantially free of lipid enveloped viruses.

**REQUEST NO. 78:**

Admit that Gamimune-N 5%, in the form in which it was sold prior to September

- 17 -

1994, was incubated at about 23-27° C for about 24 days to inactivate viruses.

### REQUEST NO. 79:

Admit that Gamimune-N 5%, in the form in which it was sold prior to September 1994, was an intravenously injectable immune serum globulin preparation.

### REQUEST NO. 80:

Admit that Gamimune-N 5%, in the form in which it was sold prior to September 1994, had an ionic strength less than about 0.001.

### REQUEST NO. 81:

Admit that Gamimune-N 5%, in the form in which it was sold prior to September 1994, had a pH between about 3.5 and about 5.0.

### REQUEST NO. 82:

Admit that Gamimune-N 5%, in the form in which it was sold prior to September 1994, had an antibody concentration of about 10% wt./wt.

### REQUEST NO. 83:

Admit that Gamimune-N 5%, in the form in which it was sold prior to September 1994, had a glycine concentration of about 0.2 M.

### REQUEST NO. 84:

Admit that Gamimune-N 5% was first sold in 1992, more than a year before September 22, 1995.

### REQUEST NO. 85:

Admit that the laboratory notebook entitled RB21985 (TAL049990-050099) dated February 4, 1993 - June 4, 1993 is a true and correct copy of the original laboratory notebook of Susan Trukawinski.

**REQUEST NO. 86:**

Admit that the laboratory notebook entitled RB22644 (TAL050207-TAL050313) dated May 17, 1993 - November 5, 1993 is a true and correct copy of the original laboratory notebook of Susan Trukawinski.

**REQUEST NO. 87:**

Admit that the laboratory notebook entitled RB22645 (TAL050314-050420) dated November 19, 1993 - October 10, 1994 is a true and correct copy of the original laboratory notebook of Susan Trukawinski.

**REQUEST NO. 88:**

Admit that the laboratory notebook entitled RB21869 (TAL039673-040393 and TAL044662-044768) dated August 18, 1992 - March 16, 1993 are true and correct copies of the original laboratory notebook of William Alonso.

**REQUEST NO. 89:**

Admit that the pages produced as production numbers TAL039673-040393 and TAL044662-044768 are true and correct copies of excerpts of the original laboratory notebook of William Alonso entitled RB21869 dated August 18, 1992 - March 16, 1993.

**REQUEST NO. 90:**

Admit that the laboratory notebook entitled RB21986 (TAL050100-050206) dated February 23, 1993 - February 26, 1994  is a true and correct copy of the original laboratory notebook of Susan Trukawinski.

**REQUEST NO. 91:**

Admit that the laboratory notebook entitled RB21872 (TAL044925-044991) dated February 15, 1993 is a true and correct copy of the original laboratory notebook of

Susan Trukawinski.

### REQUEST NO. 92:

Admit that the laboratory notebook entitled RB21872 (TAL044925-044991)

dated February 15, 1993 is a true and correct copy of the original laboratory notebook of

Susan Trukawinski.

### REQUEST NO. 93:

Admit that the laboratory notebook entitled RB24411 (TAL050421-050526)

dated January 17, 1994 - May 9, 1994 is a true and correct copy of the original laboratory

notebook of Susan Trukawinski.

### REQUEST NO. 94:

Admit that the laboratory notebook entitled RB24434 (TAL044993-045010) dated

May 4, 1994 is a true and correct copy of the original laboratory notebook of Doug

Sakowski.

### REQUEST NO. 95:

Admit that the laboratory notebook entitled RB24438 (TAL050579-050692)

dated November 14, 1994 - June 15, 1995 is a true and correct copy of the original

notebook of Susan Trukawinski.

### REQUEST NO. 96:

Admit that the laboratory notebook entitled RB24428 (TAL050780-050836)

dated March 23,1994 - May 5, 1994 is a true and correct copy of the original laboratory

notebook of John M. Lang.

### REQUEST NO. 97:

Admit that the laboratory notebook entitled CRB9726-457 (TAL045011-045075)

dated January 19, 1998 - March 4, 1998 is a true and correct copy of the original

laboratory notebook of Matt Jones.

### REQUEST NO. 98:

Admit that the laboratory notebook entitled RB25001 (TAL044852-044924,

TAL039036-039059 and TAL037648-037665) dated May 1994 is a true and correct copy

of the original notebook of William Alonso.

### REQUEST NO. 99:

Admit that the pages produced as production numbers TAL044852-044924,

TAL039036-039059 and TAL037648-037665 are true and correct copies of excerpts of the

original laboratory notebook of William Alonso entitled RB25001 dated May 1994.

### REQUEST NO. 100:

Admit that the laboratory notebook entitled RB25022 (TAL044769-044811 and

TAL039060-039179) is the true and correct copy of the original notebook of William

Alonso.

### REQUEST NO. 101:

Admit that the pages produced as production numbers TAL044769-044811 and

TAL039060-039179 are true and correct copies of excerpts of the original laboratory

notebook of William Alonso entitled RB25022.

### REQUEST NO. 102:

Admit that the laboratory notebook entitled CRB 9426 (TAL 045086-045124)

dated May 15, 1995-August 11, 1995 is the true and correct copy of the original notebook

of Michael William.

**REQUEST NO. 103:**

Admit that the laboratory notebook entitled CRB 9726-449 (TAL 045125-045149) dated December 1997 is the true and correct copy of an original notebook.

**REQUEST NO. 104:**

Admit that the laboratory notebook entitled RB 25028 (TAL 044812-044851 and TAL 039638-039672) dated October 1994 is the true and correct copy of the original notebook of William Alonso.

**REQUEST NO. 105:**

Admit that the pages produced as production numbers TAL 044812-044851 and TAL 039638-039672 are true and correct copies of excerpts of the original laboratory notebook of William Alonso entitled RB25028 dated October 1994.

**REQUEST NO. 106:**

Admit that the laboratory notebook entitled RB 24418 (TAL 045151-045527) dated February 1, 1994-October 1994 is the true and correct copy of the original notebook of Doug Sakowski.

**REQUEST NO. 107:**

Admit that the notebook entitled RB 24437 (TAL 050527-050578) dated May 8, 1994-March 17, 1995 is the true and correct copy of the original notebook of Susan Trukawinski

**REQUEST NO. 108:**

Admit that the notebook entitled CRB 0526-114 (TAL 050693-050752) dated June 12, 1996 is the true and correct copy of the original notebook of John M. Lang.

**REQUEST NO. 109:**

Admit that the notebook entitled RB 24435 (TAL 045076-045084) dated May 5,

1994 is the true and correct copy of the original notebook of Barbara Masecar.

**REQUEST NO. 110:**

Admit that the notebook entitled RB 20641 (TAL 050753-050779) dated April

1992 is the true and correct copy of the original notebook of George Baumbach.

**REQUEST NO. 111:**

Admit that the notebook entitled RB 25019 (TAL 051561-051615) dated August-

September 1994 is the true and correct copy of the original notebook of George

Baumbach.

**REQUEST NO. 112:**

Admit that the notebook entitled RB 22620 (TAL 045258-045354) dated August

11, 1993 is the true and correct copy of the original notebook by William Alonso.

**REQUEST NO. 113:**

Admit that the notebook entitled RB 24436 (TAL 050911-050968) dated May 5,

1994-June 12, 1996 is the true and correct copy of the original notebook by John M.

Lang.

**REQUEST NO. 114:**

Admit that the notebook entitled RB 25006 (TAL 051359-051414) dated June 15,

1994 is the true and correct copy of the original notebook by John M. Lang.

**REQUEST NO. 115:**

Admit that Notebook RB 22644 (TAL 050233) contains the experimental data

that is referenced in Table 1 of the '191 patent.

**REQUEST NO. 116:**

Admit that Notebook RB 21985 (TAL 050096) contains the experimental data that is referenced in Table 2 of the '191 patent.

**REQUEST NO. 117:**

Admit that the ACA $CH_{50}$/ml value of "13" in Table 2 of the '191 patent is the average of RB21985-80C and RB21985-80D.

**REQUEST NO. 118:**

Admit that Notebook RB 21985 (TAL 050083-050099) contains the experimental data that is referenced in Table 3 of the '191 patent.

**REQUEST NO. 119:**

Admit that samples X 646 P001-X 646 P004 (as identified in TAL 027510, for example) correspond to samples A1-A4 in Table 7 of the '191 patent.

**REQUEST NO. 120:**

Admit that samples X 648 P001-X 648 P003 (as identified in TAL 027510, for example) correspond to samples B1-B3 in Table 7 of the '191 patent.

**REQUEST NO. 121:**

Admit that the table labeled "Qualification lots. Incubation pH was 5.8" at TAL 027510 is the data of Table 7 of the '191 patent.

**REQUEST NO. 122:**

Admit that the graph of "Anticomplement Activity of 5% IGIV after 22 degree incubation" at TAL 027515 is the data of Table 7 of the '191 patent.

**REQUEST NO. 123:**

Admit that the ACA value of 23 for the initial sterile bulk in Table 1 of

TAL029463 is not included in the '191 patent.

**REQUEST NO. 124:**

Admit that the data reflected in the second column of Table 1 (TAL 018558) in

the Alonso Report (TAL 018537-018564) filed as part of the PLA is not included in the

'191 patent.


POTTER ANDERSON & CORROON LLP

OF COUNSEL:
James G. Gilliland, Jr.                    By: _____
Susan M. Spaeth                                 Philip A. Rovner (#3215)
Anne M. Rogaski                                 Hercules Plaza
Angus M. MacDonald                              P.O. Box 951
TOWNSEND AND TOWNSEND AND                       Wilmington, Delaware 19899-0951
CREW LLP                                        (302) 984-6000
379 Lytton Avenue                               Email:  provner@potteranderson.com
Palo Alto, California  94301
(650) 326-2400                             *Attorneys for Defendant*
                                           *Baxter International Inc. and*
Dated:  August 30, 2006                    *Defendant/Counterclaimant*
                                           *Baxter Healthcare Corporation*
748265

- 25 -

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on August 30, 2006, true and correct copies of the within document were served on the following counsel of record at the addresses and in the manner indicated:

| BY HAND DELIVERY AND E-MAIL | BY FEDERAL EXPRESS AND E-MAIL |
|---|---|
| Jeffrey B. Bove, Esq.<br>Mary W. Bourke, Esq.<br>Mark E. Freeman, Esq.<br>Jaclyn M. Mason, Esq.<br>Donna Hallowell<br>Connolly Bove Lodge & Hutz LLP<br>1007 N. Orange Street<br>P. O. Box 2207<br>Wilmington, DE 19899-2207<br>jbove@cblh.com<br>mbourke@cblh.com<br>mfreeman@cblh.com<br>jmason@cblh.com<br>dhallowell@cblh.com | Bradford J. Badke, Esq.<br>Gabrielle Ciuffreda, Esq.<br>Ropes & Gray LLP<br>1251 Avenue of the Americas<br>New York, NY 10020-1105<br>bradford.badke@ropesgray.com<br>gabrielle.ciuffreda@ropesgray.com |

Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com