# Exhibit A

EXHIBIT A

*Talecris Biotherapeutics, Inc. and Bayer HealthCare LLC v. Baxter Intl., Inc. and Baxter Healthcare Corp.*
(Case No. 05-349-GMS (D. Del.))

## JOINT CLAIMS CONSTRUCTION CHART

CLAIM TERMS FROM THE ASSERTED PATENT[1] THAT PLAINTIFFS AND/OR DEFENDANTS CONTEND REQUIRE CONSTRUCTION BY THE COURT.[2]

| Term No. | Asserted Claim(s) | Term | Plaintiffs' Proposed Construction and Intrinsic Evidence | Defendants' Proposed Construction and Intrinsic Evidence |
|---|---|---|---|---|
| 1 | 1 | "any virus activity" | No construction required; ordinary meaning of the claim language to the skilled artisan, as viewed in the context of the claim, and not inconsistent with the specification or claim. | Proposed Construction<br><br>"any virus" means "activity of all viruses in solution."<br><br>Intrinsic Evidence<br><br>Claim 21;<br>Claim 23;<br>Col. 1:8-12;<br>Col. 1:42-45;<br>Col. 2:6-10;<br>Col. 3:65-4:29. |

---

[1] The patent asserted in this action by Plaintiffs is:  U.S. Patent No. 6,686,191 ('191 patent).
[2] The parties reserve all arguments regarding application of the doctrine of equivalents and/or prosecution history estoppel to any term of the asserted patent.

| 2 | 1 | "under conditions…resulting in an increased level of anticomplement activity" | The plain meaning of the claim terms is definite and valid.<br><br>"[U]nder conditions…resulting in an increased level of anticomplement activity" incorrectly takes the claim terms out of context. The correct terminology is "under conditions sufficient to substantially reduce any virus activity and resulting in an increased level of anticomplement activity." *See term 3.*<br><br>In the alternative, no construction required; ordinary meaning of the claim language to the skilled artisan, as viewed in the context of the claim, and not inconsistent with the specification or claim. | "under conditions…resulting in an increased level of anticomplement activity" is not susceptible to a sufficiently precise construction to permit the skilled artisan to determine when s/he infringes the claim, and thus is indefinite.<br><br>Alternatively, should the Court believe the term is capable of construction, Defendants propose "under conditions…resulting in an increased level of anticomplement activity" means "adding TNBP and cholate in an amount known to the artisan to reduce viral activity, at a pH of about 7.0 for a time known to the artisan to reduce virus activity."<br><br>Intrinsic Evidence<br><br>Col. 3:62-5:41;<br>Col. 6:26-63;<br>Col. 8:6-9:10;<br>Table 1;<br>Table 5;<br>Table 6;<br>Table 7; |

| | | | | |
|---|---|---|---|---|
| 3 | 1 | "under conditions sufficient to substantially reduce any virus activity and resulting in an increased level of anticomplement activity." | No construction required; ordinary meaning of the claim language to the skilled artisan, as viewed in the context of the claim, and not inconsistent with the specification or claim. | Figure 1; Amendment dated May 9, 1996, p. 2-3 "[U]nder conditions…resulting in an increased level of anticomplement activity" correctly puts the claim term in context and does not require the added phrase "sufficient to substantially reduce any virus activity" to give it context. *See term 2.*<br><br>The proper construction of this term is set forth above for term 2. With respect to the phrase, "sufficient to substantially reduce any virus activity," the proper construction of "any virus activity" is "activity of all viruses in solution" as set forth above in term 1 and the remainder of that phrase, "sufficient to substantially reduce" does not require construction or should be construed in accordance with its ordinary meaning. |
| 4 | 1 | "increased level of anticomplement activity." | No construction required; ordinary meaning of the claim language to the skilled artisan, as viewed in the context of the claim, and not inconsistent with the specification or claim. | Proposed Construction<br><br>"increased level of anticomplement activity" means "increased anticomplement activity from a level acceptable for intravenous administration to a level unacceptable for intravenous administration."<br><br>Intrinsic Evidence |

| 5 | 1 | "increased anticomplement activity of the solution" | The plain meaning of the claim terms is definite and valid.<br><br>No construction required; ordinary meaning of the claim language to the skilled artisan, as viewed in the context of the claim, and not inconsistent with the specification or claim. | Claim 1;<br>Abstract;<br>Col. 2:6-18;<br>Col. 2:31-34;<br>Col. 5:47-49;<br>Col. 7:20-24;<br>Col. 9:38-44;<br>Col. 10:24-26;<br>Amendment dated May 9, 1996, pp. 2-3;<br>Amendment after Final dated November 18, 1996, p. 2, 4-5;<br>Applicant's Appeal Brief, p. 3;<br>Board of Patent Appeals and Interferences Decision, p. 5, 7-10.<br><br>Proposed Construction<br><br>"increased anticomplement activity" is properly construed as "increased anticomplement activity from a level acceptable for intravenous administration to a level unacceptable for intravenous administration."<br><br>"... of the solution" is not susceptible to a sufficiently precise construction to permit the skilled artisan to determine when s/he infringes the claim, and thus is indefinite.<br><br>Alternatively, should the Court believe |

the full term is capable of construction, Defendants propose "increased anticomplement activity of the solution" means "increased anticomplement activity of the solution from a level acceptable for intravenous administration to a level unacceptable for intravenous administration."

Intrinsic Evidence

Claim 1;
Abstract;
Col. 2:6-18;
Col. 2:31-34;
Col. 5:47-49;
Col. 7:20-24;
Col. 9:38-44;
Col. 10:24-26;
Amendment dated May 9, 1996, pp. 2-3;
Amendment after Final dated November 18, 1996, p. 2, 4-5;
Applicant's Appeal Brief, p. 3;
Board of Patent Appeals and Interferences Decision, p. 5, 7-10.

Incubating a solution originating from step a) under conditions of controlled time, pH, temperature, and ionic strength, wherein additional steps may be performed prior to said incubating.

Proposed Construction

"then incubating the solution of step a)" means "incubating the solvent-detergent treated solution resulting from step a) without any additional processing steps

"then incubating the solution of step a)"

6    1

| # | Claim Term | | |
|---|---|---|---|
| | | *Ordinary meaning of the claim language; column 2, lines 10-23; column 5, lines 25-41; tables 5 and 7; column 8, lines 29-37;column 9, lines 11-21; column 10, lines 24-34; claims 12 and 15-18.* | between steps a) and b)."<br><br>Intrinsic Evidence<br><br>Claim 1;<br>Col. 10:55-59. |
| 5 | "about 60 CH$_{50}$ units/mL" | The plain meaning of the claim terms is definite and valid.<br><br>About 60 CH$_{50}$ units/mL of ACA activity, as measured by any assay using a complement and red blood cell/hemolysin system.<br><br>*Column 5, line 64-column 6, line 1.* | Proposed Construction<br><br>"about 60 CH$_{50}$ units/mL" is not susceptible to a sufficiently precise construction to permit the skilled artisan to determine when s/he infringes the claim, and thus is indefinite.<br><br>Alternatively, should the Court believe this term is capable of construction, Defendants propose "about 60 CH$_{50}$ units/mL" means "approximately 60 CH$_{50}$ units/mL, as determined by the particular anticomplement activity assay used to obtain the anticomplement activity data reported in the '191 patent."<br><br>Intrinsic Evidence<br><br>Col. 5:61-63;<br>Col. 5:64-6:16. |
| 6 | "about 45 CH$_{50}$ units/mL" | The plain meaning of the claim terms is definite and valid. | Proposed Construction<br><br>"about 45 CH$_{50}$ units/mL" is not |

Row numbers on far left: 7, 5, 8, 6

| | | | | |
|---|---|---|---|---|
| | | | About 45 CH$_{50}$ units/mL of ACA activity, as measured by any assay using a complement and red blood cell/hemolysin system. *Column 5, line 60-column 6, line 1.* | susceptible to a sufficiently precise construction to permit the skilled artisan to determine when s/he infringes the claim, and thus is indefinite. Alternatively, should the Court believe this term is capable of construction, Defendants propose "about 45 CH$_{50}$ units/mL" means "approximately 45 CH$_{50}$ units/mL, as determined by the particular anticomplement activity assay used to obtain the anticomplement activity data reported in the '191 patent." <u>Intrinsic Evidence</u> Col. 5:57-64; Col. 5:64-6:16. |
| 9 | 1-2,5-6 | "anticomplement activity" | The plain meaning of the claim terms is definite and valid. The ability of antibodies to bind complement. *Column 1, lines 19-22.* | <u>Proposed Construction</u> "anticomplement activity" is not susceptible to a sufficiently precise construction to permit the skilled artisan to determine when s/he infringes the claim, and thus is indefinite. Alternatively, should the Court believe this term is capable of construction, Defendants propose "anticomplement activity" means "the amount of protein |

capable of activating 50% of the complement in an optimally titered complement and red blood cell/hemolysin system, as determined by the particular anticomplement activity assay used to obtain the anticomplement activity data reported in the '191 patent."

Intrinsic Evidence

Col. 1:15-19;
Col. 2:15-17;
Col. 2:31-34;
Col. 5:57-6:16.

---

| 10 | 1 | "acceptable level suitable for intravenous administration" | The plain meaning of the claim terms is definite and valid. No construction required; ordinary meaning of the claim language to the skilled artisan, as viewed in the context of the claim, and not inconsistent with the specification or claim. | Proposed Construction |

"acceptable level suitable for intravenous administration" is not susceptible to a sufficiently precise construction to permit the skilled artisan to determine when s/he infringes the claim, and thus is indefinite.

Alternatively, should the Court believe this term is capable of construction, Defendants propose "acceptable level suitable for intravenous administration" means "a defined numerical level that depends upon the protein concentration, specifically, 60 $CH_{50}$ units/mL for a

10% solution and 45 $CH_{50}$ units/mL for a 5% solution, as determined by the particular anticomplement activity assay used to obtain the anticomplement activity data reported in the '191 patent."

Intrinsic Evidence

Abstract;
Col. 1:15-19;
Col. 2:15-17;
Col. 2:31-34;
Col. 5:51-6:16;
Col. 9:38-44;
Col. 10:55-59;
Table 3;
Table 7;
Amendment dated May 9, 1996, p. 2-3;
Office Action dated August 15, 1996, p. 2;
Amendment after Final dated November 18, 1996, p. 4;
Applicant's Appeal Brief, p. 2.

**CLAIM TERMS FROM THE ASSERTED PATENTS THAT PLAINTIFFS AND DEFENDANTS HAVE REACHED AGREEMENT ON CONSTRUCTION.**

| | | | Agreed Construction |
|---|---|---|---|
| 1 | 1,10,12, 23 | "ionic strength" | "ionic strength" means "the summation: $I=\frac{1}{2}\sum(c_i z_i^2)$ where $c_i$ is the concentration of each type of ion (in moles $1^{-1}$) and $z$ is its charge. |