# UNREPORTED CASES

LEXSEE 128 FED. APPX. 767

**BAYER AG and BAYER CORPORATION, Plaintiffs-Appellees, v. HOUSEY PHARMACEUTICALS, INC., Defendant-Appellant.**

04-1194

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

128 Fed. Appx. 767; 2005 U.S. App. LEXIS 5419

April 4, 2005, Decided

**NOTICE:** THIS DECISION WAS ISSUED AS UNPUBLISHED OR NONPRECEDENTIAL AND MAY NOT BE CITED AS PRECEDENT. PLEASE REFER TO THE RULES OF THE FEDERAL CIRCUIT COURT OF APPEALS FOR RULES GOVERNING CITATION TO UNPUBLISHED OR NONPRECEDENTIAL OPINIONS OR ORDERS.

**SUBSEQUENT HISTORY:** Judgment entered by *Bayer Ag v. Housey Pharms., Inc.*, 2005 U.S. Dist. LEXIS 20374 (D. Del., Sept. 19, 2005)

**PRIOR HISTORY:** *Bayer AG v. Housey Pharms., Inc.*, 2003 U.S. Dist. LEXIS 22411 (D. Del., Dec. 4, 2003)

**DISPOSITION:** [**1] Vacated and Remanded.

**JUDGES:** Before CLEVENGER, RADER, and BRYSON, Circuit Judges.

**OPINION BY:** RADER

**OPINION:** [*767] RADER, Circuit Judge.

The United States District Court for the District of Delaware found *U.S. Patent Nos. 4,980,281* (issued Dec. 25, 1990) (the *'281 patent*), *5,266,464* (issued Nov. 30, 1993) (the *'464 patent*), *5,688,655* (issued Nov. 18, 1997) (the *'655 patent*), and *5,877,007* (issued March 2, 1999) (the *'007 patent*) (collectively, the Housey patents) unenforceable due to inequitable conduct. *Bayer AG v. Housey Pharms., Inc.*, Civ. No. 01-148-SLR, 2003 U.S. Dist. LEXIS 22411 (D. Del. Dec. 4, 2003). Because the district court clearly erred in making the factual findings underlying its determination, this court vacates and remands.

I.

Dr. Gerard M. Housey is the named inventor of the Housey patents. Dr. Housey's patents claim research methods used by pharmaceutical companies for discovering drugs. All of the Housey patents trace their priority to the application that matured into the *'281 patent*. The *'281 patent* claims a process for determining whether a chemical inhibits or activates the production of a protein of interest within a cell. *'281 patent*, col. [**2] 24, l. 45 - col. 26, l. 36. The claimed invention tests the cancer-fighting potential of new drugs. After the *'281 patent* issued, Dr. Housey assigned his patent rights to Housey Pharmaceuticals, Inc. (Housey).

On March 6, 2001, a group of plaintiffs, including Bayer AG and Bayer Corp. (collectively Bayer), sued Housey in the United [*768] States District Court for the District of Delaware. Bayer sought declaratory judgments of invalidity, noninfringement, and unenforceability due to inequitable conduct with regard to the Housey patents. On November 12, 2002, the district court issued a claim-construction ruling on the disputed terms in the *'281 patent*. This ruling was not favorable to Housey. At that point, Bayer entered into a stipulation with Housey, agreeing that if the district court's claim construction was upheld on appeal, Housey would not appeal a finding by the district court that the Housey patents were invalid and not infringed. The district court then entered a final judgment of invalidity and noninfringement for all of the Housey patents. Housey then appealed three of the district court's five claim construction holdings to the United States Court of Appeals for the Federal [**3] Circuit. On May 7, 2004, this court upheld one of the district court's claim constructions, which rendered the *'281 patent* invalid and not infringed. *Housey Pharms., Inc. v. Astrazeneca, UK, Ltd.*, 366 F. 3d 1348 (Fed. Cir. 2004).

Meanwhile, Bayer continued to pursue its claim that the *'281 patent* was unenforceable due to inequitable conduct. The application that matured into the *'281 pat-*

ent contained the results of several experiments demonstrating the performance of aspects of the claimed process. See '464 patent, col. 26, ll. 1-35. One of these examples, reported in Table 3 of the application (the soft-agar experiment), illustrated the use of the claimed process to demonstrate the cancer-inhibiting effects of two known cancer-inhibiting chemicals on cells grown in soft-agar. Id. The results of the soft-agar experiment were key to the issuance of the '281 patent because it was the only demonstration in the application that the process worked for inhibitors of cell activity. Dr. Housey specifically relied on the data presented in Table 3 to overcome some of the patent examiner's objections to patentability.

The district court held that Dr. Housey fabricated [**4] the experimental results of the soft-agar experiment, based on several subsidiary findings. *Bayer AG, 2003 U.S. Dist. LEXIS 22411, at *47.* First, the district court found that an article written by Dr. Housey and others, Gerard M. Housey et al., Overproduction of Protein Kinase C Causes Disordered Growth Control in Rat Fibroblasts, 52 Cell 343 (1988) (Cell Paper), disclosed much of the framework of the claimed invention. *2003 U.S. Dist. LEXIS 22411 at *10.* Second, the district court found that this 1988 paper published all of the experimental evidence reported in Dr. Housey's patent application, except for the results of the soft-agar experiment. *2003 U.S. Dist. LEXIS 22411 at *17.* Third, the district court found that some of the experimental results in the patent application were identical to experimental results credited to Dr. Housey's colleagues in the paper, yet Dr. Housey did not credit his colleagues' contributions in his patent application. *2003 U.S. Dist. LEXIS 22411 at *19.*

The district court also found it relevant that none of Dr. Housey's colleagues from the Weinstein lab remembered seeing Dr. Housey working on the soft-agar experiment. *2003 U.S. Dist. LEXIS 22411 at *20-24.* The district court found that it was unlikely that [**5] Dr. Housey could have performed the soft-agar experiment without his co-workers' knowledge, because the Weinstein laboratory had only two rooms, where twelve to fifteen scientists shared chemicals, work space, and a single cell incubator. Id. The district court found the lack of his colleagues' recollection [*769] of the soft-agar experiment even more striking because Dr. Housey claims he used 24-well cell culture plates when the Weinstein lab used only single-well culture plates at that time. Id. Finally, the district court found it suspicious that Dr. Housey's laboratory notebooks contained no record of the soft-agar experiment; on other projects Dr. Housey kept meticulous notes. Id.

The district court found Dr. Housey's testimony with regard to the soft-agar experiment not credible. This credibility finding, in turn, was dispositive of the issue of whether he performed the experiment. *2003 U.S. Dist. LEXIS 22411 at *47.*

II.

"Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Molins PLC v. Textron, Inc., 48 F. 3d 1172, 1178 (Fed. Cir. 1995).* [**6] These elements must be shown with clear and convincing evidence. Id. The district court properly applied the pre-1992 standard for materiality, because three of the four patents were still pending when *37 C.F.R. § 1.56 (1992)* was adopted. Under the pre-1992 standard, information is material if "there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." See *Molins, 48 F. 3d at 1179 n. 8.* This court reviews a determination of inequitable conduct for abuse of discretion and reviews the underlying factual issues of materiality and intent for clear error. *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc., 326 F. 3d 1226, 1234 (Fed. Cir. 2003).*

The district court concluded that Dr. Housey committed inequitable conduct before the United States Patent and Trademark Office (PTO). *Bayer AG, 2003 U.S. Dist. LEXIS 22411, at *46-48.* The district court found Dr. Housey's testimony not credible because he actively concealed his work from his colleagues, failed to provide clear acknowledgement of his colleagues' [**7] contributions, and knowingly withheld material prior art. *2003 U.S. Dist. LEXIS 22411 at *47.* Because these findings reflect clear error, this court vacates and remands to provide the district court an opportunity to present additional bases for its determination.

> Secretive acts have sound basis in patent law. *35 U.S.C. § 102(a)* states:
>
> A person shall be entitled to a patent unless --
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.

*35 U.S.C. § 102(a) (2004)* (emphasis added). An invention may be "known or used" in the event of public disclosure without a deliberate attempt to maintain confidentiality. See *W.L. Gore & Assoc. v. Garlock, Inc., 721 F. 2d 1540, 1549 (Fed. Cir. 1983)*; see also MPEP §

2132 (8th ed., rev. 2 2001). Very little use and publicity may constitute a public use. See Donald S. Chisum, *Chisum on Patents, § 6.02[5]* at 6-41 (2003). For example, in *Egbert v. Lippmann, 104 U.S. 333, 336, 26 L. Ed. 755, 1882 Dec. Comm'r Pat. 35 (1881)*, [**8] the Supreme Court said that "one well-defined case of [public use] is just as effectual to annul the patent as many." In addition, public use or knowledge may jeopardize some foreign rights. See *Rambus Inc. v. Infineon Technologies AG, 318 F. 3d 1081, 1102 n. 9* [*770] *(Fed. Cir. 2003)*. Because patent law acknowledges the necessity of secretive activity before filing a patent application, the district court erred in considering Dr. Housey's secretive acts as evidence of inequitable conduct.

The district court also erred in finding that the Weinstein laboratory only had one incubator and did not use multi-well plates. *Bayer AG, 2003 U.S. Dist. LEXIS 22411, at *20-21*. The passages the district court cites in support of its one-incubator finding offer no support. Id. The first passage expressly uses the plural term "incubators." The second passage says nothing that relates to the one-incubator finding and the third passage says only that Dr. Johnson used "an incubator" for certain experiments. It says nothing about whether or not there was only one incubator in the Weinstein laboratory.

With respect to the multi-well plates finding, Dr. Guadagno testified [**9] that the Weinstein laboratory scientists used "six-well" dishes." In addition, the lab notebooks of Dr. Krauss, Dr. Housey, and Dr. Ueffing indicate the use of multi-well plates. Thus, the record shows that the district court erroneously concluded that no scientist at the Weinstein laboratory used multi-well plates.

The district court also erred in determining that Dr. Housey did not acknowledge the contributions of his colleagues. Two of the district court's findings reveal this error. First, the district court found that "Dr. Housey did not believe the Cell Paper taught the invention as Dr. Housey understood it." *Bayer AG, 2003 U.S. Dist. LEXIS 22411, at *16*. Second, Drs. Weinstein and Hsiao conceded that they were not co-inventors of the invention as Dr. Housey understood it (i. e., disclosing a method for identifying substances which directly bind or interact with a specific protein). *2003 U.S. Dist. LEXIS 22411 at *32-33*. Thus, because the inventor did not consider the 1988 paper material to his invention and the purported co-inventors disclaimed any inventorship, the record does not support the district court's inference of dishonesty in failing to acknowledge inventorship. [**10]

In addition, the district court erred in finding that Dr. Housey knowingly withheld the material prior art references referred to as Hsiao 1986 and Uehara 1985. *2003 U.S. Dist. LEXIS 22411 at *26, 30, 47*. The district court itself found that Dr. Housey did not believe that these references were material. *2003 U.S. Dist. LEXIS 22411 at *26*. Moreover the district court also found that Dr. Housey disclosed these references in the '281 patent's specification. *2003 U.S. Dist. LEXIS 22411 at *30*. The Background of the Invention section lists the Uehara 1985 reference as prior art, *'281 patent*, col. 2, ll. 12-27, and the References section also lists it, id. at col. 24, ll. 7-13. Similarly, the Detailed Description of the Invention section mentions the Hsiao 1986 reference, id. at col. 5, l. 58, and the References section also lists it, id. at col. 22, ll. 16-19. Thus, Dr. Housey did not knowingly withhold the Uehara 1985 and Hsiao 1986 references from the PTO. He clearly disclosed them by including them in the *'281 patent's* specification.

In sum, upon review of the district court's reasons for finding inequitable conduct, this court holds that the reasons given by the district court for finding Dr. Housey's testimony not credible were [**11] insufficient to support the court's conclusion. [*771] The district court based its conclusion on findings that Dr. Housey actively concealed work from his colleagues, failed to provide clear acknowledgement of his colleagues' contributions, and knowingly withheld material prior art. *2003 U.S. Dist. LEXIS 22411 at *47*. The record does not supply adequate support for these findings. As a result, this court vacates and remands for the district court to present additional bases for its credibility determination.

The purpose of the remand is not to open the record for further evidence or to allow further argument by the parties. Here, if one is to believe Housey, then the grounds asserted by Bayer for material misrepresentation by Housey to the PTO, with the requisite intent to deceive, dissolve. The reasons stated by the district court for its disbelief of Housey do not alone support this result. From the somewhat cursory explanation of its reasons by the district court, this court is unable to discern whether the district court fully elaborated its grounds for finding Housey incredible. The purpose of the remand is simply to permit the district court to provide any further reason it may have to find Housey incredible. [**12]

Housey also appeals the district court's claim construction. However, because this court construed the claims and affirmed the district court's judgment of invalidity in *Housey Pharms., Inc. v. Astrazeneca UK, Ltd., 366 F. 3d 1348 (Fed. Cir. 2004)*, this court lacks jurisdiction to address this issue. *Mendenhall v. Barber-Greene Co., 26 F. 3d 1573, 1577-78 (Fed. Cir. 1994); Blonder Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 349-50, 28 L. Ed. 2d 788, 91 S. Ct. 1434 (1971)* (an invalidity judgment renders the patent invalid in all later actions).

III.

In conclusion, because the district court clearly erred in making the factual findings that support its credibility determination, this court vacates and remands.

LEXSEE 148 FED. APPX. 82

DIMENSIONAL COMMUNICATIONS, INC. v. OZ OPTICS, LTD., Appellant

No. 04-1817

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

148 Fed. Appx. 82; 2005 U.S. App. LEXIS 17111

May 10, 2005, Submitted Under Third Circuit LAR 34.1(a)
August 12, 2005, Opinion Filed

**NOTICE:** [**1] RULES OF THE THIRD CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:** US Supreme Court certiorari denied by *Oz Optics v. Dimensional Communications,* 2006 U.S. LEXIS 1698 (U.S., Feb. 21, 2006)

**PRIOR HISTORY:** On Appeal from the United States District Court for the District of New Jersey. (D.C. Civil No. 01-cv-4893). District Judge: Honorable William G. Bassler.

*Dimensional Communs., Inc. v. OZ Optics Ltd.,* 218 F. Supp. 2d 653, 2002 U.S. Dist. LEXIS 20702 (D.N.J., 2002)

**COUNSEL:** For DIMENSIONAL COMM INC, Appellee: Timothy J. O'Neill, Windels, Marx, Lane & Mittendorf, Princeton, NJ.

For OZ OPTICS LTD, Appellant: Peter A. Ouda, Somerville, NJ.

**JUDGES:** Before: SLOVITER and FISHER, Circuit Judges and POLLAK, * District Judge.

* Honorable Louis H. Pollak, Senior District Judge for the United States District Court of the Eastern District of Pennsylvania, sitting by designation.

**OPINION BY:** Louis H. Pollak

**OPINION:**

[*83] OPINION OF THE COURT

POLLAK, District Judge.

This diversity case arises out of a contract dispute between Dimensional Communications, Inc., ("DCI"), and Oz Optics, Ltd. ("Oz"). n1 Oz, a manufacturer of optical [*84] fiber communications equipment, had a jury verdict entered against it on a breach of contract claim brought by DCI, a corporation that designs, manufactures, and installs trade-show booths. Oz appeals from the District [**2] Court's orders (1) denying Oz's motion for leave to file a counterclaim, and (2) denying Oz's post-trial motion for judgment as a matter of law or, in the alternative, for a new trial. The District Court exercised jurisdiction over this suit under 28 U.S.C. § 1332(a)(2), n2 and this court has appellate jurisdiction under 28 U.S.C. § 1291. For the reasons which follow, we will affirm.

n1 Oz has been alternately referred to as "Oz" or "OZ" in the parties' submissions and in the District Court docket. For the sake of uniformity, we will use only "Oz" here.

n2 Oz is a Canadian corporation with its principal place of business in Ontario; DCI is a New Jersey corporation with its principal place of business in Northvale, New Jersey.

I.

Inasmuch as we write chiefly for the parties it is not necessary to recite the facts of this case in detail. Oz and DCI had entered into a contract according to which DCI was to design and construct a trade-show booth for Oz.

[**3] After the booth was completed, DCI coordinated the transportation of the booth to four trade-shows, and performed maintenance and set-up activities at each show. DCI billed Oz separately for the maintenance and set-up costs, and Oz refused to pay for any of these ancillary charges on the ground that it had not authorized them. While Oz had most of the electronic equipment used in its booth shipped back to its New Jersey facility, DCI retained the booth itself and some of the electronic equipment pending Oz's payment of the outstanding invoices. On October 22, 2001, DCI filed its complaint in the United States District Court for the District of New Jersey, asserting claims for breach of contract, book account, and quantum meruit. Oz's answer asserted the affirmative defense of setoff/recoupment, but it contained no counterclaims.

On November 12, 2002, Magistrate Judge Madeline Cox Arleo entered a Pretrial Scheduling Order that, *inter alia*, set December 31, 2002, as the deadline for filing motions to amend the pleadings. On May 16, 2003, Oz filed a motion to amend its answer to assert a counterclaim for conversion for the seizure of the trade-show booth and other property. After [**4] briefing and argument, Magistrate Judge Arleo denied Oz's motion, finding, pursuant to *Fed. R. Civ. Proc. 16(b)*, that Oz had not shown good cause for its failure to comply with the Pretrial Scheduling Order. Magistrate Judge Arleo further found that Oz's actions constituted undue delay and evidenced dilatory motive, such that Oz could not meet the liberal amendment provisions of *Fed. R. Civ. Proc. 15(a)*. Oz appealed Magistrate Judge Arleo's denial of its motion to amend, and the District Court affirmed the denial. This affirmance is the first subject of this appeal.

The case was tried before a jury in December, 2003. The jury rendered a verdict in favor of DCI in the amount of $ 492,766.01. The jury also found that Oz was not entitled to any recoupment or setoff. On January 13, 2004, Oz filed a motion for judgment as a matter of law or, in the alternative, a new trial. The District Court denied that motion, finding that Oz was entitled neither to judgment as a matter of law nor to a new trial. The District Court's denial of this post-trial motion gives rise to Oz's second and third grounds of appeal.

II. [**5]

We review a district court's denial of leave to amend a pleading for abuse of [*85] discretion. *See Arab African Int'l Bank v. Epstein, 10 F.3d 168, 174 (3d Cir. 1993)*. "An abuse of discretion occurs when the District Court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *Montgomery County v. Microvote Corp., 320 F.3d 440, 445 (3d Cir. 2003)* (citation and quotation marks omitted).

We exercise plenary review over a district court's denial of a *Rule 50(b)* motion for judgment as a matter of law. *See, e.g., Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 200 (3d Cir. 1996)*.

We review a district court's denial of a new trial motion for abuse of discretion. *Honeywell, Inc. v. American Standards Testing Bureau, Inc., 851 F.2d 652, 655 (3d Cir. 1988)*.

III.

A. Motion to Amend

Where, as here, a party seeks to amend a pleading after a responsive pleading has been served, it may do so "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *Fed. R. Civ. Proc. 15(a)* [**6] . "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)*. In addition, a court's "schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge." *Fed. R. Civ. Proc. 16(b)*.

Magistrate Judge Arleo found that Oz could not satisfy *Rule 16(b)*'s good cause requirement because Oz was in possession of the facts underlying its proposed counterclaim well before the amendment deadline. The Magistrate Judge found further that *Rule 15(a)*'s liberal amendment provision did not extend to Oz because Oz's delay was undue and prejudicial, and because it evidenced a dilatory motive. The District Court agreed with the Magistrate Judge's findings, and concluded that the Magistrate Judge's denial of Oz's motion to amend did not constitute clear error.

Oz now argues that the Third Circuit has not adopted a "good cause" requirement in determining the propriety of a motion to amend a pleading after [**7] the deadline has elapsed, and that the District Court thus abused its discretion in denying the motion to amend. We disagree. In *Eastern Minerals & Chems. Co. v. Mahan, 225 F.3d 330, 340 (3d Cir. 2000)* -- a case with a similar procedural history -- this court approved the district court's determination that a failure to satisfy *Rule 16(b)*'s "good cause" requirement was sufficient to deny a motion to amend filed six months after the deadline for amendments to pleadings. Further, we find no error in the Magistrate Judge's finding, which the District Court approved, that Oz could not satisfy even the liberal amendment provisions of *Rule 15(a)* because Oz's delay was undue and its requested amendment would be preju-

dicial to DCI. In short, there is no ground for disturbing the District Court's order.

B. Motion for Judgment As a Matter of Law

A denial of a post-trial motion for judgment as a matter of law shall be affirmed where "there is sufficient evidence to support the verdict, drawing all reasonable inferences in favor of the verdict winner." *Blum v. Witco Chemical Corp., 829 F.2d 367, 372 (3d Cir. 1987)*.

Oz contests two elements of the verdict [**8] on the ground that there was, Oz [*86] contends, no rational basis for them. First, Oz asserts that the jury erred in finding that Oz had authorized ancillary charges, which included markups for subcontractor work, and freight, handling, refurbishing and storage charges. n3 Yet the jury could reasonably have inferred that Oz had authorized the ancillary charges. For example, the jury heard testimony that a sub-contractor of DCI had overheard Oz's president approve the markups; that a DCI employee had explained to Oz's president that there would be handling charges; and that Oz's president had been quoted a per-show estimate of refurbishment costs. Further, as the District Court found, there was evidence of an oral agreement for storage charges. This testimony formed a legitimate basis for the jury's finding that Oz had authorized the charges. Thus, Oz's first claim of error is baseless.

> n3 As a subsidiary element of its claim that the jury erred in finding that Oz had approved the ancillary charges, Oz argues that the jury erred further in adopting DCI's calculation of the handling charges inasmuch as DCI, so Oz contends, relied upon a "mysterious," "undisclosed mathematical equation" to arrive at this calculation. As the District Court found, however, DCI presented testimony describing how it arrived at the handling charges. The jury thus had a reasonable basis upon which to conclude that Oz did in fact owe DCI money in the asserted amount.

[**9]

Second, Oz contends that the jury erred in failing to reduce its verdict by the monies that Oz lost as a result of DCI's seizure of Oz's booth and some of the electronic equipment used in that booth. Yet having found that Oz had authorized the ancillary charges and hence was unjustified in refusing to pay for them, and having heard testimony from DCI stating that it would have returned the retained property upon receipt of payment from Oz, the jury could have reasonably concluded that Oz was not entitled to a set-off. Accordingly, Oz's claim that the jury erred in rejecting its recoupment/set-off defense is also baseless.

In sum, because sufficient evidence supported the jury's verdict, the District Court did not err in denying Oz's motion for judgment as a matter of law.

C. Motion for a New Trial

Oz argues that three grounds supported its motion for a new trial. First, Oz contends that, even though neither party requested a jury instruction on whether DCI was entitled to use self-help, the District Court should have issued *sua sponte* an instruction disapproving the use of self-help. Second, the District Court should have provided a jury verdict sheet that itemized the [**10] charges Oz would be found to have owed DCI since, without such itemization and in light of the jury's verdict that Oz owed less than DCI claimed it did, the parties cannot determine which charges the jury in fact found that Oz was obligated to pay. Finally, Oz charges that the District Court should have found, as a matter of law, that DCI breached the contract with Oz, and instructed the jury accordingly.

Oz's charge that the District Court erred in failing to instruct on the permissibility of the use of self-help is unavailing. "An appellate court will not consider trial errors [involving alleged deficiencies in jury instructions] to which no objection was made." *Hoffman v. Sterling Drug, Inc., 485 F.2d 132, 138 (3d Cir. 1973)*. Before the District Court, Oz neither requested a jury instruction on the permissibility of self-help nor objected to the omission of such an instruction. We will not entertain Oz's objection to the jury instructions now.

[*87] Oz's claim that the judge ought to have furnished the jury with an itemized jury verdict form is no more meritorious. "It is well established that the trial court may exercise broad discretion in determining whether to [**11] use a general verdict or the procedures described in *Rule 49 of the Federal Rules of Civil Procedure*." *Kazan v. Wolinski, 721 F.2d 911, 915 (3d Cir. 1983)*. Further, there is no evidence in the record that Oz objected below to the jury verdict form, and its failure to do so before the District Court bars it from raising that objection before this court. Accordingly, we decline to find that the District Court erred in constructing the jury verdict form as it did.

For similar reasons, we find no merit in Oz's claim that the District Court should have found, as a matter of law, that DCI breached the contract with Oz, and instructed the jury accordingly. The District Court judge properly determined that the parties had adduced evidence sufficient to create an issue of fact on this matter. Further, Oz did not at trial raise any objections to the judge's asserted failure to instruct the jury on the alleged

breach of contract, and so we will not consider these objections now.

In sum, we find that the District Court did not abuse its discretion in denying Oz's motion for a new trial.

IV.

For the foregoing reasons, we do not find [**12] merit in any of Oz's claims of error. Accordingly, the challenged orders of the District Court will be affirmed.