## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TALECRIS BIOTHERAPEUTICS, INC. and
BAYER HEALTHCARE LLC,

     Plaintiffs,

v.

BAXTER INTERNATIONAL INC. and
BAXTER HEALTHCARE CORPORATION,

     Defendants.

_____

BAXTER HEALTHCARE CORPORATION,

     Counterclaimant,

v.

TALECRIS BIOTHERAPEUTICS, INC. and
BAYER HEALTHCARE LLC,

     Counterdefendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 05-349-GMS

Jury Trial Demanded

**PUBLIC VERSION**

**BRIEF OF DEFENDANTS BAXTER INTERNATIONAL INC. AND BAXTER
HEALTHCARE CORPORATION IN OPPOSITION TO PLAINTIFFS'
MOTION TO STRIKE PORTIONS OF DEFENDANTS' REPLY BRIEF AND FOR
SANCTIONS OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE A SURREPLY**

OF COUNSEL:

James G. Gilliland, Jr.
Susan M. Spaeth
Anne M. Rogaski
TOWNSEND AND TOWNSEND AND
CREW LLP
379 Lytton Avenue
Palo Alto, California 94301
(650) 326-2400

Dated: December 13, 2006
Public Version: December 20, 2006

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
Email: provner@potteranderson.com

*Attorneys for Defendant
Baxter International Inc. and
Defendant/Counterclaimant
Baxter Healthcare Corporation*

# TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDING ................................................ 1

II.   SUMMARY OF ARGUMENT .......................................................................... 1

III.  ARGUMENT ................................................................................................... 2

      A.   Baxter Did Not Improperly Use The Memorandum Of Invention ............... 3

      B.   Baxter Did Not Raise New Issues In Its Reply, But Simply
           Responded To Issues First Raised By Plaintiffs In Their Opposition
           Brief ........................................................................................................ 6

IV.   CONCLUSION ................................................................................................. 7

# TABLE OF AUTHORITIES

Page

**Cases**

*Enzo Life Sciences, Inc. v. Digene Corp.,*
   270 F. Supp. 2d 484 (D. Del. 2003) .............................................................. 6, 7

**Rules**

Fed. R. Civ. P. 15 ..................................................................................... passim

Fed. R. Civ. P. 16 ..................................................................................... passim

## I.    NATURE AND STAGE OF THE PROCEEDING

On November 1, 2006, Baxter International Inc. and Baxter Healthcare

Corporation (together "Baxter") moved this Court for leave to amend its pleadings, under

Federal Rule of Civil Procedure 15, to add a charge of inequitable conduct in procuring

the patent-in-suit. D.I. 166 ("Baxter Opening Brief"). On November 16, 2006, Talecris

Biotherapeutics, Inc. and Bayer Healthcare LLC (together "Plaintiffs") opposed Baxter's

motion for leave to amend on the grounds, among others, that Baxter had not established

the requisite "good cause" to amend a Pretrial Order under Federal Rule of Civil

Procedure 16, and that Baxter had unduly delayed seeking the amendment. D.I. 176, at

6-8 ("Plts. Opposition Brief"). On November 27, 2006, Baxter filed its reply. D.I. 182

("Baxter Reply Brief"). In its Reply, Baxter argued that, among other things, it had *de

facto* met the Rule 16 "good cause" requirement, citing case law in support of that

argument. In support of its argument that it had not unduly delayed in bringing its

motion for leave to amend, Baxter also referred to a discovery dispute regarding a

Memorandum of Invention authored by Dr. William Alonso, the named inventor.

In their Motion to Strike Portions of Defendants' Reply Brief And For Sanctions

Or, In The Alternative, For Leave To File A Surreply ("Plaintiffs' Motion"), Plaintiffs

assert that Baxter contravened this Court's Order by referencing the dispute about the

Memorandum of Invention, and that Baxter improperly raised new legal arguments and

case law by replying to the Rule 16 "good cause" issue raised by Plaintiffs. This is

Baxter's opposition to Plaintiffs' Motion.

## II.    SUMMARY OF ARGUMENT

1.    Baxter's passing reference to the Memorandum of Invention in its Reply

Brief was not improper. <span>REDACTED</span>

1

**REDACTED**

Duly respecting this

Court's Order, Baxter did not use the document itself or the data contained therein.

Indeed, Baxter could not have used the document, as it returned or destroyed every copy

of the document in its possession.

2.      Baxter did not improperly raise new legal argument or improperly cite

new case law in its Reply Brief. Rather, Baxter simply replied to the Rule 16 "good

cause" issue first raised by Plaintiffs in their Opposition Brief. In their Opposition Brief,

Plaintiffs argued that a party must establish "good cause" under Rule 16 in order to

obtain leave, in addition to meeting the standards under Rule 15. As set forth more fully

below, that argument is simply wrong under the circumstances, and has been rejected by

this Court.

## III.   ARGUMENT

Piling more briefs on this Court, Plaintiffs seek to strike perfectly proper

arguments from Defendants' Reply Brief in support of their Motion for Leave to File an

Amended Answer and Counterclaim, asserting that Plaintiffs engaged in inequitable

conduct during the prosecution of the patent in suit. Plaintiffs baselessly assert that

Baxter improperly used a Memorandum of Invention document authored by Dr. William

Alonso, the named inventor, and that Baxter improperly raised new issues and case law in

its Reply Brief. Baxter did not improperly use the Memorandum of Invention; after oral

argument the Court decided it was a privileged document and Baxter has returned all

copies of the document formerly in its possession. Rather, Baxter simply referred to the

discovery dispute about the Memorandum of Invention to demonstrate why it needed

2

further discovery to develop the particular facts required to plead inequitable conduct. Plaintiffs cannot both force Baxter to undertake additional discovery to prove a fact they knew was true, and then complain that it took time for Baxter to accomplish this.

Nor did Baxter improperly raise new legal arguments in its Reply Brief. Plaintiffs asserted an incorrect argument in their Opposition Brief; in reply Baxter simply cited a case unequivocally establishing that Plaintiffs are wrong. It was Plaintiffs who first argued Baxter had not shown "good cause" under Rule 16 of the Federal Rules of Civil Procedure. But case law from this Court establishes that a litigant (such as Baxter), having met the standards for amendment under Rule 15, has also *de facto* proven "good cause" under Rule 16. Plaintiffs cannot raise an issue for the first time in their Opposition Brief, fail to cite a reported decision directly on point, and then criticize Baxter for bringing that case authority to the attention of the Court. Plaintiffs' motions should be denied.

### A.   Baxter Did Not Improperly Use The Memorandum Of Invention

Baxter moved for leave to amend its pleadings under Rule 15 to assert a claim of inequitable conduct. Baxter has demonstrated that the claim is meritorious, it did not unduly delay filing the motion, and Plaintiffs suffer no legal prejudice by virtue of the amendment. In opposition, Plaintiffs argued, among other things, that Baxter had not established the requisite "good cause" to amend a Pretrial Order under Rule 16, and that Baxter had unduly delayed seeking the amendment. Plaintiffs' Opposition Brief, at 6-8. Consequently, Plaintiffs argued the Court should disregard the liberal standards of Rule 15 that leave "shall be freely given when justice so requires." *Id.*

In its Reply Brief, Baxter supported, in part, its argument it had not unduly delayed by referencing the dispute about the ▓▓▓▓▓▓ REDACTED ▓▓▓▓▓▓

REDACTED

Baxter Reply Brief, at 12.  This is not news:  The Court is fully aware of this fact from the oral argument addressing whether the document truly was privileged.  Following this benign reference to the Memorandum of Invention in the Reply Brief, Baxter described the discovery it was required to undertake to unearth the requisite facts needed to support the serious charge of inequitable conduct.  *Id.* at 12-13.

REDACTED

Pursuant to the terms of the Protective Order in place (D.I. 40), Baxter asked this Court to declare the Memorandum of Invention was not privileged. In particular, Baxter pointed out: (1) Nothing on the face of the Memorandum of Invention identifies it as a privileged communication.  August 17, 2006 Teleconference Hearing Trans. ("Tele. Hearing Trans.") at 4:6-10.[1]  The Memorandum of Invention is addressed to nobody, much less a lawyer or paralegal, and no marking was present identifying it as privileged or confidential, *id.*; (2) Evidence suggests that copies of the Memorandum of Invention existed in the files of non-lawyers other than Dr. Alonso, thereby destroying any privilege that may have existed, *id.* at 4:11-14; and (3) The attorney handling invention disclosures, James Giblin, did not specifically recall

---

[1] All pages of the transcript of the oral argument relating to the Memorandum of Invention are attached hereto as Exhibit A.

4

receiving the Memorandum of Invention from Dr. Alonso, and Baxter was not permitted to refresh Mr. Giblin's recollection by showing him the document. *Id.* at 4:15-23. Thus, we will never know whether Mr. Giblin actually looked at the Memorandum of Invention. *Id.*

During argument, counsel for Plaintiffs stated the relevant experimental data existed in another form in the documents Plaintiffs had produced; therefore, Plaintiffs argued, Baxter could discover the information in another way. *Id.* at 7:14-18. Based upon this statement, the Court ruled that the Memorandum of Invention was a privileged document, and ordered that "the <u>document itself with reference to the data</u> may not be used." *Id.* at 11:4-8 (emphasis added). Duly respecting this Order, Baxter did not use the document or the data in it in Baxter's Reply Brief. Indeed, Baxter could not have used the document, as it returned or destroyed every copy of the document in its possession.

**REDACTED**

Baxter Reply Brief, at 12; Tele. Hearing Trans. at 5:16-6:1. The Court is fully aware of the existence of this document and the discovery dispute about it. By insisting that Baxter return the Memorandum of Invention, Plaintiffs forced Baxter to undertake further discovery to prove what Plaintiffs already knew was true. As a consequence, Plaintiffs cannot now be heard to argue that Baxter unduly delayed in seeking leave from the Court to amend its answer.

5

**B.    Baxter Did Not Raise New Issues In Its Reply, But Simply Responded To Issues First Raised By Plaintiffs In Their Opposition Brief**

Plaintiffs argued Baxter raised a new issue and cited new case law in its Reply Brief, allegedly contrary to the norms of practice and the local rules. This argument is silly. In Baxter's Opening Brief it set forth all the facts necessary to establish it had met the requirements of Federal Rule of Civil Procedure 15 authorizing the amendment of pleadings. In their Opposition Brief, Plaintiffs argued that a party must establish "good cause" under Rule 16 in order to obtain leave, in addition to meeting the standards under Rule 15. Plts. Opposition Brief, at 16. That argument is simply wrong under the circumstances, and has been rejected by this Court. Plaintiffs fail to acknowledge that Baxter – having established (1) that it did not unduly delay in bringing the motion for leave to amend, (2) that Plaintiffs suffer no legal prejudice by virtue of the amendment, and (3) that the amendment is not futile – also *de facto* established good cause, just as the defendant did in *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 490 (D. Del. 2003). Plaintiffs manufactured the "good cause" issue in their Opposition Brief. Baxter is entitled to respond to that red herring in its Reply Brief, and cite any relevant case law. Indeed, that is the purpose of a Reply Brief! Lastly, Plaintiffs argued Baxter sandbagged by holding back case law until the Reply Brief. Baxter did no such thing. Baxter cited the *Enzo* case, albeit for a different point, in its Opening Brief. Baxter Opening Brief, at 8. Baxter again cited *Enzo* in its Reply Brief, because it is directly responsive to the erroneous "good cause" argument first asserted in Plaintiffs' Opposition. Analyzing the relationship between Rules 15 and 16 under procedural circumstances quite similar to those here, the *Enzo* court held: "Given that the Court has already determined [under its Rule 15 analysis] that there was no undue delay or

6

likelihood of prejudice to Enzo, the Court concludes that Digene has satisfied the 'good cause' requirement of Rule 16." *Enzo Life Sciences, Inc. v. Digene Corp.,* 270 F. Supp. 2d at 490. Here, also, Baxter satisfied the "good cause" requirement of Rule 16 through its showing under Rule 15 in its Opening Brief. That Plaintiffs chose to baselessly complain that the issue of "good cause" was not sufficiently addressed in Baxter's Opening Brief invited Baxter to point out Plaintiffs' error and re-cite the persuasive *Enzo* case in its Reply Brief.

## IV.    CONCLUSION

In its Reply Brief, Baxter simply referred to the Memorandum of Invention, the dispute about it, and the impact of that dispute on the additional discovery Baxter was compelled to undertake. Baxter did not use "the document itself with reference to the data [therein]" in contravention of this Court's Order. Additionally, Plaintiffs unnecessarily manufactured the Rule 16 "good cause" issue, forcing Baxter to respond to it in its Reply Brief by citing the most-relevant case law on point (that Plaintiffs had ignored). For the reasons provided above, the Court should deny in every respect Plaintiffs' Motion To Strike Portions Of Defendants' Reply Brief And For Sanctions Or, In the Alternative, For Leave To File A Surreply.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

James G. Gilliland, Jr.
Susan M. Spaeth
Anne M. Rogaski
TOWNSEND AND TOWNSEND AND
CREW LLP
379 Lytton Avenue
Palo Alto, California 94301
(650) 326-2400

Dated: December 13, 2006

Public Version: December 20, 2006

768700

By: /s/ Philip A. Rovner
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    Email: provner@potteranderson.com

*Attorneys for Defendant*
*Baxter International Inc. and*
*Defendant/Counterclaimant*
*Baxter Healthcare Corporation*

# EXHIBIT A

1

1              IN THE UNITED STATES DISTRICT COURT

2            IN AND FOR THE DISTRICT OF DELAWARE

3                      -   -   -

4 .  TALECRIS BIOTHERAPEUTICS,     :     Civil Action
     INC.,                         :
5                                  :
                 Plaintiff,        :
6                                  :
           v.                      :
7                                  :
     BAXTER INTERNATIONAL INC.     :
8    and BAXTER HEALTHCARE         :
     CORPORATION,                  :
9                                  :
                 Defendants.       :     No. 05-349-GMS
10                                 :
                       -   -   -
11
     BAXTER HEALTHCARE             :
12   CORPORATION,                  :
                                   :
13               Counterclaimant,  :
                                   :
14         v.                      :
                                   :
15   TALECRIS BIOTHERAPEUTICS,     :
     INC. and BAYER HEALTHCARE     :
16   LLC,                          :
                                   :
17               Counterdefendants.:

18                     -   -   -

19                  Wilmington, Delaware
                  Thursday, August 17, 2006
20                     10:00 a.m.
                     Teleconference
21
                       -   -   -
22
     BEFORE:   HONORABLE GREGORY M. SLEET, U.S.D.C.J.
23

24

25

2

```
 1   APPEARANCES:

 2           JEFFREY B. BOVE, ESQ.,
             JACLYN MASON, ESQ., and
 3           MARY BOURKE, ESQ.
             Connolly Bove Lodge & Hutz LLP
 4               -and-
             BRADFORD J. BADKE, ESQ., and
 5           GABRIELLE CIUFFREDA, ESQ.
             Ropes & Gray
 6           (New York, New York)

 7                           Counsel for Plaintiff and
                             Counterdefendants
 8
             PHILIP A. ROVNER, ESQ.
 9           Potter Anderson & Corroon LLP
                 -and-
10           JAMES G. GILLILAND, ESQ., and
             SUSAN M. SPAETH, ESQ.
11           Townsend and Townsend & Crew
             (Palo Alto, CA)
12
                             Counsel for Defendants and
13                           Counterclaimant

14                       -   -   -

15

16           THE COURT:  Good morning, counsel.

17           Who is on the line for plaintiff today?

18           MR. BOVE:  Yes, Your Honor.  This is Jeff Bove.

19   I have with me in my office Jim Badke from Ropes & Gray.  I

20   have Gabrielle Ciuffrida on the phone from Ropes & Gray.

21   Also present with me is Jaclyn Mason, my associate at

22   Connolly Bove.  Dialing in from afar is Mary Bourke.

23           THE COURT:  Good morning.

24           For defendant.

25           MR. ROVNER:  Your Honor, this is Phil Rovner
```

3

1    from Potter Anderson for Baxter.  With me on the line is Jim

2    Gilliland from Townsend and Townsend & Crew.  Jim is calling

3    in from San Francisco.  With me in my office is Susan

4    Spaeth, also from Townsend, and Michael Schiffer, Baxter's

5    chief patent counsel.

6              THE COURT:  Good morning, all.

7              Who is going to handle the argument for

8    plaintiff today?

9              MR. BOVE:  Your Honor, Jeff Bove.  I will be

10   handling the issue relating to conflict of interest and

11   potential disqualification and the issue relating to the

12   invention record.

13             THE COURT:  For defendants.

14             MR. GILLILAND:  Your Honor, Jim Gilliland.  I

15   will handle that argument.

16             THE COURT:  There are some other issues.  We

17   will get to them.

18             Let's start with Baxter's issues, since they

19   occur first in the letter.

20             MR. GILLILAND:  Thank you, Your Honor.

21             The first issue raised relates to a document, or

22   a series of documents written by William Alonso, the

23   inventor of the patent in suit.  The documents are entitled

24   Memo of Invention.  Pursuant to the protective order entered

25   between the parties and by the Court, Bayer has contended

4

1    that these documents are privileged and should be returned.

2    Baxter has resisted that.  Under the terms of the protective

3    order, the burden is on Bayer to show that these documents

4    are privileged.  We think that there are five reasons that

5    they are not.

6           First, nothing on the face of the documents

7    indicates that they are privileged.  They are not addressed

8    to anybody, much less to a lawyer.  There is no marking on

9    them that they are intended to be confidential, much less

10   privileged.

11          Second, copies of the documents apparently exist

12   in the files of non-lawyers, including at least two

13   scientists other than Dr. Alonso:  David Hammond and George

14   Bomback.

15          Third, the lawyer who prosecuted the patent, a

16   gentleman by the name of James Giblin, testified at his

17   deposition that it was his general practice to obtain

18   written disclosures from inventors, that in this specific

19   instance he cannot recall if that occurred.

20          Now, at Mr. Giblin's deposition, Talecris

21   counsel would not allow Baxter to show the document to

22   Attorney Giblin to try to refresh his recollection or to

23   determine whether he actually relied upon it.

24          So we will never know whether Attorney Giblin

25   actually looked at this document or not.

5

1          Of course, the mere fact that a document is in a

2     lawyer's file and Bayer represents that this document was in

3     Attorney Giblin's file -- we presume that that is true --

4     but the mere fact that a document is in a lawyer's file does

5     not make it privileged.

6          If, for example, there were pages from the lab

7     notebook of Dr. Alonso in the file of Attorney Giblin, those

8     pages still would be discoverable.

9          Similarly, here, we think that a memo written by

10    Dr. Alonso and addressed to no one in particular and that

11    happens to be in an attorney's file is also discoverable.

12          Now, Attorney Giblin testified that in this

13    particular instance the inventor, Dr. Alonso, did, quote,

14    the bulk of the writeup, end quote, of the patent

15    application.

16          Here is why we are fighting about this.

17          There is crucial data from the documents in

18    dispute, data that tends to disprove the invention, that was

19    omitted from the patent application.  That, of course, is

20    the reason the parties are fighting so hard over these

21    particular documents.

22          Attorney Giblin testified in his deposition that

23    he includes all data, positive and negative, in an

24    application.  But here there is a table from, a table of

25    data from the memo of invention that was omitted from the

6

1    patent application.

2            So we are left with a few possibilities.  Either

3    Mr. Giblin did not rely on the memos, or he did have the

4    memos but deliberately omitted data from the application.

5    Or Dr.  Alonso, the inventor, wrote the application, at

6    least this portion, (inaudible) his own memo, and he omitted

7    the data.  In any of those instances we believe Baxter is

8    entitled to continue to use the document in discovery and to

9    be allowed to use it as evidence in the case.

10            THE COURT:  Okay.  Let's have a reply.

11            MR. BOVE:  Your Honor, Jeff Bove.

12            Under Paragraph 12 of the protective order, it

13    is specifically set forth that if a document is

14    inadvertently produced -- and I do not believe there is any

15    contest here about the inadvertence of the production,

16    particularly since this very same set of documents was

17    scheduled elsewhere on the privilege log -- that if a

18    document is inadvertently produced and notice is given, that

19    it is to be returned within five days.  The copies are to be

20    destroyed.  If, indeed, there is a challenge of privilege,

21    then the person challenging privilege may retain a copy of

22    the document.

23            In this instance, notice was given of

24    inadvertent production.  The inadvertence is not contested

25    and indeed could not be seriously contested in view of the

7

1   fact that the document was repeatedly scheduled on the log.
2           In this instance, the document scheduled did
3   appear in the files of the prosecuting attorney, Mr. Giblin.
4           Mr. Giblin was permitted to testify generally,
5   so as not to vitiate privilege, that in fact it was his
6   practice, obviously, to review invention disclosures because
7   that is the first step in considering a patent application.
8           Indeed, we believe and assert that that is
9   exactly what has occurred here.  The Federal Circuit has
10  indicated in the Spalding case at 203 F.3d 800 that these
11  types of records are routinely privileged, almost
12  presumptively privileged.  And of course we certainly assert
13  the Spalding case in support of this position.
14          I wish to emphasize that to the best of our
15  knowledge, each fact asserted in the invention record has
16  otherwise been produced in this litigation.  In other words,
17  they are not being deprived of any facts by reason of the
18  proper assertion of privilege in these circumstances.
19          What is particularly troubling is that Baxter
20  attempted to mark the invention disclosure during the
21  deposition of Mr. Giblin in an effort to use that document.
22  We do not think that is a proper use of a document under
23  Paragraph 12 of this Court's protective order.  But that is
24  an aside.
25          The relief that we are seeking is return of the

1    document under the protective order.  We have offered to

2    supply an affidavit in order to substantiate each of the

3    elements of the privilege should the Court deem such

4    appropriate.

5          And that is our essential position at this point

6    in time.

7          THE COURT:  Mr. Gilliland, if you have the

8    information -- let me back up for a second.  Mr. Bove, I am

9    sorry, I didn't recognize your name when it was initially

10   pronounced.  Obviously, I know who you are.

11         Is it the case that there was data missing from

12   the document in question?  Are you asserting that that data

13   is in possession of Baxter?

14         MR. BOVE:  Absolutely, Your Honor.

15         THE COURT:  Mr. Gilliland, why don't you reply,

16   specifically starting out addressing that assertion.

17         MR. GILLILAND:  Thank you, Your Honor.  Yes.

18         I believe that it is correct that in the lab

19   notebooks of another inventor, the test data exists which in

20   this case, Your Honor, it is a case about a way of refining

21   immunoglobulins from blood.  And it is a process patent.

22   And the alleged invention is that a factor called

23   anticomplement activity, which is bad for you, is caused by

24   a solvent detergent treatment used during the process --

25         THE COURT:  That is a lot of details that I

1    don't need, I don't think, at this point, to resolve this

2    dispute.

3              What I am trying to get at is, let's just assume

4    for purposes of argument for a moment that I have concluded

5    that the question is a close call.  And that being the case,

6    if you already have the information that you seek, why

7    should this Court, under the circumstances of a close call,

8    make the call in your favor?

9              MR. GILLILAND:  Here is the answer to that

10   question, Your Honor.

11             We need to try to determine why that information

12   that did not get into the patent application, and Dr. Alonso

13   is the named inventor, and he has in his memo this

14   particular document, that data, obviously, without that memo

15   from the inventor, it's going to be difficult, if not

16   impossible, for us to ask the question and to determine what

17   happened to that data and why it was omitted.  It is in the

18   lab notebook of another inventor --

19             THE COURT:  Let me interrupt for a second.  What

20   issue in the case does the answer to that question go to?

21   Is there some type of inequitable conduct claim here?  What

22   does that go to?

23             MR. BOVE:  Your Honor, there is no inequitable

24   conduct claim presently in this case.

25             THE COURT:  Mr. Gilliland, what issue is that

1    pertinent to, is that material to, the answer to the

2    question?

3         MR. GILLILAND:  Two things, Your Honor.  First,

4    of course we have not yet asserted an inequitable conduct

5    claim because we would not do so without evidence.  Now we

6    are in the process of seeking that evidence.  This may lead

7    in that direction.

8         Secondly, at a minimum it goes to the question

9    of validity, because the data that was omitted tends to

10   contradict the conclusions of the patent itself.  And this

11   is data found in a memo of the named inventor.

12        THE COURT:  Mr. Bove, would you react to that,

13   to the second point about validity?

14        MR. BOVE:  Your Honor, they have the data, as

15   Mr. Gilliland acknowledged, in lab notebooks that were

16   produced.  They are free to examine witnesses on that data

17   in any manner that they seek that is consistent with the

18   rules.  I am simply attempting to preserve a privileged

19   document and to prevent a violation of the protective order

20   in this case through the use of a privileged document.  That

21   is the bottom line here.

22        They have the facts.  They can make whatever use

23   of them they choose, based on their own litigation strategy.

24        I note that Mr. Gilliland has also acknowledged

25   that he doesn't even have a prima facie case of inequitable

11

1    conduct such as would vitiate the privilege.  We think it is

2    pretty clear this document ought to be returned and no use

3    made of it.

4              THE COURT:  I am going to order the document

5    returned, and further, that the document itself, not data,

6    because Mr. Bove concedes you already have the data, Baxter,

7    but within the context of the litigation the document itself

8    with reference to the data may not be used.

9              I am going to make that order without prejudice,

10   Mr. Gilliland, to you asking the Court to revisit this issue

11   should you deem it appropriate within the context of perhaps

12   a later asserted inequitable conduct defense.

13             MR. GILLILAND:  Thank you, Your Honor.  I think

14   what I understand the Court's ruling to be, that Baxter will

15   return all copies it has of the document but Mr. Bove and

16   his firm will hold onto their copies.

17             THE COURT:  Yes.

18             MR. GILLILAND:  Thank you.  We will do that.

19             THE COURT:  Next issue for Baxter was the

20   plaintiff's deficient document production.

21             MR. GILLILAND:  Your Honor, there are a couple

22   of issues regarding discovery.  I will try to hit a couple

23   of them, because we are right in the middle of depositions.

24   There is one occurring after this call up there in Delaware.

25             I will just hit a hit a couple of top-line

12

1    questions.

2              First, Bayer has agreed to produce batch records

3    for a product called Gammamune.  That is the product covered

4    by the patent.  We have still not received them.  I am

5    hoping we will shortly, because we do need them for these

6    depositions.

7              THE COURT:  Could you speak up a little?  That

8    was what documents again?

9              MR. GILLILAND:  Batch records for the Gammamune

10   products.

11             THE COURT:  And, Mr. Bove, are those

12   forthcoming?

13             MR. BOVE:  Yes, Your Honor.  We have indicated

14   to them in a telephone call last week that those documents

15   would be produced.  I do not believe there is a current

16   dispute about that.

17             THE COURT:  When do you expect to make that

18   production?

19             MR. BOVE:  Over the next week, Your Honor, my

20   associate, Ms. Mason, has indicated.

21             THE COURT:  Would that be sufficient, Mr.

22   Gilliland?

23             MR. GILLILAND:  That is excellent, thank you,

24   Your Honor.

25             Secondly, there is another product called

1  Gamunex by Bayer.  It is the successor apparently to

2  Gammamune.  We have asked for marketing, sales and FDA

3  documents relating to the Gamunex.  If Talecris itself is

4  saying it has that new, better product than the one covered

5  by the patent in dispute, then clearly these documents

6  relate to the commercial success of the invention and also

7  any damages that can be claimed.

8         So we have asked for such documents, and so far

9  Talecris has declined to produce them.

10        THE COURT:  Mr. Bove, are you objecting to that

11  production?

12        MR. BOVE:  No, Your Honor.  As we advised Mr.

13  Gilliland's associate last week, those documents are in the

14  process of being produced.

15        THE COURT:  Same time line?

16        MR. BOVE:  Yes, Your Honor.

17        THE COURT:  Is that satisfactory, Mr. Gilliland?

18        MR. GILLILAND:  Yes, sir, it is.

19        THE COURT:  Next.

20        MR. GILLILAND:  I will say that, Your Honor, I

21  haven't gotten this clarity before, so I appreciate it.

22        The last issue I will raise are the files of Dr.

23  Alonso, the inventor.  We believe that we should be entitled

24  to see anything that he has done relating to intravenously

25  administratable immune globulins or the salt detergent

14

1   treatment of these reducing anti-compliment activity, et

2   cetera.

3        So far, to the best of my knowledge, Bayer has

4   not agreed to produce those.

5        THE COURT:  Mr. Bove.

6        MR. BOVE:  Yes, Your Honor.  To the best of my

7   knowledge -- and I have pressured my people on this -- other

8   than privilege documents, such as the one we discussed

9   earlier, all of that information has been produced.  I will

10   go back after this call and reverify that, Your Honor.

11        THE COURT:  Okay.  Mr. Gilliland, is there

12   something else that you would require of Mr. Bove in light

13   of his comments?

14        MR. GILLILAND:  If there is no more documents,

15   then there is no more that can be produced, Your Honor.

16        THE COURT:  That sounds about right.

17        MR. GILLILAND:  Then the last issue, I think

18   again this is one that probably they are willing to give us,

19   we just haven't gotten it yet, that is in the solvent

20   detergent treatment that is part of the process licensed

21   from the New York Blood Center.  As far as I can tell, we

22   have not yet received that.

23        THE COURT:  Is this the same situation, Mr.

24   Bove?

25        MR. BOVE:  Yes, Your Honor.  We have advised his

15

1    associate last week of this.

2         THE COURT:  We will dispose of that in the same

3    fashion as the other two.

4         Mr. Gilliland, you have a third issue.   Concerns

5    about supplemental responses to Baxter's first set of

6    interrogatories.

7         MR. GILLILAND:  Your Honor, I am not going to

8    bother you with that.

9         THE COURT:  Let's go to plaintiff's issues.

10         MR. BOVE:  Your Honor, if I may recommend that

11    perhaps we take up what may be a more serious issue, which

12    is the disqualification concern that Bayer has, if that

13    would be appropriate with the Court.

14         THE COURT:  Where is that mentioned?  I am

15    sorry.

16         MR. BOVE:  Your Honor, I sent a letter

17    supplementing the agenda on August 15, recognizing we had

18    this call coming up.

19         THE COURT:  I am looking for it.  I believe you.

20    I am looking for the letter.

21         Why don't you outline the issue for me, Mr.

22    Bove, while we find the letter.

23         MR. BOVE:  On August 9, I learned for the first

24    time through the acquisition of some archived documents that

25    indeed Townsend and Townsend, and in particular Ms. Spaeth,

1    who is one of the current lead counsel for Baxter in this

2    litigation, represented Bayer through Myles, which is Bayer,

3    became Bayer, and asserted on behalf of Bayer a patent by an

4    inventor named Tenold.

5              THE COURT:  What was the name again?

6              MR. BOVE:  The inventor was named T-e-n-o-l-d.

7              So we have Townsend and Townsend and Ms. Spaeth

8    in 1992 representing one of the plaintiffs, their

9    predecessors, in this case, representing them in 1993 and

10   enforcing the Tenold patent against a defendant in the

11   Northern District of California, Alpha Therapeutic.

12             The problem occurs, Your Honor, because Baxter

13   in this case and Townsend and Townsend and Ms. Spaeth are

14   asserting the very same Tenold patent as prior art and as a

15   basis to invalidate Bayer's patent at issue here.

16             In other words, we have substantially related

17   subject matter between the former litigation in which

18   Townsend and Townsend and Ms. Spaeth represented Bayer and

19   this litigation in which Townsend and Townsend and Ms.

20   Spaeth are representing Baxter.

21             As the Court, I am sure, is aware, under Rule

22   1.9 of our ethical rules, Townsend and Townsend may not

23   represent Baxter in circumstances where we have a

24   substantially related subject matter.  Indeed, in other

25   filings, they have indicated, they, Baxter, that, in fact,

1    at times they assert the Tenold patent which they enforced

2    on behalf of Bayer as the supposed most pertinent prior art

3    which they would assert as a basis for invalidity.  This art

4    was identified in response to interrogatories set forth in

5    this case.  It's quite clear, they are relying on the very

6    same patent that they enforced on behalf of my client in

7    this case.

8              I called Mr. Gilliland on Monday morning, Your

9    Honor.  I guess I could be very candid, as one managing

10   partner to another, Mr. Gilliland is the managing partner of

11   Townsend and Townsend, I wanted to quickly alert him to this

12   problem.  I assured him this is not the type of thing we

13   would raise lightly.  But I have the duty to my client -- by

14   the way, my client has declined to waive the conflict in

15   this circumstance and in fact they have instructed me to

16   proceed to raise this issue with Your Honor.

17             I called Mr. Gilliland right away to give him an

18   opportunity to sort this out.  But I certainly didn't want

19   to sit on this issue any longer, given the fact that we have

20   12 depositions scheduled over the next 12 business days in

21   this case here, in Delaware, in California, and in Austria.

22   That is the problem that we are now confronted with, Your

23   Honor.

24             I think that is the bottom line.

25             THE COURT:  Okay.  Mr. Gilliland.

1          MR. GILLILAND:  Your Honor, I have to confess

2    that we are both surprised and disappointed that Talecris

3    would make this claim 15 months into this lawsuit and right

4    in the middle of, as Mr. Bove acknowledged, what are going

5    to be seven weeks of uninterrupted depositions all around

6    the world.

7          Bayer has known for many years that Townsend is

8    patent litigation counsel for Baxter's bioscience unit,

9    indeed, in that Aventis lawsuit filed in Your Honor's Court

10   against Baxter.  Aventis also sued Bayer in Philadelphia.

11   Mr. Bove and Ms. Bourke represented Bayer there.  Ms. Spaeth

12   and I represented Baxter, as you know, in your courtroom.

13   We entered a joint defense agreement with Bayer.  We

14   cooperated with one another.  And that was years ago.  Bayer

15   has known for years that Townsend is Baxter's chosen counsel

16   in bioscience matters.

17          The Tenold reference that Mr. Bove is referring

18   to is disclosed on the face of the patent, Your Honor.  The

19   patent application was rejected by the Patent Office because

20   of the Tenold reference.  It was only when Bayer appealed to

21   the Board of Patent Appeals that it was able to get past the

22   Tenold reference.

23          Mr. Bove has spoken in generalities here, but

24   Your Honor has held repeatedly that in these

25   disqualification claims what is necessary is a painstaking

1    review of the facts.

2            Here, the facts would show that 14 years ago,

3    Townsend represented Myles, Inc., which is a predecessor in

4    interest to Bayer, in a lawsuit in California against the

5    Japanese Red Cross and a subsidiary Alpha Therapeutics.

6    That case 14 years ago lasted for a grand total of six

7    months.  It was filed on May 29th, 1992, and settled on

8    November 30th, 1992.  The Tenold patent that was being

9    asserted by my law firm was issued in 1983, 23 years ago, on

10   an application that was filed 25 years ago, 1981.

11           The accused product of the Green Cross was

12   not -- it was an IGIV but it was not used to make the

13   solvent detergent process that is the subject of the Alonso

14   patent.  That lawsuit occurred so long ago that the partner

15   in charge of it retired more than a decade ago.  The patent

16   itself expired six years ago.  And Townsend has none of the

17   case files or billing records because our files don't even

18   go back that far.

19           I am not the managing partner of Townsend, Your

20   Honor.  Susan Spaeth is.  She is the managing partner of our

21   entire law firm.  At that time she was just a third-year

22   associate, the youngest lawyer on a team of four.

23           That lawsuit itself appears to have settled

24   while a motion to dismiss was still pending but before the

25   pleadings were even settled.

1       The Court, as Your Honor has ruled a number of

2   times, to make such a claim successfully there would have to

3   be some indication that Townsend obtained confidential

4   information from Myles, Inc. that would be useful in this

5   lawsuit.  But that can't possibly be true here.  It is not

6   true, as I said, the Tenold patent itself is not a secret.

7   It is cited on the face of the patent application.  The file

8   history is littered with references to Tenold.  To the

9   extent that Townsend did any investigation of what Dr.

10  Tenold was doing back in the 1980s, that would be completely

11  unrelated to what Dr. Alonso was doing in the current

12  venture, because his patent application was filed 13 -- his

13  patent application was filed in 1995.  Our work on this case

14  was in 1992.  Dr. Alonso did not even file his application

15  until 1995, three years later.  The work that we were doing

16  in 1992 related to a patent that had issued ten years

17  earlier, back in 1982.

18       So Dr. Alonso's application was filed 14 years

19  after that.  If we were investigating prior art or anything

20  related to the Tenold patent, that would have been more than

21  a decade before it went with Dr. Alonso.

22       So to the extent, in fact, in that old lawsuit

23  we learned anything about Alpha Therapeutics or its

24  infringement of Dr. Tenold's patent, that would not be

25  confidential information.

1          So this is extraordinarily stale.  It involves a

2   different company, Myles, Inc., the predecessor of Bayer,

3   with a different patent asserted against a different company

4   over a different product, and it all happened more than a

5   decade ago.  It can't possibly be a basis for

6   disqualification.

7          Now, if the Court wants briefs and declarations,

8   et cetera, we will do that.  We will happily put before the

9   Court all of the records and the documents.  But what is

10  crucial here, as far as Baxter is concerned, is that we not

11  slow down this lawsuit.

12          THE COURT:  We will not do that.

13          I want to ask of you, Mr. Bove, given -- and I

14  am sure you don't agree with every factual contention or

15  assertion that was just made, but there were certainly a

16  number, and some that I suspect you would have no choice but

17  to agree.  Is there an issue you really think the Court

18  needs to wrestle with?

19          MR. BOVE:  Your Honor, my clients have

20  instructed me, in view of the fact that they presently rely

21  on the Tenold patent, which was the patent that they

22  enforced on behalf of my client, to raise this issue with

23  the Court.  And my best case on how we should proceed, it

24  should be the subject of some briefing.

25          Quite clearly, if I may just briefly respond on

22

1    the merits, the test is substantial --

2            THE COURT:  That is okay.  I don't need a

3    response to the merits.  How many pages in the form of

4    letter briefs would you care to submit to the Court,

5    counsel?  I will entertain proposals.  How many pages do you

6    think, single-spaced, you need to address this issue?

7            MR. BOVE:  I think we could do this in ten

8    pages.

9            THE COURT:  I will give you five.  You get a

10   five-page answer, Mr. Gilliland.  And a three-page reply,

11   Mr. Bove.

12           MR. BOVE:  Yes, sir.

13           THE COURT:  You can submit them, I am content to

14   let you agree on an expedited schedule, maybe we should

15   discuss that.  I am not going to interrupt the discovery and

16   litigation process while this is before the Court.  That

17   will proceed.

18           MR. BOVE:  Your Honor, we are not asking for

19   that, although we don't want that statement to be used

20   against us because we do believe that this is a matter for

21   disqualification.

22           THE COURT:  Well, maybe, maybe not.  How much

23   time do you need?

24           MR. BOVE:  Your Honor, I think we could have

25   this in a week from Friday.

23

1          THE COURT: You would like a similar amount of
2    time to respond from today, whatever that time interval is,
3    Mr. Gilliland?
4          MR. GILLILAND: That would be fine, Your Honor.
5          THE COURT: Then I will give you -- how many
6    days would you need to reply?
7          MR. BOVE: Your Honor, we have the Labor Day
8    weekend. If we could have our reply in the following
9    Friday, we are not trying to grab time, but we do have the
10   holiday weekend.
11         THE COURT: It works for me. Is that acceptable
12   to you, Mr. Gilliland?
13         MR. GILLILAND: Of course, Your Honor.
14         THE COURT: I am not going to enter an order. I
15   think -- did you get those dates?
16         MR. BOVE: Yes.
17         THE COURT: Brief on that schedule. I will
18   address the issue.
19         MR. BOVE: Your Honor, would you care to have
20   any exhibits attached to these? I am not trying to get an
21   extra argument. I don't know what the Court would require
22   to support this. Or would Your Honor just prefer to see the
23   five pages of argument and if you need more to ask for it?
24   Obviously, we will have to refer to extraneous material.
25         THE COURT: Mr. Gilliland I think has similarly

24

1    offered to attach exhibits.  Is that correct, Mr. Gilliland?

2              MR. GILLILAND:  I can if you would like, Your

3    Honor.

4              THE COURT:  I don't want mountains of paper over

5    here, counsel.  So use your judgment.  But, sure, items that

6    you feel will be helpful to the ultimate resolution of the

7    issue you can attach.

8              Let's go, then, to the first of plaintiff's

9    issues, at least as it appears in the first bullet point in

10   the letter.

11             MR. BOVE:  Your Honor, I am going to tap Ms.

12   Mason, if I may, to address these points.

13             MS. MASON:  Good morning, Your Honor.  Jacyln

14   Mason.

15             THE COURT:  Good morning.

16             MS. MASON:  The first issue that we have raised

17   in the August 9th agenda letter is defendants' deficient

18   document production.  Again, we have discussed these issues

19   with Mr. MacDonald, who is Mr. Gilliland's associate.

20   However, recently, this week, we still have not received

21   from defendants their financial information which pertains

22   to Gammagard Liquid, which is the accused product in this

23   case, and Kiovig, which is the name under which they sell it

24   in Europe.

25             We have had repeated assurances that that

25

1    information is on its way.  And then we learned early this

2    week that there were some problems with that information and

3    its production.  And again, as Your Honor knows, we have

4    depositions next week for which this information is

5    pertinent.  We still have not received a date certain when

6    those documents will be produced.

7          THE COURT:  So there has been no objection to

8    the production?

9          MS. MASON:  That is correct, Your Honor.

10         MR. GILLILAND:  Your Honor, the reason Mr.

11   MacDonald is not on this call is because he is at Baxter

12   right now getting those documents.

13         THE COURT:  When is the deposition scheduled?

14         MS. MASON:  We have depositions next week, Your

15   Honor, Tuesday in particular, where we need these documents.

16         THE COURT:  So, Mr. Gilliland, when is your

17   colleague going to be able to transmit these documents?

18         MR. GILLILAND:  Hopefully if not today then

19   tomorrow.

20         THE COURT:  How about that, Ms. Mason?

21         MS. MASON:  Unfortunately, Your Honor, I can't

22   say that -- I would say they should be produced sooner.  I

23   am concerned about us being able to process those in time.

24   As you know, we do have to travel and get out there.  We

25   will do our best if we have those documents then.

```
 1              THE COURT:  Tomorrow is pretty quick.  Today is
 2     even quicker.  So I don't know how much faster you would
 3     expect them to be able to be.  Is it possible that the
 4     deposition might need -- I am not going to micromanage this.
 5              Mr. Gilliland, get it in by tomorrow.  Then,
 6     counsel, you deal with it.
 7              Next item.
 8              MS. MASON:  Yes, Your Honor.  I believe that we
 9     recently received from defendants the additional information
10     that we have ticked off in the letter here.
11     Out-of-specification documents for batches that were not
12     released and batch records, we had come to an agreement with
13     Mr. MacDonald that defendants were going to produce to us a
14     summary of all of the lots that had been either released or
15     rejected for Gammagard Liquid and their production.
16              I believe that we received that list yesterday.
17     And then our agreement with Mr. MacDonald was on the basis
18     of that list we would then be able to choose certain lots
19     for which defendants agreed to produce additional documents,
20     in particular, lots that had been rejected.
21              That is the agreement that we have come to.  I
22     believe that that is where we stand on those issues.
23              THE COURT:  Those are resolved?
24              MS. MASON:  I believe they are resolved as long
25     as defendants' counsel will confirm my understanding of the
```

27

```
1   agreement with Mr. MacDonald.

2              THE COURT:  Did you confirm that, Mr. Gilliland?

3              MR. GILLILAND:  Absolutely.

4              THE COURT:  Then there is a concern about

5   defendants' response, or allegedly deficient responses to

6   defendants' first and second set of interrogatories.  Is

7   that the next issue?

8              MS. MASON:  I am sorry, Your Honor, I still have

9   two more categories briefly on this document production.

10             THE COURT:  Let me ask first, so we can cut to

11  the chase:  Has there been discussion on both of those?

12             MS. MASON:  Yes, Your Honor.

13             THE COURT:  Is that production going to be

14  forthcoming, Mr. Gilliland?  Is there any objection to the

15  production?  Or do you need to know exactly what she is

16  talking about?

17             MR. GILLILAND:  I believe there was an agreement

18  reached on all these things.

19             THE COURT:  Why are we talking about this, Ms.

20  Mason?

21             MS. MASON:  Your Honor, there was one

22  outstanding issue which Mr. MacDonald did not get back to me

23  on, which is to confirm all the recent --

24             THE COURT:  Better use of the Court's time.

25  When counsel has agreed, you can confirm on your own time.
```

28

1          MS. MASON:  The first and second set of

2    interrogatories is off the table, Your Honor.  The deficient

3    responses to Nos. 6 and 18 for the admissions, all we simply

4    want is for defendants to explain their denials to those

5    requests for depositions.

6          THE COURT:  How about that, Mr. Gilliland?

7          MR. GILLILAND:  Your Honor, I think we should

8    talk about this offline.  We haven't met and conferred about

9    this yet.  I don't think there should be any problem and I

10   don't think we need to involve the Court.

11         THE COURT:  Are you comfortable with that, Ms.

12   Mason?

13         MS. MASON:  Yes, Your Honor.

14         THE COURT:  Anything else we need to talk about?

15         MS. MASON:  Yes, Your Honor.  One more area on

16   the recall of Gammagard S/D, confirming whether or not we

17   would be getting those documents.  It has been represented

18   we would and we have not.  And I have not received any

19   confirmation on that, Your Honor.

20         THE COURT:  Gammagard S/D, Mr. Gilliland?

21         MR. GILLILAND:  I believe they were sent out

22   already, Your Honor.

23         THE COURT:  They are in transit?

24         MR. GILLILAND:  Yes.

25         MS. MASON:  Thank you, Your Honor.

29

```
 1              THE COURT:  Okay, counsel.  Take compare.

 2              (Teleconference concluded at 10:40 a.m.)

 3                          -   -   -

 4    Reporter:  Kevin Maurer

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

## CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on December 20, 2006, the within

document was filed with the Clerk of the Court using CM/ECF which will send notification of

such filing(s) to the following; that the document was served on the following counsel as

indicated; and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Jeffrey B. Bove, Esq.
Mary W. Bourke, Esq.
Mark E. Freeman, Esq.
Jaclyn Mason, Esq.
Donna Hallowell
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE  19899-2207
jbove@cblh.com, mbourke@cblh.com
mfreeman@cblh.com, jmason@cblh.com
dhallowell@cblh.com

I hereby certify that on December 20, 2006 I have sent by E-mail and Federal

Express the foregoing document to the following non-registered participants:

Bradford J. Badke, Esq.
Gabrielle Ciuffreda, Esq.
Ropes & Gray LLP
1251 Avenue of the Americas
New York, NY  10020-1105
bradford.badke@ropesgray.com
gabrielle.ciuffreda@ropesgray.com

/s/ Philip A. Rovner
Philip A. Rovner  (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com