# EXHIBIT 14

LEXSEE 1999 U.S. DIST. LEXIS 12447

E.I. DUPONT DE NEMOURS & CO., Plaintiff, v. MILLENNIUM CHEMICALS, INC. and MILLENNIUM INORGANIC CHEMICALS, INC., Defendants.

C.A. No. 97-237-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1999 U.S. Dist. LEXIS 12447

August 2, 1999, Decided

**NOTICE:** [*1] FOR ELECTRONIC PUBLICATION ONLY

**DISPOSITION:** Defendant's motion for summary judgment and plaintiff's motion to dismiss denied and plaintiff's motion to strike granted in part and denied in part.

**COUNSEL:** For Plaintiff: Richard L. Horwitz, Esquire, Joanne Ceballos, Esquire, Potter, Anderson & Corroon LLP, Wilmington, Delaware.

For Plaintiff: John C. Vassil, Esquire, Bruce D. DeRenzi, Esquire, Of counsel, Morgan & Finnegan, L.L.P., New York, New York.

For Defendants: Jack B. Blumenfeld, Esquire, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware.

For Defendants: David A. Kalow, Esquire, Kenneth L. Bressler, Esquire, Kalow, Springut & Bressler LLP, New York, New York.

**JUDGES:** Sue L. Robinson, District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION:**

MEMORANDUM OPINION

Dated: August 2, 1999
Wilmington, Delaware

**Robinson, District Judge**

I. INTRODUCTION

Plaintiff E.I. DuPont De Nemours & Co. filed this patent infringement action against Millennium Chemicals, Inc. and Millennium Inorganic Chemicals, Inc. (collectively, "defendant") on May 1, 1997. Plaintiff is incorporated under the laws of Delaware and has its principal place of business in Wilmington, Delaware. (D. [*2] I. 137, P 2) Defendant is also a Delaware corporation with its principal places of business in Iselin, New Jersey and Hunt Valley, Maryland. (D.I. 137, PP 3-4) The court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338. Venue is proper in this judicial district by virtue of 28 U.S.C. §§ 1391(c) and 1400(b).

Currently before the court is defendant's motion for summary judgment (D.I. 92) and plaintiff's motion to dismiss, or in the alternative, to strike in whole or in part defendant's second and third counterclaims (D.I. 168). In its motion, defendant argues that plaintiff's patents violate the definiteness requirement of 35 U.S.C. § 112 and therefore are invalid. For its part, plaintiff seeks dismissal of defendant's second and third counterclaims as untimely; in the alternative, plaintiff moves the court to strike all or part of defendant's counterclaims for failure to comply with the applicable statute of limitations. For the following reasons, the court shall deny both defendant's motion for summary judgment and plaintiff's motion to dismiss and grant in part plaintiff's motion to strike.

[*3] II. BACKGROUND

Plaintiff is the assignee of U.S. Patent Nos. 5,631,310 ("the '310 patent") and 5,889,090 ("the '090 patent"). n1 These patents disclose processes for manufacturing "highly loaded" silanized titanium dioxide pigments in polyethylene or other polymer concentrates. Manufacturers use titanium dioxide pigment, which is white, to color various products, including plastics (such as trash bags and diaper linings), paints, and paper. This suit involves the use of these pigments in the plastic film market. (D.I. 160, P 49) There are three steps involved in coloring plastics using titanium dioxide pigment. First, the titanium dioxide pigment is coated with silanes or

Case 1:05-cv-00349-GMS    Document 241-15    Filed 04/05/2007    Page 3 of 6

Page 2
1999 U.S. Dist. LEXIS 12447, *

other materials. Second, the coated titanium dioxide pigment is shipped to a masterbatch, or concentrate, maker who forms the masterbatch by adding plastic to the pigment. Third, the masterbatch maker sells this concentrate to a plastic manufacturer who, in turn, adds more plastic to the concentrate and extrudes the pigmented plastic into film for use in various consumer products. (D.I. 93 at 4)

> n1 Initially, plaintiff alleged that defendant induced infringement of U.S. Patent No. 5,607,994 (the "'994 patent"), a product patent disclosing a "polyethylene matrix consisting essentially of polyethylene and about 50 to about 87% by weight silanized [titanium dioxide] pigment." (D.I. 93, Ex. A, '994 patent, col. 8, lns. 20-23) After defendant filed the instant motion for summary judgment, plaintiff filed a second amended complaint (D.I. 137), which substituted the '090 process patent for the '994 patent. Plaintiff appears to have abandoned suit over the '994 patent, focussing instead on defendant's alleged inducement of infringement of the '090 and '310 patents. Defendant's instant motion for summary judgment addresses only the '994 and '310 patents. Because the '994 patent is no longer the subject of suit, the court shall address only defendant's arguments touching on the '310 patent.

[*4]

In the past, the use of titanium dioxide pigment in plastics had several processing disadvantages and often resulted in product quality problems. The processing disadvantages included poor dispersability of the pigment, high energy requirements for mixing the pigment, and low productivity. The pigment concentrate also occasionally produced "lacing" (holes or tears in the plastic film) and noxious gases or rendered the film resistant to printing. (D.I. 97 at 5) In response to consumer demand for less problematic pigmentation methods, both plaintiff and defendant developed "highly loaded" preparations of coated, silanized titanium dioxide pigment, which purportedly reduce the aforementioned processing and product quality disadvantages. In its second amended complaint, plaintiff alleges that defendant has induced infringement of the '310 and '090 patents through the manufacture, advertisement, promotion, and sale of silanized titanium dioxide pigment under the trade name "TiONA(R) RCL-188" (hereafter, "RCL-188") for use by masterbatch manufacturers in polyethylene concentrates. (D.I. 137, PP 5-8)

### III. DISCUSSION

#### A. Defendant's Motion for Summary Judgment

Defendant [*5] argues that several terms used in the claims of the '310 patent are ambiguous and, therefore, are invalid for indefiniteness. Defendant points to the '310 patent's use of "coating," "mixture," and "at least one" as examples of such indefiniteness. In interrogatories, defendant asked plaintiff to clarify the meaning of each of these disputed terms, but plaintiff refused "on the ground that it is premature in seeking the contentions of [plaintiff] during the initial phase of discovery." (D.I. 93, Ex. C at 2, 4, 5) The '310 patent employs these allegedly indefinite terms in the following manner.

#### 1. "Coating"

The '310 patent uses "coating" as a verb to describe the process of coating the pigment with "at least one organosilicon compound." (D.I. 93, Ex. B, col. 8, lns. 24-25, 58) Defendant contends, without supporting evidence, that the ambiguity of "coating"

> lies in the fact that the chemical composition of the silane, if added to water, may change at the very least from (i) the time the ingredients are mixed to (ii) the time they attach to the pigment.

(D.I. 93 at 6) Due to this purported ambiguity, it is allegedly impossible to determine whether the '310 patent [*6] covers the formula for silane as it is added to water or the formula for silane as (or after) it coats the titanium dioxide pigment. (D.I. 93 at 7)

#### 2. "Mixture"

Claim 3 of the '310 patent discloses a process for coating a titanium dioxide pigment with an organosilicon compound "comprising a **mixture** of . . . (a) at least one silane . . . and (b) . . . at least one polysiloxane . . . ." (D.I. 93, Ex. B, col. 8, lns. 59-60; col. 9, ln. 5) Defendant asserts that the ambiguity lies in the patent's failure to claim the proportions of silane to polysiloxane which qualify as a mixture. (D.I. 93 at 7)

#### 3. "At least one"

Finally, the '310 patent describes the pigment coating as comprising "at least one" silane or mixtures of "at least one" silane and "at least one" polysiloxane. (D.I. 93, Ex. B., col. 8, ln. 24, 60; col. 9, ln. 5) Defendant argues that this phrase is indefinite because the claims do not provide the meaning of, or the units of measurements associated with, the phrase "at least one." (D.I. 93 at 8)

On a motion for summary judgment, the movant bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538,

Case 1:05-cv-00349-GMS    Document 241-15    Filed 04/05/2007    Page 4 of 6

Page 3
1999 U.S. Dist. LEXIS 12447, *

*106 S. Ct. 1348 (1986).* [*7] A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(c).* If a moving party fails to establish the absence of a genuine issue of fact, "'summary judgment must be denied **even if no opposing evidentiary matter is presented.**'" *Adickes v. S. H. Kress & Co., 398 U.S. 144, 160, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)* (quoting Advisory Committee Note on 1963 Amendment to Rule 56(e)).

In the context of the instant motion, defendant must demonstrate that there is no genuine issue of material fact with respect to the indefiniteness of the '310 patent claims. A patent claim is indefinite and, therefore, invalid if the claims fail to "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." *35 U.S.C. § 112.* Although compliance with § 112 is a question of law, see *Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1576 (Fed. Cir. 1986),* [*8] it rests on a determination of "whether one skilled in the art would understand the bounds of the claim when read in light of the specification." *Miles Labs., Inc. v. Shandon, Inc., 997 F.2d 870, 875 (Fed. Cir. 1993).* "If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more." *Id.* The degree of precision necessary to satisfy § 112 depends upon the subject matter and cannot be viewed in the abstract. See id.; *Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613, 624 (Fed. Cir. 1985).*

At issue, then, is whether one skilled in the art would find the '310 patent's use of these disputed terms indefinite. Defendant, however, offers neither evidence of the requisite degree of skill in the art nor evidence of how one skilled in the art would interpret the disputed terms. Instead, defendant merely argues in rhetorical fashion that the aforementioned terms are indefinite. Defendant cannot prevail by arguing that these terms are indefinite to **any** reader of the patent; rather, defendant must demonstrate that those **skilled in the art** would find [*9] them indefinite. See *Miles Labs., 997 F.2d at 875.* Terms that appear facially ambiguous to the lay reader may be perfectly definite to those versed in the technology at issue. See, e.g., *Andrew Corp. v. Gabriel Elecs., Inc., 847 F.2d 819, 821 (Fed. Cir. 1988)* (explaining that terms such as "closely approximate," "approach each other," and "substantially equal" are upheld by courts "when serving reasonably to describe the claimed subject matter to those of skill in the field of the invention"); *Seattle Box Co. v. Industrial Crating & Packing, Inc., 731 F.2d 818, 826 (Fed. Cir. 1984)* (finding phrase "substantially equal to" sufficiently definite). On a motion for summary judgment, abstract and rhetorical arguments in support of indefiniteness simply do not satisfy defendant's burden of proof.

Defendant also argues that the court should infer indefiniteness from plaintiff's refusal, in its responses to defendant's interrogatories, to clarify the meaning of the disputed terms. Neither the law nor logic supports such an inferential leap. On a motion for summary judgment, the nonmoving party need not present opposing evidence of definiteness [*10] where, as here, the movant has failed to show the absence of genuine factual disputes. See *Adickes, 398 U.S. at 160.* Because defendant has failed to demonstrate the absence of genuine issues of material fact with respect to whether one skilled in the art would understand the disputed terms, the court shall deny defendant's motion for summary judgment.

### B. Plaintiff's Motion to Dismiss or, in the Alternative, to Strike

Plaintiff moves the court, pursuant to *Fed.R.Civ.P. 12(b)(6),* to dismiss defendant's second and third counterclaims as untimely compulsory counterclaims filed without leave of court. In the alternative, plaintiff moves pursuant to *Fed.R.Civ.P. 12(f)* to strike defendant's second and third counterclaims as barred by the Delaware statute of limitations. (D.I. 168) Defendant asserted these counterclaims in its May 14, 1999 answer to plaintiff's second amended complaint. (D.I. 160) Defendant's second counterclaim alleges that plaintiff violated § 43(a) of the Lanham Act by making false and deceptive statements about defendant's RCL-188 product. (D.I. 160, PP 71-73) The third counterclaim asserts a state law unfair competition claim based on these same [*11] allegations. (D.I. 160, PP 74-75)

#### 1. Plaintiff's Motion to Dismiss

In support of its motion, plaintiff argues that defendant's second and third counterclaims are compulsory and, therefore, should have been asserted earlier than in its answer to plaintiff's second amended complaint. Plaintiff, however, offers no compelling justification for departing from the well established rule that a defendant may include counterclaims in its answer to an amended complaint. See *Standard Chlorine of Del., Inc. v. Sinibaldi, 1995 U.S. Dist. LEXIS 13913,* Civ. A. No. 91-188-SLR, *1995 WL 562285,* at *2 (D. Del. Aug. 24, 1995); *Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc., 50 F.R.D. 415, 419 (D. Del. 1970).* Courts in this district have reasoned that, because the amended pleading relates back to the date of the original pleading, the amending pleader "can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading." *Joseph Bancroft & Sons, 50 F.R.D. at 419.*

Case 1:05-cv-00349-GMS    Document 241-15    Filed 04/05/2007    Page 5 of 6

Page 4
1999 U.S. Dist. LEXIS 12447, *

In the present case, plaintiff filed its second amended complaint on April 7, 1999. (D.I. 137) In due course, defendant [*12] then filed its answer, which included the instant counterclaims. Under the settled law of this judicial district, defendant's counterclaims were filed in a timely manner. Thus, the court shall deny plaintiff's motion to dismiss.

### 2. Plaintiff's Motion to Strike

There remains, however, the issue of whether the relevant statute of limitations bars defendant from relying on some or all of the allegations asserted in support of its second and third counterclaims. The Lanham Act provides no statute of limitations. Generally, when a federal statute provides no statute of limitations federal courts look to the applicable state statute of limitations for guidance. See *Beauty Time, Inc. v. Vu Skin Sys., Inc., 118 F.3d 140, 143 (3d Cir. 1997)*. Accordingly, the court must look to the Delaware statute of limitations for the relevant limitations period for both defendant's Lanham Act and state unfair competition counterclaims.

The Delaware statute of limitations provides that "no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force . . . shall be brought after the expiration of 3 years from the accruing of the cause of [*13] such action. . . ." *10 Del. C. § 8106*. Because defendant's second counterclaim is "an action based on a statute" and defendant's third counterclaim is "an action to recover damages caused by an injury unaccompanied by force," Delaware's three year statute of limitations applies in the absence of an equitable exception.

Most of defendant's allegations fall within this three year period. Indeed, defendant asserts that plaintiff currently "is informing its customers and potential customers -- all of whom are either customers or potential customers of [defendant] --that the use of [defendant's] RCL-188 product will infringe [plaintiff's] patents, even though [plaintiff] knows . . . that its patents are invalid and unenforceable." (D.I. 160, P 63) Although defendant provides no specific dates for plaintiff's allegedly deceptive statements, defendant has asserted an ongoing pattern of misrepresentations and disparagement of its RCL-188 pigment by plaintiff. As such, these allegations fall within the limitations period. n2 Insofar as defendant relies on plaintiff's false statements about defendant's RCL-188 product, the statute of limitations does not bar defendant's second and [*14] third counterclaims.

n2 Defendant need not, as plaintiff argues, specify the exact date of these alleged falsehoods.

Defendant, however, also refers to a July 1995 incident in support of its second and third counterclaims. Specifically, defendant alleges that

> in or about July 1995, [plaintiff] distributed to customers and potential customers a brochure comparing two of its titanium dioxide products to [defendant's competing product, RCL-4]. In that brochure, [plaintiff] intentionally made the false claims that its R-101 and R-104 products had significantly better vinyl tinting strength than RCL-4 and better dispersability than RCL-4. In fact, [plaintiff's] own internal testing documents show otherwise. The brochure also falsely claimed that [defendant's] RCL-4 product contained methyl stearate -- a compound disfavored by customers -- when, in fact, RCL-4 contains no methyl stearate.

(D.I. 160, P 65) Because defendant filed its counterclaims in May of 1999, events relating to this 1995 [*15] brochure fall outside the three year limitations period. In the absence of some equitable exception, defendant cannot rely upon this 1995 brochure to support its second and third counterclaims.

Defendant claims that the "time of discovery rule" provides such an exception. The "time of discovery rule" tolls the statute of limitations where "an inherently unknowable injury . . . has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect . . . develops gradually over a period of time . . . ." *Cavalier Group v. Strescon Indus., Inc., 782 F. Supp. 946, 951 (D. Del. 1992)* (internal quotations and citation omitted). The statute of limitations period is tolled until a person of ordinary intelligence and prudence would have had facts sufficient to put them on notice of an injury. Id. Defendant claims in its answering brief, but not in its counterclaims, that it was "blamelessly ignorant" of plaintiff's allegedly misleading brochure until discovery commenced in the present litigation. (D.I. 176 at 11)

The court finds that the "time of discovery" rule is not applicable to the instant case. A misleading product brochure [*16] is not an "inherently unknowable injury," especially when the brochure in question was distributed to "potential customers" in a highly competitive market. As such, defendant's counterclaims with respect to this 1995 incident are barred by the statute of limitations. Moreover, the 1995 brochure is irrelevant and immaterial to the issues at bar because it refers to completely differ-

Case 1:05-cv-00349-GMS    Document 241-15    Filed 04/05/2007    Page 6 of 6

Page 5
1999 U.S. Dist. LEXIS 12447, *

ent products than those allegedly covered by the '310 and '090 patents. Accordingly, pursuant to Fed.R.Civ.P. 12(f), the court shall strike P 65 from defendant's second and third counterclaims.

## IV. CONCLUSION

For the aforementioned reasons, the court shall deny defendant's motion for summary judgment and plaintiff's motion to dismiss and grant in part and deny in part plaintiff's motion to strike. An appropriate order shall issue.