**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **TALECRIS BIOTHERAPEUTICS, INC., and BAYER HEALTHCARE LLC,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-349-GMS |
| | ) | |
| **BAXTER INTERNATIONAL INC., and BAXTER HEALTHCARE CORPORATION,** | ) | |
| | ) | |
| Defendants. | ) | |
| ───────────────────────── | ) | |
| | ) | |
| **BAXTER HEALTHCARE CORPORATION** | ) | |
| | ) | |
| Counterclaimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **TALECRIS BIOTHERAPEUTICS, INC., and BAYER HEALTHCARE LLC,** | ) | |
| | ) | |
| Counterclaim Defendants. | ) | |

**JOINT  PROPOSED FINAL JURY INSTRUCTIONS**

CONNOLLY BOVE LODGE & HUTZ LLP
Jeffrey B. Bove (#998)
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
jbove@cblh.com

*Attorneys for Talecris Biotherapeutics, Inc. and Bayer Healthcare, LLC*

POTTER ANDERSON & CORROON LLP
Philip A. Rovner (#3215)
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899
Telephone: (302) 984-6140
provner@potteranderson.com

*Attorneys for Baxter International Inc. and Baxter Healthcare Corporation*

Dated: May 14, 2007

**TABLE OF CONTENTS**

1    GENERAL INSTRUCTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.1    INTRODUCTION (<u>STIPULATED</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.2    JURORS' DUTIES (<u>STIPULATED</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.3    BURDENS OF PROOF (<u>DISPUTED</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2    THE PARTIES' CONTENTIONS (<u>DISPUTED</u>) . . . . . . . . . . . . . . . . . . . . . . . 5

3    INFRINGEMENT (<u>STIPULATED</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    3.1    PATENT CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        3.1.1    PATENT CLAIMS - GENERALLY (<u>DISPUTED</u>) . . . . . . . . . . . 9

        3.1.2    PATENT CLAIMS - DEPENDENT AND INDEPENDENT
              (<u>STIPULATED</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        3.1.3    OPEN-ENDED OR "COMPRISING" CLAIMS (<u>DISPUTED</u>) . . 13

        3.1.4    MARKUSH CLAIM
              (<u>BAXTER'S PROPOSED INSTRUCTION</u>) . . . . . . . . . . . . . . . 17

        3.1.5    THE COURT DETERMINES WHAT
              PATENT CLAIMS MEAN (<u>DISPUTED</u>) . . . . . . . . . . . . . . . . . 19

        3.1.6    PLAIN AND ORDINARY MEANING
              (<u>BAXTER'S PROPOSED INSTRUCTION</u>) . . . . . . . . . . . . . . . 25

        3.1.7    LEVEL OF ORDINARY SKILL (<u>BAXTER'S PROPOSED</u>
              <u>INSTRUCTION</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

        3.1.8    BAXTER'S CONTENTIONS (<u>BAXTER'S PROPOSED</u>
              <u>INSTRUCTION</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    3.2    INFRINGEMENT - BURDEN OF PROOF (<u>STIPULATED</u>) . . . . . . . . 34

    3.3    PATENT INFRINGEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

        3.3.1    DIRECT INFRINGEMENT (<u>DISPUTED</u>) . . . . . . . . . . . . . . . . . 35

        3.3.2    DIRECT INFRINGEMENT – LITERAL (<u>STIPULATED</u>) . . . . . 37

3.3.3   DIRECT INFRINGEMENT -
DOCTRINE OF EQUIVALENTS (<u>DISPUTED</u>) . . . . . . . . . . . . 38

3.3.4   SITUATION WHERE DOCTRINE OF EQUIVALENTS
IS NOT PERMITTED — PRIOR ART
(<u>BAXTER'S PROPOSED INSTRUCTION</u>)  . . . . . . . . . . . . . . . 44

3.3.5   SITUATION WHERE DOCTRINE OF EQUIVALENTS IS NOT
PERMITTED — PROSECUTION HISTORY ESTOPPEL
(<u>BAXTER'S PROPOSED INSTRUCTION</u>)  . . . . . . . . . . . . . . . 46

3.3.6   DETERMINATION OF INFRINGEMENT (<u>STIPULATED</u>)  . . . 48

3.4   WILLFUL INFRINGEMENT (<u>DISPUTED</u>)  . . . . . . . . . . . . . . . . . . . . . . 49

4   INVALIDITY (<u>STIPULATED</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

4.1   PRESUMPTION OF VALIDITY (<u>TALECRIS' PROPOSED
INSTRUCTION</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

4.2   DEFINITENESS (<u>DISPUTED</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

4.3   THE WRITTEN DESCRIPTION REQUIREMENT (<u>DISPUTED</u>)  . . . . . 64

4.4   ANTICIPATION - GENERALLY (<u>DISPUTED</u>) . . . . . . . . . . . . . . . . . . 69

4.4.1   PRIOR PUBLIC KNOWLEDGE (<u>STIPULATED</u>) . . . . . . . . . . . 72

4.4.2   PRIOR PUBLICATION (<u>STIPULATED</u>)  . . . . . . . . . . . . . . . . . 73

4.4.3   DATE OF INVENTION (<u>STIPULATED</u>)  . . . . . . . . . . . . . . . . . 74

4.4.4   BAXTER'S CONTENTIONS (ANTICIPATION) (<u>BAXTER'S
PROPOSED INSTRUCTION</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76

4.5   OBVIOUSNESS (<u>DISPUTED</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

4.5.1   SCOPE AND CONTENT OF THE PRIOR ART (<u>STIPULATED</u>)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84

4.5.2   BAXTER'S CONTENTIONS (OBVIOUSNESS) (<u>DISPUTED</u>) . 85

4.5.3   DIFFERENCES OVER THE PRIOR ART (<u>STIPULATED</u>) . . . . 87

4.5.4   LEVEL OF ORDINARY SKILL (<u>DISPUTED</u>) . . . . . . . . . . . . . 88

4.5.5    OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS
(STIPULATED) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  92

4.5.6    MOTIVATION TO COMBINE (DISPUTED) . . . . . . . . . . . . . . .  94

4.5.7    OBVIOUSNESS - HINDSIGHT (STIPULATED) . . . . . . . . . .  100

4.5.8    OBVIOUS TO TRY (DISPUTED) . . . . . . . . . . . . . . . . . . . . . . .  101

4.5.9    INDEPENDENT INVENTION BY OTHERS (BAXTER'S
PROPOSED INSTRUCTION) . . . . . . . . . . . . . . . . . . . . . . . . . .  105

4.5.10   BAXTER'S CONTENTIONS (BAXTER'S PROPOSED
INSTRUCTION) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  107

5    UNENFORCEABILITY (BAXTER'S PROPOSED INSTRUCTION) . . . . . . .  110

5.1    INEQUITABLE CONDUCT
(BAXTER'S PROPOSED INSTRUCTION) . . . . . . . . . . . . . . . . . . . . .  111

5.2    MATERIALITY (BAXTER'S PROPOSED INSTRUCTION) . . . . . . . .  114

5.3    INTENT (BAXTER'S PROPOSED INSTRUCTION) . . . . . . . . . . . . . .  118

5.4    BALANCING (BAXTER'S PROPOSED INSTRUCTION) . . . . . . . . .  121

6    DAMAGES    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  123

6.1    GENERALLY (DISPUTED) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  123

6.2    COMPENSATORY DAMAGES IN GENERAL (DISPUTED) . . . . . . .  124

6.3    BURDEN OF PROOF (DISPUTED) . . . . . . . . . . . . . . . . . . . . . . . . . .  129

6.4    DATE DAMAGES MAY BEGIN (STIPULATED) . . . . . . . . . . . . . . .  130

6.5    REASONABLE ROYALTY AS A MEASURE OF DAMAGES
(DISPUTED) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  131

6.6    HYPOTHETICAL NEGOTIATION - INFRINGEMENT CEASES
(TALECRIS' PROPOSED INSTRUCTION) . . . . . . . . . . . . . . . . . . . .  137

6.7    HYPOTHETICAL NEGOTIATION - INFRINGEMENT CONTINUES
(TALECRIS' PROPOSED INSTRUCTION) . . . . . . . . . . . . . . . . . . . .  140

6.8     FACTORS FOR DETERMINING REASONABLE ROYALTY
        (<u>BAXTER'S PROPOSED INSTRUCTION</u>) . . . . . . . . . . . . . . . . . . . . .   143

6.9     INTEREST (<u>STIPULATED</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   146

6.10    CLOSING STATEMENT - DAMAGES (<u>STIPULATED</u>) . . . . . . . . . . .   147

7     DELIBERATIONS AND VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   148

7.1     INTRODUCTION (<u>STIPULATED</u>) . . . . . . . . . . . . . . . . . . . . . . . . . . .   148

7.2     UNANIMOUS VERDICT (<u>STIPULATED</u>) . . . . . . . . . . . . . . . . . . . . .   149

7.3     DUTY TO DELIBERATE (<u>STIPULATED</u>) . . . . . . . . . . . . . . . . . . . .   151

7.4     COURT HAS NO OPINION (<u>STIPULATED</u>) . . . . . . . . . . . . . . . . . . .   152

# 1    GENERAL INSTRUCTIONS

## 1.1    INTRODUCTION (<u>STIPULATED</u>)

Members of the jury, I will now instruct you about the law that you must follow in deciding this case.

I will start by reminding you about your duties as jurors and the instructions you heard at the beginning of the case.

I will then explain the positions of the parties and the law you will apply in this case.

Lastly, I will explain the rules that you must follow during your deliberations in the jury room and the possible verdicts that you may return.

Please listen very carefully to everything that I say.

<u>Authority:</u>     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 1.1 (2004) .

**1.2     JURORS' DUTIES (<u>STIPULATED</u>)**

Remember your duties as jurors as I explained them to you at the beginning of the case. You must decide what the facts are from the evidence you saw and heard in court. Nothing I have said or will say should influence your determination of the facts in any way. Do not guess or speculate, and do not be influenced in any way by any personal feeling of sympathy for, or prejudice against, either side in this case. All parties are entitled to the same fair and impartial consideration.

You must also take the principles of law that I will now explain to you and apply them to the facts in reaching your verdict. You are bound by the oath you took to follow my instructions, even if you personally disagree with them.

All of my instructions are important, and you should consider them together as a whole. This includes the instructions that I gave you when we started and during trial. I will not repeat my earlier instructions about evidence and how to weigh and consider it. You have copies of these instructions, however, and you should refer to them as you feel necessary.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

<u>Authority:</u>     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 1.2 (2004).

**1.3     BURDENS OF PROOF (<u>DISPUTED</u>)**

Talecris has the burden to prove its claim of patent infringement and its claim of damages by a preponderance of the evidence.  That means Talecris must produce evidence that, when considered in light of all the facts, leads you to believe that what Talecris claims is more likely true than not.  To put it differently, if you were to put Talecris' and Baxter's evidence on the opposite sides of a scale, the evidence supporting Talecris' claims would have to make the scales tip somewhat on its side.

In addition, Talecris must prove its claim of willful infringement by clear and convincing evidence and not by a preponderance of the evidence, the standard that applies to Talecris' other claims in this case.  Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a fact is highly probable.  Proof by clear and convincing evidence is thus a higher burden than proof by a preponderance of the evidence.

Baxter has the burden to prove that the asserted claims of the '191 patent are invalid **[and unenforceable]**[1] by clear and convincing evidence.

Finally, keep in mind that the standard in criminal case, "proof beyond a reasonable doubt," does not play any part in this case, and you should, therefore, not consider it at all in your deliberations.

---

[1]**Talecris objects to Baxter's proposed language for the following reasons: (1)  Baxter has no claim for inequitable conduct in this case, as it is the subject of a pending motion for leave to amend, which Talecris has opposed; (2) inequitable conduct is an equitable consideration for the Court, not the jury; (3)  if Baxter's motion is granted, Talecris reserves the right to move to bifurcate; and (4) Talecris reserves its right to negotiate the substance of any of Baxter's proposed language pertaining to inequitable conduct, and hereby preserves all of its objections thereto, given that the claim is currently not in the case.**

Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 1.3 (2004) (modified).

## 2       THE PARTIES' CONTENTIONS (<u>DISPUTED</u>)

I will now summarize the issues that you must decide and for which I will provide

instructions to guide your deliberations.  You must decide the following issues:

1.      Whether Talecris has proven by a preponderance of the evidence that Baxter

literally infringes claims 1, 7 through 10, 12, or 15 through 20 of the '191

patent by importing into the United States and/or offering to sell, selling, or

using within the United States Baxter's GAMMAGARD® Liquid product

**[which is made by the '191 patented process]**[2].

2.      Whether Talecris has proven by a preponderance of the evidence that Baxter

infringes under the doctrine of equivalents claims 10, 12, 15, or 16 of the '191

patent by importing into the United States and/or offering to sell, selling, or

using within the United States Baxter's GAMMAGARD® Liquid product

**[which is made by the '191 patented process]**[3].

3.      If you find that Baxter has infringed any claim of the '191 patent, whether

Talecris has demonstrated by clear and convincing evidence that Baxter's

infringement of the '191 patent was willful.

_____

[2]**Baxter objects to the inclusion of the language "which is made by the '191 patented process" in this instruction.  Baxter's GAMMAGARD® Liquid product is in fact not made by the '191 patented process.  This is one of the main disputes in this case.  If this language were included, the jury would be misled into believing that Baxter infringes the '191 patent before it even begins deliberating, to Baxter's great prejudice.  Accordingly, this language violates Federal Rules of Evidence 402 and 403 and, if included, would be clear reversible error.**

[3]*See* **footnote 2.**

4. Whether Baxter has proven by clear and convincing evidence that claims 1, 7 through 10, 12, and 15 through 20 of the '191 patent are invalid for anticipation.

5. Whether Baxter has proven by clear and convincing evidence that claims 1, 7 through 10, 12, and 15 through 20 of the '191 patent are invalid for obviousness.

6. Whether Baxter has proven by clear and convincing evidence that claims 1, 7 through 10, 12, and 15 through 20 of the '191 patent are invalid for lack of written description.

7. Whether Baxter has proven by clear and convincing evidence that claims 1, 7 through 10, 12, and 15 through 20 of the '191 patent are invalid for indefiniteness.

8. **[Whether the '191 patent is unenforceable for failure to disclose material information under 37 C.F.R. § 1.56?][4]**

---

[4]**Talecris objects to Baxter's proposed language for the following reasons: (1) Baxter has no claim for inequitable conduct in this case, as it is the subject of a pending motion for leave to amend, which Talecris has opposed; (2) inequitable conduct is an equitable consideration for the Court, not the jury; (3) if Baxter's motion is granted, Talecris reserves the right to move to bifurcate; and (4) Talecris reserves its right to negotiate the substance of any of Baxter's proposed language pertaining to inequitable conduct, and hereby preserves all of its objections thereto, given that the claim is currently not in the case.**

9.      If any asserted claim of the '191 patent is valid and infringed, **[and all the asserted claims of the '191 patent are enforceable,]**[5] the amount of damages adequate to compensate Talecris for the infringement.

In a few minutes, I will give you a detailed explanation for these matters.

---

[5]**Talecris objects to Baxter's proposed language for the following reasons: (1) Baxter has no claim for inequitable conduct in this case, as it is the subject of a pending motion for leave to amend, which Talecris has opposed; (2) inequitable conduct is an equitable consideration for the Court, not the jury; (3) if Baxter's motion is granted, Talecris reserves the right to move to bifurcate; and (4) Talecris reserves its right to negotiate the substance of any of Baxter's proposed language pertaining to inequitable conduct, and hereby preserves all of its objections thereto, given that the claim is currently not in the case.**

**3    INFRINGEMENT (<u>STIPULATED</u>)**

At the beginning of the trial, you watched a video which gave you some information about patents and the patent system and a brief overview of the patent laws.  If you would like to review a text copy of the video or any of my earlier instructions at any time during your deliberations, they will be available to you in the jury room**.**

As I stated before, Talecris alleges that Baxter infringes claims 1, 7 through 10, 12, and 15 through 20 of the '191 patent.  If anyone imports into the United States or offers to sell, sells, or uses within the United States a product that is made by a process covered by a patent claim without the patentee's permission, that person is said to *infringe* the patent. Talecris alleges that Baxter's manufacturing process to make GAMMAGARD® Liquid in Europe infringes the asserted claims of the '191 patent and that Baxter imports GAMMAGARD® Liquid into the United States and/or offers to sell, sells, or uses GAMMAGARD® Liquid within the United States.

I will now instruct you on the specific rules you must follow in deciding whether Talecris has proven that Baxter has infringed any of the asserted claims of the '191 patent.


Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at
              3.1 (2004) (modified); 35 U.S.C. § 271(g).

**3.1    PATENT CLAIMS**

**3.1.1    PATENT CLAIMS - GENERALLY (<u>DISPUTED</u>)**

To decide whether Baxter has infringed the '191 patent, you will have to understand the patent "claims."  As you will recall from the video you watched at beginning of the trial, the claims of a patent are the numbered sentences at the end of a patent.  The claims describe the invention made by the inventor.  That is what the patentee owns and what the patentee may prevent other from making, using, or selling.  Claims may describe processes for making or using a product.  Only the claims of the patent can be infringed.  The '191 patent also includes a Figure and discussions of examples of the invention, but neither the Figure nor the examples can be infringed.  You should not compare Baxter's manufacturing process with any specific example set out in the '191 patent or with any manufacturing process used by Talecris.  Rather, you must only compare Baxter's manufacturing process with the *asserted claims* of the '191 patent when making your decision regarding infringement.  The asserted claims are claims 1, 7 through 10, 12, and 15 through 20.

**[Each claim of a patent represents a separate protection given to a patentee, and][6]** you must individually consider each of the asserted claims involved in this case.  The law does not require infringement of all the claims in a patent.  There is infringement if a single claim of the patent has been infringed and possible damages resulting from a finding of infringement.

_____

[6]**Baxter objects to Talecris' proposed language in brackets as cumulative and unnecessary and prejudicial in violation of Federal Rule of Evidence 403.  The frequent reiteration of the patentee's rights and protection of its patent could unfairly bias the jury towards a finding of infringement, to Baxter's prejudice.  *See* Fed. R. Evid. 403.**

9

Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at
              3.2.1 (2004); Judge Sleet's Preliminary Jury Instructions - Patent, available at
              http://www.ded.uscourts.gov/GMSmain.htm (Rev. 01/18/2006) (modified).

### 3.1.2   PATENT CLAIMS - DEPENDENT AND INDEPENDENT (<u>STIPULATED</u>)

Claims are typically divided into parts called "elements" or "steps" in a process patent. For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop.  The tabletop, legs, and glue are each a separate element of the claim.

There are two types of patent claims: independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  In simple terms, an independent claim stands on its own two feet.  An independent claim is read alone to determine the elements that must exist to infringe the claim.  Claim 1 is the only independent claim of the '191 patent.

A dependent claim refers to at least one other claim in the patent.  A dependent claim includes all of the elements in the claims to which it refers.  Therefore, to determine what a dependent claim covers, you must look at both the elements of the dependent claim and the claim or claims to which it refers.

For example, claim 12 of the '191 patent is a dependent claim.  It refers to claim 1. For Baxter's manufacturing process to infringe dependent claim 12, the manufacturing process must have all of the elements of both claim 1 and claim 12.  For claim 15, which depends from claim 12, which depends from claim 1, Talecris must prove Baxter's manufacturing process has all of the elements of claims 1, 12, and 15 for Baxter to infringe.

Therefore, if you find that independent claim 1 is not infringed, you must also find that all claims depending on claim 1 are not infringed.

11

Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 3.2.2 (2004).

### 3.1.3   OPEN-ENDED OR "COMPRISING" CLAIMS (<u>DISPUTED</u>)

<u>**Talecris' Proposed Instruction 3.1.3:**</u>

The beginning or preamble to claim 1 uses the transitional word  "comprising" in the phrase, "A method of treating a solution of antibodies which may have virus activity, the method comprising...."   "Comprising" means "including" or "containing."  That is, if you find that Baxter's manufacturing process contains all of the steps in claim 1, claim 1 is infringed - any additional steps are irrelevant.

For example, a claim to a table *comprising* the three elements of a tabletop, legs, and glue would be infringed by a table that includes  those elements, even if the table also includes additional steps such as wheels on the table's legs.

<u>Authority:</u>      Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 3.3.3 (2004).

**Baxter's Objection to Talecris' Proposed Instruction 3.1.3:**

Baxter objects to Talecris' proposed instruction as misleading and an inaccurate statement of the law. *See, e.g.*, *Woodson v. Scoot Paper Co.*, 109 F.3d 913, 929-931 (3d Cir. 1997). While it is true the use of the transitional word "comprising" allows for additional steps, such use "does not free the claim from its own limitations." *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001); *see also Spectrum Int'l Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998). Accordingly, not all additional steps are irrelevant as suggested by Plaintiffs' proposed instruction. If any additional step negates a required element of Claim 1, then Claim 1 cannot be infringed. *See Kustom Signals*, 264 F.3d at 1332. Therefore, Baxter offers as an alternative its proposed jury instruction, which fairly and accurately states the law.

**Baxter's Proposed Instruction 3.1.3:**

The preamble to Claim 1 uses the transitional word "comprising." The word "comprising" means "including the following but not excluding others." If you find that Baxter's manufacturing process includes all of the elements in Claim 1, for example, the fact that Baxter's manufacturing process might include additional process steps would not avoid literal infringement as a general rule.

However, there is one exception to this general rule. If the inclusion of additional steps in Baxter's manufacturing process bars the possibility of meeting another required element of Claim 1, then you cannot find infringement.

For example, there might be a claim to "a process of cleaning brightly-colored clothes while preserving their color, comprising washing the clothes with cold water and regular soap." Such a claim would be infringed by a cleaning process that washes clothes with cold water and regular soap and also adds fabric softener or starch because it is a comprising claim and permits other steps. However, a process that washes clothes with cold water and regular soap but also adds bleach, which fades bright colors, would not infringe the claimed process, even though it is a comprising claim, because it does not meet the "preserving their color" limitation.

Authority:     Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 3.3.3 (2004) (modified); AIPLA's Model Patent Jury Instructions, at 3.7 (Rev. Feb. 2006) (modified); *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001); *Spectrum Int'l. Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271 (Fed. Cir. 1986).

15

**Talecris' Objection to Baxter's Proposed Instruction 3.1.3:**

Talecris objects to Baxter's proposed instruction in its entirety because it is misleading and will confuse the jury. Baxter's cleaning clothes example unnecessarily complicates the instruction and is likely to confuse the jury. Talecris requests that its proposed instruction be given to the jury instead of Baxter's proposed instruction. Talecris' proposed instruction comports with D. Del. Model Instructions and accurately states the law. Baxter's does not as it, *inter alia*, confuses additional unclaimed activities, with claim elements.

### 3.1.4   MARKUSH CLAIM (<u>BAXTER'S PROPOSED INSTRUCTION</u>)

When a claim allows for a single selection from a group having a specified list of members in the form of "wherein X is a, b, c, and d," this is what is known as a Markush group. For example, Claim 19 has a Markush group; it states that "the detergent is selected from polysorbate 80 and sodium cholate."

A Markush group is limited to the members specified in the claim and does not allow additions, unlike the word "comprising" which I defined for you earlier. The Markush group remains limited to the members specified in the claim even if the language follows the word "comprising." Furthermore, only one member of the Markush group can be selected. Thus, if you find that Baxter uses more than one of the detergents listed in Claim 19 or uses a detergent not listed in Claim 19, then Baxter's manufacturing process cannot infringe Claim 19.

<u>Authority:</u>     *Abbott Labs. v. Baxter Pharmaceutical Prods., Inc.*, 334 F.3d 1274, 1280 (Fed. Cir. 2003); *Ex Parte Dotter*, 12 U.S.P.Q. 382 (Pat. & Tr. Off. Bd. App. 1931); *Sevenson Environmental Servs., Inc. v. United States*, ___ Fed. Cl. ___, 2007 WL 962875, at *20 (Fed. Cl. March 28, 2007).

**Talecris' Objection to Baxter's Proposed Instruction 3.1.4:**

Talecris objects to this instruction in its entirety because: (1) Claim 19 does not have a Markush group (*see, e.g.*, Manual of Patent Examining Procedure § 2173.05(h)); and (2) it is therefore highly likely to confuse the jury. Talecris requests that Baxter's proposed instruction not be given to the jury.

**3.1.5   THE COURT DETERMINES WHAT PATENT CLAIMS MEAN (<u>DISPUTED</u>)**

<u>Talecris' Proposed Instruction 3.1.5:</u>

It is the Court's duty under the law to define what the patent claims mean.  I have made my determinations, and I will now instruct you on the meaning of certain claim terms. You must use the meaning that I give you for each patent claim to make your decisions if the claim is infringed or invalid.  You must ignore any different definitions used by the witnesses or the attorneys.

It may be helpful to refer to the copy of the '191 patent that you have been given as I discuss the claims at issue here.  For example, if you look at the '191 patent, the claims of the patent are on the last page, starting at column 11, line 34.  I have determined the meaning of the following terms:

1.     The term 'any virus activity" has its plain and ordinary meaning

2.     The term "under conditions ... resulting in an increased level of anticomplement activity" has its plain and ordinary meaning.

3.     The term "under conditions sufficient to substantially reduce any virus activity and resulting in an increased level of anticomplement activity" has its plain and ordinary meaning.

4.     The term "increased level of anticomplement activity" has its plain and ordinary meaning.

5.     The term "increased anticomplement activity of the solution" has its plain and ordinary meaning

6.     The term "then incubating the solution of step a)" means "incubating a

19

solution originating from step a) under conditions of controlled time, pH, temperature, and ionic strength, wherein additional steps may be performed prior to said incubating."

7.    The term "anticomplement activity" means "the measure of the ability of antibodies to bind complement."

8.    The term "acceptable level suitable for intravenous administration" has its plain and ordinary meaning.

9.    The term "ionic strength" means "the summation: $I=1/2\sum(c_i z^2)$ where $c_i$ is the concentration of each type of ion (in moles 1-1) and z is its charge."

Authority:    Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 3.3.3 (2004) (modified).

**Baxter's Objection to Talecris' Proposed Instruction 3.1.5:**

Baxter objects to Talecris' proposed instruction in entirety as incomplete, misleading and prejudicial in violation of Federal Rule of Evidence 403. The Court determined that certain claim terms at issue in this case should have their "plain and ordinary meaning." The inquiry does not end there. The "plain and ordinary meaning" of claim terms depend on their context (in the patent and file history) and, as here, may have special (technical) meaning to persons of ordinary skill in the art. *Phillips v. AWH Corp.*, 415 F. 3d 1303, 1313 (Fed. Cir. 2005) (*en banc*). For this reason, "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id*. Baxter objects to Talecris' proposed instruction as incomplete, as it omits an instruction on what the plain and ordinary meaning of certain claim terms is, and prejudicial to Baxter because it could mislead the jury into believing that the plain English meaning of individual words in the claim terms govern, rather than the meaning of the claim term as a whole to a person of ordinary skill in the art. Baxter offers as an alternative its proposed instruction, which avoids these deficiencies.

21

**Baxter's Proposed Instruction 3.1.5:**

It is the Court's duty under the law to define what the patent claims mean.  I have made my determinations and I will now instruct you on the meaning of certain elements of the asserted claims.  You must use the meaning that I give you for each patent claim to make your decisions if the claim is infringed or invalid.  You must use the same claim meanings for the asserted claims for determining invalidity as you use for determining infringement.  You must ignore any different definitions used by the witnesses or the attorneys.

It may be helpful to refer to the copy of the '191 patent that you have been given as I discuss the claims at issue here.  The claims of the '191 patent are toward the end, starting in Column 11, line 34.  I have determined the meaning of the following terms:

1.     The term "any virus activity" has its plain and ordinary meaning.  The plain and ordinary meaning of "any virus activity" is "_____."

2.     The term "under conditions . . . resulting in an increased level of anticomplement activity" has its plain and ordinary meaning.  The plain and ordinary meaning of "under conditions . . . resulting in an increased level of anticomplement activity" is "_____."

3.     The term "under conditions sufficient to substantially reduce any virus activity and resulting in an increased level of anticomplement activity" is construed to have its plain and ordinary meaning.  The plain and ordinary meaning of "under conditions sufficient to substantially reduce any virus activity and resulting in an increased level of anticomplement activity" is "_____."

4.     The term "increased level of anticomplement activity" is construed to have its

22

plain and ordinary meaning. The plain and ordinary meaning of "increased level of anticomplement activity" is "_____."

5.      The term "increased anticomplement activity of the solution" is construed to have its plain and ordinary meaning. The plain and ordinary meaning of "increased anticomplement activity of the solution" is "_____."

6.      The term "then incubating the solution of step a)" is construed to mean "incubating a solution originating from step a) under conditions of controlled time, pH, temperature, and ionic strength, wherein additional steps may be performed prior to said incubating."

7.      The term "about 60 $CH_{50}$ units/mL" is construed to mean "about 60 $CH_{50}$ units/mL, wherein one unit of ACA activity (one $CH_{50}$ unit) is defined as the amount of protein capable of activating 50% of the complement in an optimally titered complement and red blood cell hemolysin system."

8.      The term "about 45 $CH_{50}$ units/mL" is construed to mean "about 45 $CH_{50}$ units/mL, wherein one unit of ACA activity (one $CH_{50}$ unit) is defined as the amount of protein capable of activating 50% of the complement in an optimally titered complement and red blood cell hemolysin system."

9.      The term "anticomplement activity" is construed to mean "the measure of the ability of antibodies to bind complement."

10.     The term "acceptable level suitable for intravenous administration" is construed to have its plain and ordinary meaning. The plain and ordinary meaning of "acceptable level suitable for intravenous administration" is

23

"_____."

11.     The term "ionic strength" is construed to mean "the summation: $I = 1/2 \sum (c_i z^2)$ where $c_i$ is the concentration of each type of ion (in moles 1-1) and $z$ is its charge."

My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

Authority:     Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 3.3.3 (2004) (modified); AIPLA's Model Patent Jury Instructions, at 3.7 (Rev. Feb. 2006) (modified); *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1332 (Fed. Cir. 2001); *Spectrum Int'l. Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998); *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271 (Fed. Cir. 1986).

**Talecris' Objection to Baxter's Proposed Instruction 3.1.5:**

Talecris objects to Baxter's proposed instruction because: (1) Baxter is asking the Court to reconstrue the claims, even though the Court has already issued its Claim Construction Order; and (2) the terms "about 60 $CH_{50}$ units/mL" and "about 45 $CH_{50}$ units/mL" do not appear in any asserted claim, and therefore, their inclusion in this instruction is irrelevant and will confuse the jury. Baxter did not during claim construction offer any explanation of the plain and ordinary meaning of the claim terms and its effort to do so here is confusing and contrary to the Court's Claim Construction Order.

### 3.1.6   PLAIN AND ORDINARY MEANING (<u>BAXTER'S PROPOSED INSTRUCTION</u>)

Plain and ordinary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art at the time of the invention.  This is based on the understanding that patents are addressed to and intended to be read by people of skill in the art, who read the claims of the patent in the context of the specification and prosecution history of the patent.  You should determine plain and ordinary meaning in this context, that is, in the context of the patent specification and prosecution history as understood by people of ordinary skill in the art.


<u>Authority:</u>  *Philips v. AWH Corp.*, 1313; *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1303, 1313, 1319, 1324 (Fed. Cir. 2005); *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed. Cir. 1995) (en banc); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,* 859 F.2d 878 (Fed. Cir. 1988).

**Talecris' Objection to Baxter's Proposed Instruction 3.1.6:**

Talecris objects to this instruction in its entirety and asks that it not be given to the jury. Such an instruction does not appear in the D. Del. Model Jury Instructions and is unnecessary in this case. Baxter's proposed instruction is in furtherance of its impermissible attempts to re-argue claim construction in front of the jury, and abrogates the Court's authority to determine the meaning of the claims as a matter of law. As the Court indicated in its Claim Construction Order, "'In some cases, the ordinary meaning of the claim language as understood by a person of skill in the art may be readily apparent to even lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood terms.'" D.I. 199 (*citing Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

### 3.1.7  LEVEL OF ORDINARY SKILL (BAXTER'S PROPOSED INSTRUCTION)

You must determine the level of ordinary skill in the art to which the claimed invention pertains.  You must determine this level of skill as of September 22, 1995.  Factors to be considered in determining the level of ordinary skill in the pertinent art include the educational level of the inventor, the types of problems encountered in the art, the prior art patents and publications, the activities of others and prior art solutions to the problems encountered by the inventor, the sophistication of the technology, and the education of others working in the field.

Talecris contends that a person of ordinary skill in the art is one or more scientists, each with an earned doctoral degree and several years of postdoctoral experience in the fields of antibody biochemistry, protein purification or process manufacturing, and/or clinical treatment of humans using IGIV.

Baxter contends that a person of ordinary skill in the art is a process chemist, biochemist, or immunologist (or the equivalent) with either: (1) a Bachelor's or Master's degree in chemistry, biology, biochemistry, immunology, or related field, and several years of experience in one or more of the following: (a) the purification of blood proteins, including fractionation; (b) virus removal or inactivation techniques, including solvent/detergent treatment and low pH incubation; and (c) the complement system and/or ACA, including how to measure and lower ACA; or (2) the equivalent of (1).  This level of ordinary skill could be met either by an individual or by a group of people who satisfy the above criteria.

Based on the factors listed and the evidence presented, you must determine the level of ordinary skill in the art.

28

Authority:    Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 4.8.3 (2004) (modified); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286 (Fed. Cir. 2006); *Orthopedic Equipment Co. v. United States*, 702 F.2d 1005 (Fed. Cir. 1983); AIPLA's Model Patent Jury Instructions (2005).

**Talecris' Objection to Baxter's Proposed Instruction 3.1.7:**

Talecris objects to the placement and content of this instruction in its entirety.

Talecris' proposed instruction (*see* Talecris Proposed Instruction 4.5.4 below) accurately

states the law, and further, it is inappropriate for the Court to instruct the jury on any

contentions of parties - the jury is to be instructed on the law to apply to the facts.  Talecris

requests that its instruction on level of ordinary skill be given after Instruction No. 4.5.3

"Differences Over the Prior Art".

### 3.1.8   BAXTER'S CONTENTIONS (<u>BAXTER'S PROPOSED INSTRUCTION</u>)

1.      Baxter contends that the plain and ordinary meaning of the term "any virus activity" is "activity of all viruses in solutions."

2.      Baxter contends that the plain and ordinary meaning of the term "under conditions . . . resulting in an increased level of anticomplement activity" is "for a time known to the artisan to reduce virus activity, such that the anticomplement activity is increased to an unacceptable level."

3.      Baxter contends that the plain and ordinary meaning of the term "under conditions sufficient to substantially reduce any virus activity and resulting in an increased level of anticomplement activity" is "under conditions sufficient to substantially reduce the activity of all viruses in the antibody solution and resulting in an increase in anticomplement activity to an unacceptable level."

4.      Baxter contends that the plain and ordinary meaning of the term "increased level of anticomplement activity" is "increased anticomplement activity from a level acceptable for intravenous administration to a level unacceptable for intravenous administration."

5.      Baxter contends that the plain and ordinary meaning of the term "the increased anticomplement activity of the solution" is "the increased level of anticomplement activity of the solution caused by step (a)."

6.      Baxter contends that the plain and ordinary meaning of the term "acceptable level suitable for intravenous administration" is "a defined numerical level that depends upon the protein concentration, specifically, 60 CH50 units/mL for a 10% solution and 45 CH50

31

units/mL for a 5% solution, as determined by the particular anticomplement activity assay used to obtain the anticomplement activity data reported in the '191 patent."

**Talecris' Objection to Baxter's Proposed Instruction to 3.1.8:**

Talecris objects to this instruction in its entirety.  It is inappropriate for the Court to instruct the jury on any contentions of parties - the jury is to be instructed on the law to apply to the facts.  This instruction is also in furtherance of Baxter's impermissible attempt to re-argue claim construction in front of the jury, and abrogates the Court's authority to determine the meaning of the claims as a matter of law.  Baxter's proposed instruction violates the Court's claim construction order (D.I. 199) and contravenes the law of the case.

**3.2    INFRINGEMENT - BURDEN OF PROOF (<u>STIPULATED</u>)**

To prove infringement of the '191 patent, Talecris must persuade you by a

preponderance of the evidence that Baxter has infringed an asserted claim of the '191 patent.

<u>Authority:</u>    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at
3.1 (2002).

34

**3.3    PATENT INFRINGEMENT**

**3.3.1    DIRECT INFRINGEMENT (<u>DISPUTED</u>)**

Now that I have told you about the patent claims, I am now going to give you some instructions on the specific rules for infringement.  **[A patentee may enforce its right to stop others from importing into the United States or offering to sell, selling, or using within the United States a product which is made by a process patented in the United States.][7] [A company accused of infringement has the right to deny infringement in federal court.][8]**

Here, Talecris has sued Baxter and has alleged that Baxter's GAMMAGARD® Liquid is made in Europe by a process that directly infringes at least one claim of the '191 patent. Talecris further alleges that Baxter imports GAMMAGARD® Liquid into the United States and sells GAMMAGARD® Liquid within the United States. **[Baxter has denied infringement.][9]**

Deciding whether a claim has been directly infringed is a two-step process.  First, the meaning of the patent claim is determined as a matter of law.  That job is for the Court, and I

---

[7]**Baxter objects to this language in brackets as cumulative and unnecessary and prejudicial in violation of Federal Rule of Evidence 403.  The frequent reiteration of the patentee's rights could unfairly bias the jury towards a finding of infringement to Baxter's prejudice. Fed. R. Evid. 403.  Baxter asks that the bolded language below be also given to neutralize and fairly present the case.**

[8]**Talecris objects to this language in that the language is not in the model, it is not necessary to vary from the model in this case, and the jury has already heard the proposed language in the video.**

[9]*See* **footnote 6.**

have just told you what the key terms of the asserted claims mean as a matter of law.  In the second step, the interpreted claim must be compared to the accused process to determine whether every element of the claim is found in the accused process.  The element-by-element comparison is your responsibility as the jury for this case.

There are two ways in which a patent claim may be directly infringed.  First, a claim may be literally infringed.  Second, a claim may be infringed under what is called the "doctrine of equivalents."  I will explain literal and doctrine of equivalents shortly.

Keep in mind that intent to infringe, actual knowledge of a patent, or knowledge that you are infringing a patent, is not part of a claim of patent infringement.  In short, direct infringement can be established even if Baxter had a good faith belief that its actions were not infringing the '191 patent and even if Baxter did not know of the '191 patent.

Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at
              3.3 (2004) (modified); 35 U.S.C. § 271(g).

**3.3.2   DIRECT INFRINGEMENT – LITERAL (<u>STIPULATED</u>)**

An asserted claim of the '191 patent is literally infringed if Baxter's GAMMAGARD[®] Liquid manufacturing process includes every element or step in the claim.  If Baxter's manufacturing  process omits any element or step recited in the claim, Baxter does not literally infringe that claim.

<u>Authority:</u>     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 3.3.1 (2004) (modified).

### 3.3.3   DIRECT INFRINGEMENT - DOCTRINE OF EQUIVALENTS (<u>DISPUTED</u>)

<u>Talecris' Proposed Instruction 3.3.3:</u>

If you do not find literal infringement of a claim to have been proven, you must decide whether infringement has been proven under the "doctrine of equivalents." I have referred to the "doctrine of equivalents" before. Now it is time to explain this term.

For there to be infringement under the doctrine of equivalents, every claim element must be present in the accused process. A claim element may be present in an accused process in one of two ways, either literally or under the doctrine of equivalents. A claim element is literally present if it exists in the accused process just as it is described in the claim, either as I have explained that language to you or, if I did not explain it, as you understand it from the evidence presented during trial.

A claim element is present in an accused process under the doctrine of equivalents if the differences between the claim element and a corresponding aspect of the accused process are insubstantial. One way to determine this is to look at whether or not the accused step performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention. Another way is to consider whether or not people of ordinary skill in the art believe that the step of the accused process and the element recited in the patent are interchangeable.

It is not a requirement under the doctrine of equivalents that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether Baxter's process and its elements are equivalent to those defined in Talecris' claims is to be determined as of the time of the alleged infringement.

Equivalence is determined at the time of the activities accused of infringement and is not limited by what was known at the time the patent application was filed or when the patent issued.  Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims.  Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalent purposes.

Authority:     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at
               3.4 (2004).

39

**Baxter's Objection to Talecris' Proposed Instruction 3.3.3:**

Baxter objects to Talecris' proposed instruction in entirety as it is subject to Baxter's pending Motion *in limine* No. 3 (D.I. 249) and thus incorporates by reference Baxter's motion and reply brief. If the Court grants Baxter's motion, then Talecris' proposed instruction and Baxter's three instructions on the doctrine of equivalents and its exceptions are unnecessary and should be eliminated in entirety.

Baxter further objects to the following: (1) Talecris' proposed second paragraph is cumulative to the instruction on literal infringement and unnecessary; (2) the use of the word "interchangeable" is irrelevant and misleading because there is no evidence of known interchangeability thereby confusing the jury; and (3) Talecris' proposed third paragraph does not fairly and adequately reflect the issues presented and is an inaccurate statement of the law because it ignores the "insubstantial difference" test and the Supreme Court's mandate that "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520, U.S. 17, 29 (1997); *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996). Should the Court deny its motion, Baxter offers as an alternative its proposed jury instruction, which fairly and accurately states the law.

**Baxter's Proposed Instruction 3.3.3:**

If you do not find literal infringement you may consider infringement under the "doctrine of equivalents" for Claims 10, 12, 15 and 16. I have referred to the "doctrine of equivalents" before. Now it is time to explain this term.

For there to be infringement under the doctrine of equivalents, every claim element must be present in the accused process. A claim element is present in an accused process under the doctrine of equivalents if the differences between the claim element and a corresponding aspect of the accused process are not substantial. One way to determine this is to look at whether or not the accused step performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention. Another way is to consider whether or not people of ordinary skill in the art believe that the step of the accused process and the element recited in the patent claim are not substantially different. Talecris must present evidence of the substantial equivalence or the insubstantial difference to the people of ordinary skill in the art.

It is not a requirement under doctrine of equivalents infringement that those of ordinary skill in the art knew of the equivalent when the patent application was filed or when the patent issued. The question of whether Talecris has proven that Baxter's GAMMAGARD® Liquid manufacturing process and its elements are equivalent to those defined in Talecris' asserted claims is to be determined as of the time of the alleged infringement.

Equivalence is determined at the time of the activities accused of infringement and is not limited by what was known at the time the patent application was filed or when the patent

41

issued.  Thus, the inventor need not have foreseen, and the patent need not describe, all

potential equivalents to the invention covered by the claims.  Also, slight changes in technique

or improvements made possible by technology developed after the patent application is filed

may still be equivalent for doctrine of equivalents purposes.

Application of the doctrine of equivalents is the exception not the rule.  Patent claims

must be clear enough so that the public has fair notice of what was patented.  Fair notice

permits other parties to avoid actions which infringe the patent and to design around the

patent.  On the other hand, the patent owner should not be deprived of the benefits of his

patent by competitors who appropriate the essence of an invention while barely avoiding the

literal language of the patent claims.

Authority:      Draft Uniform Jury Instructions For Patent Cases in the United States District
of Delaware at 3.4 (2004) (modified); *Warner-Jenkinson Co., Inc. v. Hilton
Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co. v. Linde Air
Products Co.*, 339 U.S. 605, 607-610, *reh'g denied*, 340 U.S. 845 (1950);
*Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567
(Fed. Cir. 1996); *Lear Siegler, Inc. v. Sealy Mattress Co. of Michigan, Inc.*,
873 F.2d 1422, 1425-26 (Fed. Cir. 1989); *nCUBE Corp. v. Seachange Int'l,
Inc.*, 313 F. Supp. 2d 361, 376-78 (D. Del. 2004) (Farnan, J.).

**Talecris' Objection to Baxter's Proposed Instruction 3.3.3:**

Talecris objects to Baxter's proposed instruction because it is misleading and prejudicial.  Baxter's instruction repeatedly states that the test is whether the difference between the claim element and a corresponding aspect of the accused process are "not substantial".  The correct language is "insubstantial".  Further, Baxter's instruction states that "if you do not find literal infringement you **may** consider infringement under the doctrine of equivalent…"  The use of the word "may" is prejudicial to Talecris and is likely to confuse the jury.  Talecris' Proposed Instruction 3.3.3 follows the D. Del. model instruction and should be used instead of Baxter's proposed instruction.

43

### 3.3.4   SITUATION WHERE DOCTRINE OF EQUIVALENTS IS NOT PERMITTED — PRIOR ART (<u>BAXTER'S PROPOSED INSTRUCTION</u>)

There are two situations where resort to the doctrine of equivalents to find infringement is not permitted.  First, the doctrine of equivalents cannot be used to support infringement if you find that Baxter is merely doing what was in the prior art or what would have been obvious in light of what was in the prior art.  This is because a patent owner should not obtain, under the doctrine of equivalents, coverage which he could not have lawfully obtained from the Patent Office.  Accordingly, to find infringement under the doctrine of equivalents you must find that the patent owner has proven that he could have obtained from the Patent Office a hypothetical patent claim, similar to the asserted claims, but broad enough to literally cover the accused process.

Authority:     Draft Uniform Jury Instructions For Patent Cases in the United States District
                of Delaware at 3.5 (2004) (modified); *Festo Corp. v. Shoketsu Kinzoku Kogyo
                Kabushiki Co.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003) (en banc); *Conroy v.
                Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576-77 (Fed. Cir. 1994); *Wilson Sporting
                Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 685 (Fed. Cir. 1990),
                *cert. denied*, 498 U.S. 992 (1990).

**Talecris' Objection to Baxter's Proposed Instruction 3.3.4:**

Talecris objects to Baxter's proposed instruction to the extent it requires the jury to use a "hypothetical claim" analysis, outlined in *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 685 (Fed. Cir. 1990), *cert. denied*, 498 U.S. 992 (1990).

The Federal Circuit has stated that the "hypothetical claim" analysis is one of a number of methods under which infringement under the doctrine of equivalents can be analyzed. *See International Visual Corp v. Crown Metal Manufacturing Co., Inc.*, 991 F.2d 768, 772 (Fed. Cir. 1993) ("Hypothetical claim analysis is an optional way of evaluating whether prior art limits tha application of the doctrine of equivalents"). Moreover, contrary to Baxter's apparent position, the "hypothetical claim" analysis does not require a "full blown patentability analysis". *Key Manufacturing Group, Inc. v. Microdot, Inc.*, 925 F.2d 1444, 1449 (Fed. Cir. 1991) ("The Wilson hypothetical claim analysis does not envision application of a full-blown patentability analysis to a hypothetical claim").

Talecris further objects to Baxter's proposed instruction to the extent it attempts to shift the burden of proof regarding the content and effect of the prior art to Talecris. Baxter suggests that in order to prove infringement the jury must find that Talecris has proven that it could have been granted the "hypothetical claim". This would shift the burden to Talecris to prove that its claims were outside of the prior art. This is improper. *See National Presto Industries v. West Bend Co.*, 76 F.3d. 1185, 1192 (Fed. Cir. 1996) ("When the patentee has made a prima facie case of infringement under the doctrine of equivalents, the burden of coming forward with evidence to show that the accused device is in the prior art is upon the accused infringer...").

45

**3.3.5   SITUATION WHERE DOCTRINE OF EQUIVALENTS IS NOT PERMITTED — PROSECUTION HISTORY ESTOPPEL (<u>BAXTER'S PROPOSED INSTRUCTION</u>)**

Second, the doctrine of equivalents cannot be used to support infringement if you find that the patent owner is trying to recapture that which it gave up in the Patent Office to distinguish the invention from what was in the public domain prior to his invention.  As you have already heard, during prosecution of the patent, the patent applicant often makes arguments and amendments in an attempt to convince the Patent Office examiner to grant the patent.  The party seeking to obtain a patent may amend his patent claims or submit arguments in order to define or narrow the meaning of the claims to obtain the patent.  Once it has done so, it is not entitled to patent coverage under the doctrine of equivalents that would be so broad that it would cover the same feature that was used to distinguish the invention during the prosecution of the patent.


<u>Authority:</u>       Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 3.5 (2004) (modified); AIPLA's Model Patent Jury Instructions at 3.10 (Rev. Feb. 2006) (modified); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1362-63, 219 U.S.P.Q. 473 (Fed. Cir. 1983); *Bayer Aktiengesellschaft v. Duphar International Research* B. V., 738 F.2d 1237, 1243 (Fed. Cir. 1984).

**Talecris' Objection to Baxter's Proposed Instruction 3.3.5:**

Talecris objects to Baxter's proposed instruction in its entirety because "prosecution history estoppel" has never been asserted by Baxter and the instruction is thus irrelevant. The instruction is highly likely to cause confusion because there is no evidence in the record regarding prosecution history estoppel. This proposed instruction is therefore highly prejudicial to Talecris.

**3.3.6   DETERMINATION OF INFRINGEMENT (<u>STIPULATED</u>)**

Taking each asserted claim of the '191 patent separately, if you find that Talecris has proven by preponderance of the evidence that each element of Claims 1, 7 through 9, 17 through 20 is present literally in Baxter's GAMMAGARD® Liquid manufacturing process, then you must find that Baxter's GAMMAGARD® Liquid manufacturing process literally infringes that claim.

For Claims 10, 12, 15 and 16, if you find that Talecris has proven by preponderance of the evidence that each element of the claim is present, either literally or under the doctrine of equivalents, in Baxter's GAMMAGARD® Liquid manufacturing process, then you must find that Baxter's GAMMAGARD® Liquid manufacturing process infringes that claim.

<u>Authority:</u>      Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 3.12 (2004) (modified).

48

**3.4     WILLFUL INFRINGEMENT (<u>DISPUTED</u>)**

<u>**Talecris' Proposed Instruction 3.4:**</u>

Talecris contends that Baxter has willfully infringed the '191 patent claims.

When a company becomes aware that a patent may have relevance to its activities, that company has a duty to exercise due care and investigate whether or not its activities infringe any valid claim of the patent.  If that company does not do so and infringes the patent claims, then the infringement is willful.

The issue of willful infringement is not relevant to your decision of whether on not there is any infringement, but rather concerns the amount of damages to which Talecris is entitled.  That is, a finding of willful infringement may, in certain circumstances, entitle the patentee to increased damages.  If you decide that Baxter willfully infringed a claim of the '191 patent, then it is my job to decide whether or not to award increased damages to Talecris.

Although, as I explained before, Talecris must prove infringement of the '191 patent by a preponderance of the evidence, Talecris' burden of proving that the infringement of the '191 patent was willful is the higher burden of clear and convincing evidence.  Therefore, if you find on the basis of the evidence and the law as I have explained it that Baxter's accused process or product infringes at least one of the claims of the '191 patent, you must further decide whether Talecris has proven that Baxter's infringement was willful.  To establish willful infringement, Talecris must prove two things with clear and convincing evidence:

One, that Baxter was aware of the '191 patent; and

Two, that Baxter did *not* have a reasonable good faith belief that the patent was either

invalid, or that the patent was not infringed.

To determine whether Baxter acted with a reasonable good faith belief or whether Baxter willfully infringed the '191 patent, you must consider all of the facts, including the strength of the defenses raised by Baxter in this trial and the following factors:

1.  In designing the process accused of infringement, whether Baxter intentionally copied Talecris' invention that is covered by the '191 patent, or whether Baxter instead tried to "design around" the patent by designing a process that Baxter believed did not infringe the claims of the '191 patent. Evidence of copying is evidence of willful infringement; on the other hand, evidence of a good faith effort to "design around" the claims is evidence that the infringement was not willful.

2.  When Baxter became aware of the patent, whether Baxter formed a good faith belief that the patent was invalid or that the patent was not infringed, including whether Baxter obtained and followed the advice of a competent lawyer. Although the absence of an opinion of counsel does not require you to find willfulness, the obtaining and following of counsel's advice may be evidence that infringement was not willful. Baxter's defenses prepared for trial are not equivalent to the competent opinion of counsel of noninfringement or invalidity and cannot alone be determinative of whether Baxter acted with a reasonable good faith belief.

Keep in mind that a determination by you that Baxter has infringed the '191 patent does not automatically mean that the infringement was willful. As I have explained, the

infringement is not willful if Baxter had a good faith belief that it did not infringe, or that the

'191 patent was invalid, and if its belief was reasonable under the circumstances.

Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at
3.13 (2004)  (modified); Draft Uniform Jury Instructions for Patent Cases in
the District of Delaware at 3.12 (2002); *Black & Decker Inc. v. Robert Bosch
Tool Corp.*, 2006 U.S. Dist. LEXIS 92882 (N.D. Ill. Dec. 22, 2006) (citing
*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.* 246 F.3d
1336, 1356 (Fed. Cir. 2001).

**Baxter's Objection to Talecris' Proposed Instruction 3.4:**

Baxter objects to this instruction in entirety as misleading, prejudicial, and biased in favor of the patentee in violation of Federal Rule of Evidence 403. Talecris' proposed instruction varies from the draft model instruction to place an undue emphasis on the accused infringer's duty to exercise due care to create a heightened duty that is not based in law. Furthermore, Baxter objects to the following portions of Talecris' proposed instructions as misleading and inaccurate statements of the law: (1) the sentence "Baxter was aware of the '191 patent" is misleading and inaccurate because the law requires actual notice of the issued patent and not mere or constructive awareness (*see Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1377 (Fed. Cir. 2005); (2) Talecris' proposed instruction on the design-around is misleading and without any basis in law; (3) Talecris' proposed instruction on opinion of counsel is subject to Baxter's pending Motion *in limine* No. 3 (D.I. 247) and Baxter incorporates by reference all the arguments in Baxter's motion and reply brief; and (4) Talecris' proposed instruction ignores a factor recently adopted by the Federal Circuit in *DSU Medical Corp. v. JMS Co. Ltd*, 04-1620, 2006 U.S. App. LEXIS 30511, *20-30 (Fed. Cir. Dec. 13 2006) (*en banc*). Therefore, Baxter offers as an alternative its proposed jury instruction, which fairly and accurately states the law.

52

**Baxter's Proposed Instruction 3.4:**

If you find on the basis of the evidence and the law as I have explained it that Baxter's process infringes at least one of Talecris' patent claims, you must further decide whether or not Talecris has proven by clear and convincing evidence that Baxter's infringement was willful. To establish willful infringement, Talecris must prove two things with clear and convincing evidence:

1.      first, that Baxter had actual knowledge of the '191 patent; and

2.      second, that Baxter acted without having a reasonable good faith basis for concluding that it did not infringe the '191 patent or that the '191 patent was invalid or that the '191 patent was unenforceable.

To determine whether Baxter acted with reasonable good faith belief, you must consider the totality of the circumstances, including the strength of the defenses raised by Baxter in this trial and the following factors:

a.      whether Baxter intentionally copied the claimed invention or a product covered by Talecris' patent or whether, in contrast, Baxter, as a competitor of Talecris, tried to match Talecris' product with a functionally competitive product but did not set out to copy it, even if patent infringement ultimately is found,

b.      whether Baxter, when it learned of the '191 patent, made reasonable examination of the facts and law relating to infringement, invalidity or unenforceability issues;

c.      whether Baxter had a substantial defense to alleged infringement and reasonably believed the defense would be successful if litigated; and

53

       d.      whether Talecris changed its theories of how Baxter infringed the '191 patent and how the patent was not invalid at trial as compared to the theories Talecris had previously communicated to Baxter.

Keep in mind that a determination by you that Baxter has infringed the '191 patent does not automatically mean that the infringement was willful. As I have explained, the infringement is not willful if Baxter had a good faith belief that it did not infringe or that the asserted patent claims were invalid or that the patent was unenforceable, and if its belief was reasonable under all the circumstances.

<u>Authority:</u>      Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 3.13 (2004) (modified); *DSU Medical Corp. v. JMS Co. Ltd.*, 04-1620, 2006 U.S. App. LEXIS 30511*, *20-30 (Fed. Cir. Dec. 13, 2006) (en banc); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,* 383 F.3d 1337, 1347 (Fed. Cir. 2004) (en banc); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990); *King Instrument Corp. v Otari Corp.*, 767 F.2d 853, 867 (Fed. Cir. 1985), *cert. denied*, 475 U.S. 1016; *Radio Steel & Mfg. Co. v. MTD Products, Inc.*, 788 F.2d 1554, 1559 (Fed. Cir. 1986).

**Talecris' Objection to Baxter's Proposed Instruction 3.4:**

Talecris objects to Baxter's proposed instruction as contrary to applicable law. *See*

*Black & Decker Inc. v. Robert Bosch Tool Corp.*, 2006 U.S. Dist. LEXIS 92882 (N.D. Ill.

Dec. 22, 2006) (citing *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*

246 F.3d 1336, 1356 (Fed. Cir. 2001).  Talecris also objects to Baxter's proposed instruction

because it is misleading, prejudicial, and biased in favor of Baxter.

**4      INVALIDITY (<u>STIPULATED</u>)**

Now I will instruct you on the law of invalidity.  In considering invalidity, you must use the same claim meanings for the asserted claims as you did in determining infringement. Baxter contends that the asserted claims of the '191 patent are invalid for failure to satisfy the legal requirements of patentability.  In particular, Baxter contends that the asserted claims are invalid as indefinite, anticipated, obvious, or for failure to satisfy the  written description requirement.  I will now instruct you on each of these defenses.


<u>Authority:</u>     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 4 (2004) (modified); *Eaton Corp. v. Rockwell Int'l Group*, 323 F.3d 1332, 1343 (Fed. Cir. 2003).

**4.1     PRESUMPTION OF VALIDITY (<u>TALECRIS' PROPOSED INSTRUCTION</u>)**

The granting of a patent by the Patent Office carries with it the presumption that the patent's subject matter is new, useful, and constitutes an advance that was not, at the time of the invention was made, obvious to one of ordinary skill in the art.  The law presumes, in the absence of clear and convincing evidence to the contrary, that the Patent Office acted correctly in issuing the patent.  Nonetheless, once the validity of a patent has been put at issue, it is the responsibility of the jury to review what the Patent Office has done consistent with these instructions on the law.

Baxter has the burden of proving invalidity of each asserted claim by clear and convincing evidence.

<u>Authority:</u>     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 4.1 (2004) .

57

**Baxter's Objection to Talecris' Proposed Instruction 4.1:**

Baxter objects to this instruction as misleading, prejudicial, and biased in favor of the patentee in violation of Federal Rule of Evidence 403. The form of Talecris' proposed instruction could unfairly bias the jury against a finding of invalidity by encouraging it to place undue emphasis on the presumption of validity, to Baxter's prejudice.

**4.2    DEFINITENESS (<u>DISPUTED</u>)**

<u>**Baxter's Proposed Instruction 4.2:**</u>

I will now give you the standards by which to judge the legal adequacy of a patent disclosure, both specification and claims.

The asserted claims must be sufficiently definite that a person of ordinary skill in the art can determine the precise limits of the claimed invention.  If a person of ordinary skill in the art would be unable to determine whether their activity infringes or not, then the claim is indefinite.

The disclosure should contain sufficient clues or guidance to provide objective standards by which a skilled artisan can determine the scope of the invention.  When a word or phrase of degree such as "substantially equal to" is used, you must determine whether the patent disclosure provides some standard for measuring that degree.  You must then determine whether people of ordinary skill in the art would understand what is covered when the claim is read in light of the disclosure.  Experimentation needed to determine the limits of the claims of the patent is not necessarily a basis for holding the claims invalid.

Any asserted claim of the '191 patent is invalid for indefiniteness if its disclosure does not satisfy the standards above.  Baxter contends, in particular, that the claim terms "acceptable level suitable for intravenous administration," "increased level of anticomplement activity," "then incubating the solution of step (a)," "reduced to an acceptable level" and "the increased anticomplement activity of the solution" are indefinite.  If any of these terms is indefinite, then all asserted claims of the '191 patent are invalid.

Authority: Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 4.1 (2004); 35 U.S.C. § 112; *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351-52 (Fed. Cir. 2005).  *Geneva Pharm., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003); *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1338 (Fed. Cir. 2003); *Seattle Box Co. v. Industrial Crating & Packing*, 731 F.2d 818, 826 (Fed. Cir. 1984).

**Talecris' Objection to Baxter's Proposed Instruction 4.2:**

Talecris objects to this instruction in its entirety.  Talecris' proposed instruction accurately states the law.  *See e.g.*, *Personalized Media Commc'ns, LLC. v. ITC*, 161 F.3d 696, 705 (Fed. Cir. 1998); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1383 (Fed. Cir. 2005); *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1376 (Fed. Cir. 2001); *Xerox Corp. v. 3Com Corp.,* 458 F.3d 1310, 1323 (Fed. Cir. 2006); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1576 (Fed. Cir. 1986); *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1341 (Fed. Cir. 2003); *In re Marosi*, 710 F.2d 799, 802-03 (Fed. Cir. 1983).  Further, it is inappropriate for the Court to instruct the jury on any contentions of parties - the jury is to be instructed on the law to apply to the facts.  Such an instruction takes the fact finding function away from the jury and there is also a significant risk of the jury thinking that the Court somehow endorses or is advocating for Baxter's positions.

**Talecris' Proposed Instruction 4.2:**

Baxter contends that asserted claims of '191 patent are invalid because they are indefinite.  The patent laws require the claims of a patent to be sufficiently definite that one skilled in the art can determine the limits of the claimed invention and so that members of the public will be able to determine whether proposed future conduct will or will not infringe.

The amount of detail required to be included in the claims depends on the particular invention and the prior art, and is not to be evaluated in the abstract but in conjunction with the disclosure.  If the claims, read in light of the disclosure, reasonably apprise those skilled in the art of the proper scope of the invention, and if the language is as precise as the subject matter permits, then the claims are not indefinite.

Simply because some claim language may not be precise does not render a claim invalid.  When a word or phrase of degree such as "approach each other", "close to", "substantially equal to" is used, we must determine whether the patent disclosure provides some standard for measuring that degree.  Even if one needed to experiment so as to determine the limits of the claims of the patent, that would not necessarily be a basis for holding the claims invalid.


Authority:     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware
               (2002) p.34 (modified).

**Baxter's Objection to Talecris' Proposed Instruction 4.2:**

Baxter objects to Talecris' proposed instruction as unduly prejudicial and misleading in violation of Federal Rule of Evidence 403. It risks confusing jurors while offering them little or no assistance. Talecris' proposed instruction omits the established test of whether one of ordinary skill in the art would understand what is covered by a claim, when read in light of the disclosure. In addition, it is incomplete as it fails to instruct the jury that 35 U.S.C. § 112 requires that the patentee provide an <u>objective</u> standard or anchor by which members of the public can determine whether their activity infringes. *See*, *e.g.*, *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1350, 1352 (Fed. Cir. 2005); *Halliburton Energy Servs., Inc. v. MI, LLC*, 456 F. Supp. 2d 811, 820 (E.D. Tex. 2006). Talecris' proposed instruction also is unnecessarily restrictive as it refers only to proposed <u>future</u> conduct, placing undue emphasis on the timing of a competitor's activity and incorrect emphasis only on future conduct. The requirement of definiteness serves the notice function of a patent. If a competitor cannot discern the bounds of a claim in light of the specification (regardless of whether the competitive activity is past, current or future) then the claim is indefinite. *See Honeywell Int'l, Inc. v. ITC*, 341 F.3d 1332, 1341 (Fed. Cir. 2003); *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d 1336, 1348-49 (Fed. Cir. 2002). Talecris' proposed instruction is prejudicial to Baxter because it is incomplete, inaccurate, and invites the jury to find definiteness through subjective or undefined standards. *See* Fed. R. Evid. 403; *Datamize*, 417 F.3d at 1350, 1352.

**4.3     THE WRITTEN DESCRIPTION REQUIREMENT (<u>DISPUTED</u>)**

<u>Baxter's Proposed Instruction 4.3:</u>

The patent law requires that a patent application contain an adequate written description of the invention to ensure that the inventor was in possession of the invention at the time the patent application was filed.

The specification and claims as originally filed must convey to people of ordinary skill in the art that Dr. Alonso had invented that which he ultimately claims in the '191 patent. The written description requirement is satisfied if people of ordinary skill in the art, reading the patent application as originally filed, would immediately discern the invention and all its limitations as finally claimed in the patent. Obvious variations of the invention are not considered part of the disclosure. No particular form of written description is required, but each limitation of a claim must be described.

Baxter contends that each of the asserted claims is invalid because the specification of the '191 patent is not sufficiently clear to allow a person of ordinary skill in the art to immediately discern the invention as finally claimed in the patent. In particular, Baxter contends that all asserted claims of the '191 patent are invalid as lacking adequate written description of the terms "trialkylphosphate and a detergent," "under conditions sufficient to substantially reduce any virus activity," "conditions … resulting in an increased level of anticomplement activity," "the increased activity of the solution" and "reduced to an acceptable level suitable for intravenous administration." Baxter also contends, if "acceptable level suitable for intravenous administration" is defined by release limits or adverse events, that all asserted claims of the '191 patent are invalid as lacking adequate written description of

the term "acceptable level suitable for intravenous administration."  Baxter also contends, in

particular, that Claim 9 is further invalid as lacking an adequate written description of

"wherein the temperature is maintained within a range of 2˚C to 50˚C."


Authority:     Draft Uniform Jury Instructions For Patent Cases in the United States District
               of Delaware at 4.2 (2004) as noted; *Univ. of Rochester v. G.D. Searle & Co.*,
               358 F.3d 916 (Fed. Cir. 2004); *Turbocare Div. of Demag Delaval Turbomach.
               Corp., v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2002); *Purdue
               Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320 (Fed. Cir. 2000); *Gentry
               Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478-90 (Fed. Cir. 1998);
               *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

**Talecris' Objection to Baxter's Proposed Instruction 4.3:**

Talecris objects to this instruction in its entirety.  Talecris' proposed instruction accurately states the law, and further, it is inappropriate for the Court to instruct the jury on any contentions of parties - the jury is to be instructed on the law to apply to the facts.  Such an instruction takes the fact finding function away from the jury and there is also a significant risk of the jury thinking that the Court somehow endorses or is advocating for Baxter's positions.

**Talecris' Proposed Instruction 4.3:**

Baxter contends that asserted claims of the '191 patent are invalid because they lack an adequate written description. The patent law requires that a patent application contain an adequate written description to ensure that the inventor was in possession of the invention at the time the patent application was filed.

The specification and claims as originally filed must convey to persons of ordinary skill in the art that the inventor had invented the subject matter that is spelled out in the claims that ultimately issued as a patent. However, a specification need not disclose what is well known in the art. The description must be sufficiently clear that persons of ordinary skill in the art will recognize that the inventor made the invention having each of the elements described in the claims.

That is, to prove a claim invalid for lack of an adequate written description, Baxter must prove by clear and convincing evidence that the patent application does not reasonably convey to a person of ordinary skill in the art that the inventor had possession of the invention (at the time of the application) as that invention was finally claimed in the issued patent. No particular form of written description is required, and the description need not be in the exact words of the claimed invention.

Authority:     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware
               (2004) p.36 (modified); *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247,
               1254 (Fed. Cir. 2004).

**Baxter's Objection to Talecris' Proposed Instruction 4.3:**

Baxter objects to Talecris' proposed instruction as a misleading and inaccurate statement of the law, as it omits any reference to Federal Circuit law, which holds that "obvious variants" of the described invention are not considered part of the patent disclosure. *Turbocare Div. of Demag Delaval Turbomachinery Corp. v. General Electric Co.*, 264 F.3d 1111, 1119 (Fed. Cir. 2001); *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997).

The written description requirement also requires that the description be sufficiently clear that persons of ordinary skill in the art be able to immediately discern the inventor's possession of the invention. *Purdue Pharma L.P. v. Faulding, Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000). Baxter objects that, in the absence of this language, Talecris' proposed instruction is misleading and an inaccurate statement of law.

## 4.4    ANTICIPATION - GENERALLY (<u>DISPUTED</u>)

### <u>Stipulated:</u>

Baxter contends that the invention covered by the asserted claims of the '191 patent is invalid because it is not new.  A person cannot obtain a patent on an invention if someone else has already made the exact same invention.  In other words, the invention must be new.  If it is not new, we say that it was "anticipated" by the prior art.  Prior art is the legal term used to describe what others had done in the field before the invention was made, and may include other patents and applications, prior publications, and products, processes, or articles in public use.  Prior art is the general body of knowledge in the public domain, such as articles or other patents before the invention was made.  It is not necessary that the prior art has been available to every member of the public.  It must have been available, without restriction, to that segment of the public most likely to make use of the prior art's contents.  An invention that is "anticipated" by the prior art is not entitled to patent protection.

### <u>Baxter proposes:</u>[10]

In determining whether a single item of prior art anticipates a patent claim, you should take into consideration not only what is expressly disclosed in the particular item of prior art, but also what necessarily, or inherently, occurred as a natural result of its practice.  This is called "inherency."  Inherency may result in the anticipation of entire inventions as well as individual limitations within an invention.  Inherent anticipation, however, does not require

---

[10]**Talecris objects to Baxter's proposed language because it does not properly delineate inherency in accord with applicable law.  *See, e.g., Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1378-79 (Fed. Cir. 2003)*; Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001); *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1380-81 (Fed. Cir. 2002).**

that a person of ordinary skill in the art at the time would have recognized the inherent

disclosure. Thus, the prior use of the patented invention that was unrecognized can still be an

invalidating anticipation.

Authority:     35 U.S.C. § 102; Draft Uniform Jury Instructions for Patent Cases for the
District of Delaware at 4.5 (2004) (modified); *Schering Corp. v. Geneva
Pharms., Inc.*, 339 F.3d 1373, 1377-79 (Fed. Cir. 2003); *Mycogen Plant Sci.,
Inc. v. Monsanto Co.*, 243 F.3d 1316 (Fed. Cir. 2001); *Atlas Powder Co. v.
IRECO Inc.*, 190 F.3d 1342 (Fed. Cir. 1999); *Constant v. Advanced Micro-
Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988); *Verdegaal Bros., Inc. v. Union
Oil Co.*, 814 F.2d 628 (Fed. Cir. 1987); *Tyler Refrigeration v. Kysor Indus.
Corp.*, 777 F.2d 687 (Fed. Cir. 1985); AIPLA's Model Patent Jury Instructions
(2005).

## Talecris proposes:[11]

To prove that an invention is "anticipated," Baxter must prove by clear and convincing

evidence that a single piece of prior art expressly or inherently describes or discloses all of the

elements of the claimed invention.

When a prior art reference is silent about an asserted inherent characteristic, Baxter

must put forth clear and convincing evidence that makes clear that the missing element is

necessarily present in the thing described in the reference, and that it would be so recognized

---

[11]**Baxter objects that Talecris' proposed instruction contradicts the current state of the law.
Inherency does not require that a person of ordinary skill in the art recognize that the
missing element is necessarily present. Federal Circuit case law specifically holds that
"[i]nherency is not necessarily coterminous with the knowledge of those of ordinary skill in
the art."  *Mehl/Biophile Int'l. Corp. v. Palomar Medical Techs., Inc.*, 192 F.3d 1362, 1365-66
(Fed. Cir. 1999). Also, "[t]he discovery of a previously unappreciated property of a prior
art composition, or of a scientific explanation for the prior art's functioning, does not
render the old composition patentably new to the discoverer."  *Atlas Powder Co. v. Ireco
Inc.*, 190 F.3d 1342, 1347 (Fed. Cir. 1999).  Talecris' proposed language to the contrary
would mislead the jury in violation of Federal Rule of Evidence 403.**

by a person of ordinary skill in the art.  Inherency may not be established by probabilities or possibilities.

Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware (2004) p.40 (modified); *Sandt Tech., Ltd. v. Resco Metal and Plastics Corp.*, 264 F.3d 1344, 1350 (Fed. Cir. 2001); *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1380-81 (Fed. Cir. 2002).

### 4.4.1   PRIOR PUBLIC KNOWLEDGE (STIPULATED)

Baxter contends that the asserted claims of the '191 patent were anticipated because others in the United States publicly knew of the claimed invention before the date of Dr. Alonso's invention.  The date of Dr. Alonso's invention is presumed to be the filing date of the '191 patent application, which is September 22, 1995, but that date is to be determined by you, the jury, and there is a separate instruction providing guidance on that date.

A patent claim is invalid if the invention recited in that claim was publicly known by others in the United States before Dr. Alonso invented it.  If this is true, you must find that claim of the '191 patent invalid.


Authority:        35 U.S.C. § 102(a); Draft Uniform Jury Instructions For Patent Cases in the
                  United States District of Delaware at 4.5.1 (2004) (modified).

## 4.4.2   PRIOR PUBLICATION (<u>STIPULATED</u>)

Baxter contends that the asserted claims of the '191 patent were anticipated because the invention defined in those claims was described in a prior publication, such as an article or another patent.  An asserted claim of the '191 patent is anticipated and invalid if the entire invention defined by that claim was described in a printed publication either: (1) before the date of Dr. Alonso's invention; or (2) before September 22, 1994, more than one year before the effective filing date of the '191 patent application.

For a printed publication to anticipate an asserted claim of the '191 patent, Baxter must show that the printed publication, when read by a person of ordinary skill in the art, expressly or inherently embodies or discloses each element of the claim.  The disclosure in the printed publication must be complete enough to enable one of ordinary skill in the art to practice the invention, without undue experimentation.  In determining whether the disclosure is enabling, you should also take into account what would have been within the knowledge of a person of ordinary skill in the art at the time, and you may consider expert testimony and other publications that shed light on the knowledge such a person would have had at that time.

<u>Authority:</u>   Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 4.5.4 (2004) (modified).

### 4.4.3   DATE OF INVENTION (<u>STIPULATED</u>)

Some categories of prior art refer to the date on which the inventor made his

invention. This is called the "date of invention". I will now explain to you how to determine

this date.

There are two parts to the making of an invention. The inventor has the idea of the

invention. This is referred to as "conception" of the invention. A conception of an invention

is complete when the inventor has formed the idea of how to make and use every aspect of the

claimed invention, and all that is required is that it be made without the need for any further

inventive effort. The actual making of the invention is referred to as "reduction to practice."

An invention is said to be "reduced to practice" when it is made and shown to work for its

intended purpose.

Under the patent laws, the date of invention is presumed to be the date that the patent

application was filed. This is also referred to as "constructive reduction to practice." In this

case, that date is September 22, 1995. Ordinarily, prior art dated before the application filing

date is prior art to the patent claims.

There are, however, two circumstances under which a patent or reference dated less

than a year before the application filing date is not prior art. The first occurs when the

inventor of the patent reduced the invention to practice before the date of the reference. A

reference dated after the reduction to practice and less than a year before the application filing

date is not prior art to the patent claims. Patents and references dated more than a year before

the application filing date are always prior art.

The second circumstance occurs when the inventor conceived of the invention before

the date of the prior art and exercised reasonable diligence from just before the date of the art

up to the date of the inventor's reduction to practice.  In that case, a reference dated after the

conception date is not prior art to the patent claims unless it is dated more than a year before

the application filing date.  Reasonable diligence means the inventor worked continuously on

reducing the invention to practice.  Interruptions necessitated by the everyday problems and

obligations of the inventor or others working with him or her do not prevent a finding of

diligence.

Authority:       *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1330 (Fed. Cir.
2001); *Genentech Inc. v. Chiron Corp.*, 220 F.3d 1345, 1351 (Fed. Cir. 2000);
*Cooper v. Goldfarb*, 154 F.3d 1321, 1326-31 (Fed. Cir. 1998); *Hyatt v.
Boone*, 146 F.3d 1348, 1352-55 (Fed. Cir. 1998); *Estee Lauder Inc.
v.L'Oreal, S.A.*, 129 F.3d 588, 592-93 (Fed. Cir. 1997); *Mahurkar v. C.R.
Bard, Inc.*, 79 F.3d 1572, 1577-79 (Fed. Cir. 1996); *Burroughs Wellcome Co.
v. Barr Labs.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994); *Griffith v. Kanamaru*, 816
F.2d 624, 626 (Fed. Cir. 1987); *Morgan v. Hirsch*, 728 F.2d 1449, 1452 (Fed.
Cir. 1984).

**4.4.4   BAXTER'S CONTENTIONS (ANTICIPATION) (<u>BAXTER'S PROPOSED INSTRUCTION</u>)**

Baxter contends that the asserted claims of the '191 patent are invalid because each is anticipated by at least one of the following items of prior art:

1.    U.S. Patent No. 5,256,771 (Tsay) (1993) ("the Tsay reference");

2.    Paul K. Ng., *et al.*, "Process-Scale Purification of Immunoglobulin M Concentrate," Vox Sang 65:81-86 (1993) ("the Ng reference");

3.    EP 525 502 A1 (Gehringer) (1992) ("the Gehringer reference");

4.    Piet, *et al.*, "The use of tri(n-butyl) phosphate detergent mixtures to inactivate hepatitis viruses and human immunodeficiency virus in plasma and plasma's subsequent fractionation," Transfusion 30(7) 591-598 (1990) ("the Piet reference");

5.    Prince, *et al.*, "Failure of a human immunodeficiency virus (HIV) immune globulin to protect a chimpanzee against experimental challenge with HIV," Proc. Natl. Acad. Sci. USA 85:6944-6948 (1988) ("the Prince reference");

6.    Biesert, *et al.*, "Virus validation of a new polyvalent intravenous immunoglobulin (Octagam)" *Vox Sang.* 67:S2 (1994); Abstract 0726, Octagam EU Brochure (1995); Octagam Israeli Brochure (1994) ("the Biesert/Octagam EU/Octagam Israeli reference");

7.    Eriksson, *et al.* "Virus validation of plasma-derived products produced by Pharmacia, with particular reference to immunoglobulins," *Blood Coagulation and Fibrinolysis*, 5(3):  S37-44 (1994) ("the Eriksson reference");

8.     Venoglobulin-S product;

Yang, Y.H. *et al.*, "Antibody Fc Functional Activity of Intravenous

Immunoglobulin Preparations Treated with Solvent-Detergent for Virus

Inactivation," *Vox Sang*. 67:337-344;

Uemura, Y., *et al.*, "Inactivation and Elimination of Viruses during Preparation

of Human Intravenous Immunoglobulin *Vox Sang*. 67:246-254 (1994)

(together, "the Venoglobulin/Yang/Uemura reference");

9.     Hämäläinen *et. al.*, "Virus Inactivation during Intravenous Immunoglobulin

Production" *Vox Sang* 63:6-11 (1992) ("the Hämäläinen reference").

**Talecris' Objection to Baxter's Proposed Instruction 4.4.4:**

Talecris objects to this instruction in its entirety and requests that it not be given to the jury. It is inappropriate for the Court to instruct the jury on any contentions of parties - the jury is to be instructed on the law to apply to the facts. Such an instruction takes the fact finding function away from the jury and there is also a significant risk of the jury thinking that the Court somehow endorses or is advocating for Baxter's positions.

**4.5    OBVIOUSNESS (<u>DISPUTED</u>)**

<u>Baxter's Proposed Instruction 4.5:</u>

Obviousness is an additional and separate basis from anticipation for finding a patent claim invalid.  Unlike anticipation, obviousness may be shown by considering combinations of items of prior art.

In order to be patentable an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made.  The issue is not whether the claimed invention would be obvious to you as a layman, to me as a judge, or to a genius in the art, but whether it would have been obvious to a person of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of each asserted claim of the '191 patent, you should take the following steps:

1.    Determine the scope and content of the prior art relied upon by Baxter.

2.    Identify the differences, if any, between each asserted claim of the '191 patent and the prior art.

3.    Determine the level of ordinary skill in the pertinent art at the time the invention of the '191 patent was made.

4.    Consider objective factors of non-obviousness, which I will describe to you in detail later.

Against this background, you will then make your decision that the asserted claims would have been either obvious or non-obvious to a person of ordinary skill in the pertinent art.  A claim is obvious, even if it is an improvement over the prior art, if it is nothing more than a predictable use of a combination of prior art elements according to their established

79

functions.  One of the ways in which a patent's subject matter can be proved obvious is by

noting that there existed at the time of invention a known problem for which there was an

obvious solution encompassed by the patent's claims.

Authority:    35 U.S.C. § 103; Draft Uniform Jury Instructions For Patent Cases in the
              United States District of Delaware at 4.8 (2004) (modified); *KSR International
              Co. v. Teleflex Inc.*, No. 04-1350 (April 30, 2007), 550 U.S. ____ (2007),
              2007 U.S. LEXIS 4745, at *36 and 39-40 (April 30, 2007); *Pfizer, Inc. v.
              Apotex, Inc.*, 82 U.S.P.Q.2d 1321, 1333 (Fed. Cir. 2007); *Graham v. John
              Deere Co.*, 383 U.S. 1 (1966); *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d
              1286, 1289-90 (Fed. Cir. 2006); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714,
              716 (Fed. Cir. 1991); *Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 764
              (Fed. Cir. 1988); *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*,
              707 F.2d 1376 (Fed. Cir. 1983); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d
              1530 (Fed. Cir. 1983); AIPLA Guide To Jury Instructions in Patent Cases.

**<u>Talecris' Objection to Baxter's Proposed Instruction 4.5:</u>**

Talecris objects to this instruction in its entirety.  It is without legal support and contrary to current law.  Talecris' proposed instruction accurately states the law.  Further, it is inappropriate for the Court to instruct the jury on any contentions of parties - the jury is to be instructed on the law to apply to the facts.  Baxter contorts *KSR International Co. v. Teleflex Inc.*, No. 04-1350 (April 30, 2007), 550 U.S. ____ (2007).

**Talecris' Proposed Instruction 4.5:**

In order to be patentable, an invention must not be obvious to a person of ordinary skill in the art at the time the invention was made. The issue is not whether the claimed invention would be obvious to you as a layperson, to me as a judge, or to a genius in the art, but whether it would have been obvious to one of ordinary skill in the art at the time it was made.

In determining obviousness or non-obviousness of the claimed subject matter of the '191 patent, the following steps should be taken by you:

1.      Determine the scope and content of the prior art relied upon by Baxter;

2.      Identify the difference, if any, between each claim of the '191 patent and the prior art;

3.      Determine the level of ordinary skill in the pertinent art at the time the invention of the '191 patent was made;

4.      Consider objective factors of non-obviousness, which I will describe to you later in details.

In addition, the manner in which the invention was made is irrelevant. Against this background, you must then decide whether the claimed subject matter would have been either obvious or non-obvious to a person of ordinary skill in the pertinent art.


Authority:      Draft Uniform Jury Instructions for Patent Cases in the District of Delaware (2004) p.51 (modified); *see* 35 U.S.C. § 103.

82

**Baxter's Objection to Talecris' Proposed Instruction 4.5:**

Baxter objects to Talecris' proposed instruction as misleading and incomplete in view of recent developments in the law. The Supreme Court and the Federal Circuit have both issued recent rulings relating to obviousness under 35 U.S.C. § 103. *See KSR International Co. v. Teleflex Inc.*, No 04-1350 (April 30, 2007), 550 U.S. ____ (2007), 2007 U.S. LEXIS 4745, at *36 and 39-40 (April 30, 2007); *Leapfrog Enterprises, Inc. v. Fisher-Price, Inc.*, No. 06-1402 (Fed. Cir. May 9, 2007), 2007 U.S. App. LEXIS 10912 at *9-10 (Fed. Cir. May 9, 2007); *Pfizer Inc. v. Apotex, Inc.*, 82 U.S.P.Q.2d 1321,1333 (Fed. Cir. 2007). Baxter's proposed instruction properly reflects these recent rulings and therefore should be adopted. In contrast, Talecris' proposed instruction ignores this recent and binding law.

Baxter further objects to Talecris' proposed instruction that "the manner in which the invention was made is irrelevant" to obviousness as unsupported by legal authority, misleading and prejudicially incomplete. *See* Fed. R. Evid. 403.

**4.5.1   SCOPE AND CONTENT OF THE PRIOR ART (<u>STIPULATED</u>)**

In arriving at your decision on the issue of whether or not the claimed invention is obvious to one of ordinary skill in the art, you must first determine the scope and content of the prior art. This means you must determine what prior art is reasonably pertinent to the particular problem that the inventor faced. Prior art is reasonably pertinent if it is in the same field as the claimed invention or is from another field that a person of ordinary skill in the art would look to in trying to solve the problem Dr. Alonso was trying to solve. The prior art includes the following:

1.     Prior patents that issued before September 22, 1994;

2.     Prior publications having a publication date before September 22, 1994;

3.     U.S. patents that have a filing date prior to September 22, 1994;

4.     Anything in public use or on sale in the United States before September 22, 1994; and

5.     Anything that was publicly known in the United States or described in a printed publication in the United States or a foreign country before the invention date.

Authority:     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 4.8.1 (2004).

**4.5.2   BAXTER'S CONTENTIONS (OBVIOUSNESS) (<u>DISPUTED</u>)**

The prior art that you have considered previously for anticipation purposes is also prior art for obviousness purposes.  Additionally, the following references are also within the scope and content of the prior art and relevant to your determination of obviousness:

1.   U.S. Patent No. 4,396,608 (Tenold) ("the Tenold reference");

2.   Barandun, S. *et al.*, Intravenous Administration of Human y-Globulin, *Vox Sang.* 7:157-174 (1962) ("the Barandun reference");

3.   Wickerhauser, M. and Hao, Y., Large Scale Preparation of Macroglobulins, *Vox Sang.* 23:119-125 (1972) ("the Wickerhauser reference");

4.   Louie, *et al.*, Inactivation of Hepatitis C Virus in Low pH Intravenous Immunoglobulin, Biologicals 22:13-19 (1994) ("the Louie reference").

Authority:    35 U.S.C. §§ 102, 103; Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 4.8.1 (2004) (modified); *Graham v. John Deere Co.*, 383 U.S. 1 (1966); *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1356-57 (Fed. Cir. 2000); *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716-17 (Fed. Cir. 1991); *Stratoflex, Inc. v. Aeroquip Corgi*, 713 F.2d 1530 (Fed. Cir. 1983); AIPLA's Model Patent Jury Instructions (2005).

**Talecris' Objection to Baxter's Proposed Instruction 4.5.2:**

Talecris objects to this instruction in its entirety and requests that it not be given to the jury.  It is inappropriate for the Court to instruct the jury on any contentions of parties - the jury is to be instructed on the law to apply to the facts.  Such an instruction takes the fact finding function away from the jury and there is also a significant risk of the jury thinking that the Court somehow endorses or is advocating for Baxter's positions.

### 4.5.3   DIFFERENCES OVER THE PRIOR ART (<u>STIPULATED</u>)

You must next consider the differences, if any, between the prior art and the claimed invention.  Although it is proper for you to consider differences between the claimed invention and the prior art, you should not focus only on the differences, because the test is whether the claimed invention as a whole would have been obvious over all of the prior art.  Each claim must be considered in its entirety.

<u>Authority:</u>      Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 4.8.2 (2004).

### 4.5.4   LEVEL OF ORDINARY SKILL (<u>DISPUTED</u>)

**<u>Baxter's Proposed Instruction 4.5.4:</u>**

You have already been instructed on how to determine the level of ordinary skill in the art.  You must apply the same standard when reaching your determinations as to whether the asserted claims of the '191 patent are invalid for obviousness as you apply in your infringement determinations.  A person of ordinary skill is also a person of ordinary creativity, not an automaton.

<u>Authority</u>:        *KSR International Co. v. Teleflex Inc.*, No. 04-1350 (April 30, 2007), 550
               U.S. ____ (2007), 2007 U.S. LEXIS 4745, at *41 (April 30, 2007).

**Talecris' Objection to Baxter's Proposed Instruction 4.5.4:**

Talecris objects to this instruction in its entirety. Talecris' proposed instruction accurately states the law, and further, it is inappropriate for the Court to instruct the jury on any contentions of parties - the jury is to be instructed on the law to apply to the facts. Baxter's proposed instruction does not accurately reflect the holding of the Supreme Court in *KSR International Co. v. Teleflex Inc.*, No. 04-1350 (April 30, 2007), 550 U.S. ____ (2007).

89

**Talecris' Proposed Instruction 4.5.4:**

Next, you are to determine the level of ordinary skill in the art to which the claimed invention pertains at the time the claimed invention was made. Factors to be considered in determining the level of ordinary skill in the pertinent art include: the education level of the inventor; the types of problems encountered in the art; the prior art patents and publications; the activities of others and prior art solutions to the problems encountered by the inventor; the sophistication of the technology, and the education of others working in the field.

Authority:      Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at
                4.8.3 (2004).

**Baxter's Objection to Talecris' Proposed Instruction 4.5.4:**

Baxter objects to Talecris' proposed instruction as misleading and incomplete in view of recent developments in the law.  *See* Baxter's Objections to Talecris' Proposed Final Jury Instruction No. 4.5. The Supreme Court expressly stated that "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton."  *See KSR International Co. v. Teleflex Inc.*, No 04-1350 (April 30, 2007), 550 U.S. ____ (2007), 2007 U.S. LEXIS 4745, at *41 (April 30, 2007).  The Supreme Court held that the Federal Circuit's "teaching, suggestion, or motivation" test for combining prior art references is too narrowly applied if the ordinary creativity of a person of skill in the art is disregarded.  *Id.*  Talecris' refusal to include language to this effect could mislead the jury into applying the test too narrowly, to Baxter's prejudice, in violation of Federal Rule of Evidence 403.

**4.5.5   OBJECTIVE CRITERIA CONCERNING OBVIOUSNESS (<u>STIPULATED</u>)**

In making your decision as to obviousness or non-obviousness of the claimed invention, you must consider the following objective evidence which may tend to show non-obviousness of the asserted claims:

1.     Commercial success or lack of commercial success of products covered by the '191 patent;

2.     A long-felt and unsolved need in the art which was satisfied by the invention of the '191 patent;

3.     The failure of others to solve the problem addressed by the invention;

4.     Copying of the invention by others in the field;

5.     Unexpected results achieved by the invention;

6.     Praise of the invention by Baxter or others in the field;

7.     Expressions of disbelief or skepticism by those skilled in the art upon learning of the invention; and

8.     Whether the inventor proceeded in a direction contrary to the accepted wisdom of those skilled in the art.

However, there must be a connection between the evidence showing any of these factors and the asserted claims if this evidence is to be given any weight or significance when arriving at your conclusion on the obviousness issue. For example, if commercial success is due to advertising, promotion, market position, salesmanship or the like, or is due to qualities or features of the product other than those claimed in the '191 patent, then any commercial success may have no relation to the issue of obviousness.

92

Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 4.8.6 (2004).

### 4.5.6   MOTIVATION TO COMBINE (<u>DISPUTED</u>)

<u>**Baxter's Proposed Instruction 4.5.6:**</u>

References may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention.

A suggestion or motivation to combine prior art references may be express or implied. For example, a suggestion or motivation to combine or modify the teachings of prior art references may be derived from the prior art references themselves, from the knowledge a person of ordinary skill in the art, or from the nature of the problem to be solved. Any need or problem known in the field of endeavor at the time of invention and addressed by the patent may also provide a reason for combining the elements in the manner claimed. Alternatively, a combination of references can be suggested or motivated by reasons other than those contemplated by the inventor and still render an asserted claim obvious. Familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle. To determine whether there was an apparent reason to combine known elements in the prior art in the fashion claimed by the patent at issue you may consider the interrelated teachings of multiple patents, the effects of demands known to the community or present in the marketplace and the background knowledge possessed by a person of ordinary skill in the art.

94

Authority:    Draft Uniform Jury Instructions For Patent Cases in the United States District
of Delaware at 4.8.4, 4.8.5 (2004) (modified); *KSR International Co. v.
Teleflex Inc.*, No. 04-1350 (April 30, 2007), 550 U.S. ____ (2007), 2007 U.S.
LEXIS 4745, at *12, *36, 39-41 and 43 (April 30, 2007); *Pfizer, Inc. v.
Apotex, Inc.*, 82 U.S.P.Q.2d 1321, 1331, 1333 (Fed. Cir. 2007); *Medichem,
S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1164 (Fed. Cir. 2006); *Alza Corp. v.
Mylan Labs., Inc.*, 464 F.3d 1286, 1289-95 (Fed. Cir. 2006); *Ruiz v. A.B.
Chance Co.*, 357 F.3d 1270, 1275 (Fed. Cir. 2004); *SIBIA Neurosciences, Inc.
v. Cadus Pharm. Corp.*, 225 F.3d 1349 (Fed. Cir. 2000); *Orthopedic Equip.
Co. v. United States,* 702 F.2d 1005 (Fed. Cir. 1983); *In re Beattie*, 974 F.2d
1309, 1312 (Fed. Cir. 1992); *Para-Ordnance Mfg., Inc. v. SGS Importers
Int'l, Inc.*, 73 F.3d 1085 (Fed. Cir. 1999); *Ruiz v. A.B. Chance Co.*, 357 F.3d
1270, 1275 (Fed. Cir. 2004); *Dystar Textilfarben GmbH v. C.H. Patrick Co.*,
464 F.3d 1356, 1369 (Fed. Cir. 2006); *In re Carlson*, 983 F.2d 1032, 1038
(Fed. Cir. 1992); *In re Hall*, 781 F.2d 897 (Fed. Cir. 1986).

**Talecris' Objection to Baxter's Proposed Instruction 4.5.6:**

Talecris objects to Baxter's proposed instruction as argumentative, misleading, and biased, to Talecris' prejudice.  Baxter's proposed instruction does not accurately reflect the holding of the Supreme Court in *KSR International Co. v. Teleflex Inc.*, No. 04-1350 (April 30, 2007), 550 U.S. ____ (2007).

**Talecris' Proposed Instruction 4.5.6:**

Once the prior art is assembled and considered, you should determine whether the prior art, considered as a whole, suggests the claimed invention. Prior art references may be combined to show obviousness if there is some motivation or suggestion to combine the references and if the combination would be reasonably likely to achieve the goal of the invention. Both the suggestion or motivation to combine and the expectation of success must be found in the prior art and for the same purpose.

Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 4.8.4 (2004)(modified); *Leapfrog Enters. v. Fisher-Price, Inc.*, 03-927-GMS (D. Del. March 30, 2006); Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc., 98-80-SLR (D. Del. March 29, 2007); *Forest Labs. Inc. v. Ivax Pharms. Inc.*, 03-891-JJF (D. Del. July 13, 2006); *Boston Sci. Scimed, Inc. v. Cordis Corp.*, 03-283-SLR (D. Del. June 16, 2006).

**Baxter's Objection to Talecris' Proposed Instruction 4.5.6:**

Baxter objects to Talecris' proposed instruction as misleading and incomplete in view of recent developments in the law. *See* Baxter's Objections to Talecris' Proposed Final Jury Instruction No. 4.5. These recent cases (in particular, *KSR International Co. v. Teleflex Inc.*, No. 04-1350 (April 30, 2007), 550 U.S. ____ (2007), 2007 U.S. LEXIS 4745 (April 30, 2007)) contain teachings critical to proper determination of the presence of a motivation to combine and omission of these teachings could bias the jury in favor of a finding of nonobviousness, to Baxter's prejudice in violation of Federal Rule of Evidence 403.

Baxter further objects that Talecris' proposed instruction contradicts the current state of the law. Talecris' proposed instruction incorrectly states that the suggestion or motivation to combine must be found in the prior art and for the same purpose. Talecris has cited no legal authority for its modifications and, indeed, Talecris' proposed instruction is contrary to the law. Federal Circuit law makes abundantly clear that motivation to combine need not be for the same purpose. *National Steel Car v. Canadian Pac. Railway*, 357 F.3d 1319, 1339 (Fed. Cir. 2004); *Pfaff v. Wells*, 124 F.3d 1429, 1439 (Fed. Cir. 1997). Talecris' proposed language further fails to inform the jury that the motivation to combine references can be express or implied. *See, e.g., Alza Corp. v. Mylan Labs, Inc.*, 464 F.3d 1286, 1289-95 (Fed. Cir. 2006); *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276 (Fed. Cir. 2004).

Baxter further objects that Talecris' proposed instruction fails to inform the jury that the motivation to combine may come from the knowledge of one of ordinary skill in the art or from the nature of the problem to be solved. *Dystar Textilfarben GmbH v. C.H. Patrick Co.*,

464 F.3d 1356, 1369 (Fed. Cir. 2006); *Ruiz v. A.B. Chance Co.*, 357 F.3d 1270, 1276, 1289-

90 (Fed. Cir. 2004).

### 4.5.7  OBVIOUSNESS - HINDSIGHT (<u>STIPULATED</u>)

A person of ordinary skill in the art is presumed to have knowledge of the relevant prior art at the time of the patentee's invention.  If you find the available prior art shows each of the elements of the asserted claims, you must determine whether it would have been obvious to a person of ordinary skill in the art to combine or coordinate these elements in the same manner as the asserted claims.

You must resist the temptation to rely on hindsight while undertaking this evaluation.  It is improper to use the '191 patent as a roadmap through the prior art references, combining the right references in the right way so as to achieve the result of the asserted claims.  Rather, you must cast your mind back to the time of the invention and consider only the thinking of one of ordinary skill in the art, guided only by the prior art and what was known in the field.

<u>Authority:</u>    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 4.8.5 (2004) (modified).

## 4.5.8   OBVIOUS TO TRY (<u>DISPUTED</u>)

<u>Baxter's Proposed Instruction 4.5.8:</u>

The evidence might indicate to you that what the inventors did was obvious to try.  If so, this does not indicate the '191 patent is invalid for obviousness.  "Obvious to try" is not the standard, rather it is whether the invention as a whole would have been obvious to a person of ordinary skill in the inventor's field at the time he made his invention.

However, when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions, a person of ordinary skill has good reason to pursue the known options.  If this leads to success, it is likely the product not of innovation but of ordinary skill and common sense.  In this instance, the fact that a combination was "obvious to try" may demonstrate obviousness.


Authority:     Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 4.8.7 (2004) (modified); *KSR International Co. v. Teleflex Inc.*, No. 04-1350 (April 30, 2007), 550 U.S. ____ (2007), 2007 U.S. LEXIS 4745, at *41-42 (April 30, 2007).

**Talecris' Objection to Baxter's Proposed Instruction 4.5.8:**

 Baxter's proposed instruction is misleading and inaccurate.  It elevates *dicta* from *KSR International Co. v. Teleflex Inc.*, No. 04-1350 (April 30, 2007), 550 U.S. ____ (2007) into binding statements of law and purports to apply the same as universal principles, applicable to all types of inventions, prior art, and technological context.  *KSR* has little application to this case.

**Talecris' Proposed Instruction 4.5.8:**

The evidence might indicate to you that what the inventor did was obvious to try. If so, this does not indicate the '191 patent is invalid for obviousness. "Obvious to try" is not the standard; rather, it is whether the invention as a whole would have been obvious to those of ordinary skill in the pertinent art at the time he or she made the invention.


Authority:     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 4.8.7 (2004).

**Baxter's Objection to Talecris' Proposed Instruction 4.5.8:**

Baxter objects to Talecris' proposed instruction as misleading and incomplete in view of recent developments in the law. *See* Baxter's Objections to Talecris' Proposed Final Jury Instruction No. 4.5. The Supreme Court has ruled that constricted analysis under the "obvious to try" rule may improperly deny recourse to common sense and the ordinary creativity of a person of skill in the art, particularly in situations where there is a need to solve a problem and a finite number of identified, predictable solutions. *See KSR International Co. v. Teleflex Inc.*, No. 04-1350 (April 30, 2007), 550 U.S. ____ (2007), 2007 U.S. LEXIS 4745, at *41 (April 30, 2007). Talecris' proposed instruction is wholly one-sided and could bias the jury against a finding of obviousness. Talecris' refusal to include balanced language in this instruction could mislead the jury into applying this instruction too narrowly, in violation of Federal Rule of Evidence 403.

### 4.5.9   INDEPENDENT INVENTION BY OTHERS (<u>BAXTER'S PROPOSED INSTRUCTION</u>)

In reaching your determination on the issue of obviousness, you should consider whether the subject matter of the '191 patent was also invented independently by other persons, either before the inventor of the '191 patent or at about the same time.  Just as the failure of others to make the invention can be evidence of non-obviousness, independent making of the invention by a person other than the inventor prior to or about the same time can be evidence that the invention would have been obvious.

The simultaneous or near simultaneous invention by two or more people working independently may or may not be an indication of obviousness when considered in light of all the circumstances.

Authority:     Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 3.3 (Mar. 1993), available at http://www.ded.uscourts.gov/JuryMain.htm (Rev. 3/24/2006), (modified); *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1379 (Fed. Cir. 2000); *In re Farrenkopf*, 713 F.2d 714 (Fed. Cir. 1983); *Orthopedic Equip. Co. v. United States*, 702 F.2d 1005 (Fed. Cir. 1983); ABA's Section of Patent, Trademark and Copyright Law (1987); AIPLA's Model Patent Jury Instructions (2005).

**Talecris' Objection to Baxter's Proposed Instruction 4.5.9**

Talecris objects to Baxter's proposed instruction in its entirety because "independent invention by others" has never been asserted by Baxter and the instruction is thus irrelevant. The instruction is highly likely to cause confusion because there is no evidence in the record regarding independent invention by others.  This proposed instruction is therefore highly prejudicial to Talecris.

### 4.5.10  BAXTER'S CONTENTIONS (<u>BAXTER'S PROPOSED INSTRUCTION</u>)

Baxter contends that each asserted claim of the '191 patent is obvious in view of the prior art.

Baxter contends that Claims 1, 8 through 10, 12, and 15 through 20 are obvious in view of at least:

1.   The Tsay reference in combination with the Ng reference;

2.   The Gehringer reference in combination with the Louie reference and/or the Ng reference;

3.   The Ng reference in combination with the Wickerhauser reference and/or the Tsay reference;

4.   The Prince reference in combination with the Tsay reference and/or the Tenold reference;

5.   The Piet reference in combination with the Tsay reference, the Wickerhauser reference and/or the Louie reference;

6.   The Eriksson reference in combination with the Tsay reference, the Ng reference and/or the Barandun reference;

7.   The Biesert/Octagam EU/Octagam Israeli reference in combination with the Barandun reference, the Louie reference, the Tenold reference and/or the Hämäläinen reference;

8.   The Venoglobulin/Yang/Uemura reference in combination with the Barandun reference; and/or

107

9.      The Hämäläinen reference in combination with the Louie reference and/or the
        Tenold reference.

Baxter also contends that Claim 7 is obvious in view of at least:

1.      The Tsay reference in combination with the Ng reference, the Louie reference,
        the Hämäläinen reference and/or the Barandun reference;

2.      The Gehringer reference in combination with the Ng reference, the Louie
        reference and/or the Barandun reference;

3.      The Ng reference in combination with the Louie reference and/or the Barandun
        reference;

4.      The Prince reference in combination with the Louie reference and/or the
        Barandun reference;

5.      The Piet reference in combination with the Louie reference and/or the
        Barandun reference;

6.      The Eriksson reference in combination with the Louie reference and/or the
        Barandun reference;

7.      The Biesert/Octagam EU/Octagam Israeli reference in combination with the
        Louie reference and/or the Barandun reference; and/or

8.      The Venoglobulin/Yang/Uemura reference in combination with the Louie
        reference and/or the Barandun reference.

**Talecris' Objection to Baxter's Proposed Instruction 4.5.10:**

Talecris objects to this instruction in its entirety and requests that it not be given to the jury. It is inappropriate for the Court to instruct the jury on any contentions of parties - the jury is to be instructed on the law to apply to the facts. Such an instruction takes the fact finding function away from the jury and there is also a significant risk of the jury thinking that the Court somehow endorses or is advocating for Baxter's positions.

5       **UNENFORCEABILITY (BAXTER'S PROPOSED INSTRUCTION)**

**Talecris' Objection to Baxter's Proposed Instruction 5:**

Talecris objects to each proposed instruction in this section, and to this section in its entirety, for the following reasons: (1) the proposed instructions are entirely irrelevant to any claim or issue in the case.   Baxter has no viable inequitable conduct claim, as its motion for leave to amend is *sub judice*, and Talecris has opposed the motion; (2) inequitable conduct is an equitable consideration for the Court, not the jury; (3) if Baxter's motion is granted, Talecris reserves the right to move to bifurcate; (4) Talecris was not in a position to meaningfully negotiate or discuss any of Baxter's proposed jury instructions on unenforceability at the time the pretrial submissions were due, as Talecris was without knowledge of the contours of Baxter's alleged inequitable conduct claim (*see, e.g.*, Fed. R. Civ. P. 9); and (5) Talecris reserves the right to further negotiate any proposed language pertaining to inequitable conduct, and hereby preserves all of its objections thereto, given that the claim is currently not in the case.

**5.1     INEQUITABLE CONDUCT (<u>BAXTER'S PROPOSED INSTRUCTION</u>)**

Every applicant for a patent has a duty of candor, good faith, and honesty in its

dealings with the Patent Office and the examiner handling the application.  This duty of candor

is important because the examiner has only limited information available to determine the state

of the art.  The time available to the examiner is also limited.  Therefore, to prevent an

applicant from obtaining a patent he does not deserve, the Patent Office requires full

disclosure to the Patent Office of all information which is material to examination of the

application.

This means that the applicant and his attorneys must not intentionally withhold or

misrepresent material information concerning the claimed invention.  Each individual with

such a duty must disclose all material information known to that individual.  If information

presents a close question as to materiality, the information should be disclosed to the

examiner, allowing him the opportunity to agree or disagree with the inventor's position.  A

breach of this duty is called inequitable conduct and renders the '191 patent unenforceable as

a whole.

To prove inequitable conduct, Baxter must show by clear and convincing evidence that

the applicant or his attorneys, with intent to mislead or deceive, withheld or misrepresented

information that was material to the examiner's evaluation of the patent application.


<u>Authority</u>:     Draft Uniform Jury Instructions For Patent Cases in the United States District
                     of Delaware at 5.1 (Mar. 1993), available at
                     http://www.ded.uscourts.gov/JuryMain.htm (Rev. 3/24/2006), (modified);
                     *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed.
                     Cir. 2003); *Brasseler, U.S.A .I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370,

1375-76, 1380, 1386 (Fed. Cir. 2001); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001); *Semiconductor Energy Lab. Co., Ltd. V. Samsung Elec. Co., Ltd.*, 204 F.3d 1368, 1373 (Fed. Cir. 2000); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).

**Talecris' Objection to Baxter's Proposed Instruction 5.1:**

Talecris objects to each proposed instruction in this section, and to this section in its entirety, for the following reasons: (1) the proposed instructions are entirely irrelevant to any claim or issue in the case.   Baxter has no viable inequitable conduct claim, as its motion for leave to amend is *sub judice*, and Talecris has opposed the motion; (2) inequitable conduct is an equitable consideration for the Court, not the jury; (3) if Baxter's motion is granted, Talecris reserves the right to move to bifurcate; (4) Talecris was not in a position to meaningfully negotiate or discuss any of Baxter's proposed jury instructions on unenforceability at the time the pretrial submissions were due, as Talecris was without knowledge of the contours of Baxter's alleged inequitable conduct claim (*see, e.g.*, Fed. R. Civ. P. 9); and (5) Talecris reserves the right to further negotiate any proposed language pertaining to inequitable conduct, and hereby preserves all of its objections thereto, given that the claim is currently not in the case.

**5.2    MATERIALITY (<u>BAXTER'S PROPOSED INSTRUCTION</u>)**

In evaluating an allegation that the applicant was guilty of inequitable conduct before the Patent Office, you must first determine whether there was any withholding or misrepresentation of information at all and, if so, whether the information withheld or misrepresented was indeed material.  Information is not material if it is cumulative or adds little information to what the examiner already knew.  In order for the information withheld or misrepresented to be material, there must be a substantial likelihood that a reasonable examiner would have considered it important in deciding whether to issue the '191 patent. Information is material if there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent. Information is also material if it refutes or is inconsistent with the information provided or arguments made by the applicant to persuade the examiner that the application was entitled to patent protection.

Material information is not limited to prior art.  It includes any information the examiner would consider important in evaluating the patentability of the claimed invention.  If a reference presents a close question as to materiality, the reference should be disclosed to the examiner to allow him the opportunity to agree or disagree with the inventor's position.

If you determine that there was a withholding or misrepresentation of information and that the information was material, then you must consider the element of intent.  If, on the other hand, you find that Baxter has failed to prove by clear and convincing evidence that the applicant or his attorneys withheld or misrepresented any material information, then you must find that there was no inequitable conduct.

Baxter contends that Dr. Alonso withheld information relating to two of his experiments from the Patent Office during prosecution, even as he knew them to be material to patentability:

1.  an experiment relating to solvent/detergent treatment at a pH level of 5.8 conducted on or before August 11, 1995, and submitted to the FDA as part of its PLA submissions for its Gamimune® N solvent/detergent treated product;

2.  an experiment relating to solvent/detergent treatment employing Tween 80 as a detergent, conducted on or before January 1993.

Baxter contends that Dr. Alonso also withheld information relating to Gamimune® N, an immunoglobulin product which provided the starting point for Dr. Alonso's development of his solvent/detergent treatment process.

Baxter further contends that Mr. Giblin withheld the '771 patent, for which he was also the patent attorney, from the examiner during the prosecution of the '191 patent.

Baxter further contends that Mr. Giblin, Dr. Alonso, or both of them withheld the Ng reference from the examiner during prosecution of the '191 patent. Dr. Alonso knew of Ng's work, and Mr. Giblin previously was a patent attorney for patents listing Ng as an inventor.

Authority:    37 C.F.R. § 1.56 (2003); Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 5.2 (Mar. 1993), available at http://www.ded.uscourts.gov/JuryMain.htm (Rev. 3/24/2006), (modified); *Pharmacia Corp. v. Par Pharm.*, 417 F.3d 1369-1373 (Fed. Cir. 2005); *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358 (Fed. Cir. 2003); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226 (Fed. Cir. 2003); *Brasseler, U.S.A .I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1375-76, 1380 (Fed. Cir. 2001); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274 (Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech,*

*Inc.*, 225 F.3d 1315 (Fed. Cir. 2000); *Semiconductor Energy Lab. Co., Ltd. V. Samsung Elec. Co., Ltd.*, 204 F.3d 1368, 1373 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).

**Talecris' Objection to Baxter's Proposed Instruction 5.2:**

Talecris objects to each proposed instruction in this section, and to this section in its entirety, for the following reasons: (1) the proposed instructions are entirely irrelevant to any claim or issue in the case.   Baxter has no viable inequitable conduct claim, as its motion for leave to amend is *sub judice*, and Talecris has opposed the motion; (2) inequitable conduct is an equitable consideration for the Court, not the jury; (3) if Baxter's motion is granted, Talecris reserves the right to move to bifurcate; (4) Talecris was not in a position to meaningfully negotiate or discuss any of Baxter's proposed jury instructions on unenforceability at the time the pretrial submissions were due, as Talecris was without knowledge of the contours of Baxter's alleged inequitable conduct claim (*see, e.g.*, Fed. R. Civ. P. 9); and (5) Talecris reserves the right to further negotiate any proposed language pertaining to inequitable conduct, and hereby preserves all of its objections thereto, given that the claim is currently not in the case.

**5.3     INTENT (<u>BAXTER'S PROPOSED INSTRUCTION</u>)**

Baxter must prove, by clear and convincing evidence, that Dr. Alonso or Mr. Giblin withheld or misrepresented material information with the intent to mislead or deceive the patent examiner. While intent to deceive cannot be inferred from negligence, oversight, carelessness, or erroneous judgment alone, related facts may nevertheless have bearing on the totality of the circumstances.

Intent need not be proved directly because there is no way of scrutinizing the operations of the human mind. Therefore, you may infer intent from conduct, meaning that you may conclude that an individual intends the foreseeable results of his actions. Any such inference depends upon the totality of the circumstances, including the facts and circumstances, the nature and level of culpability of the conduct, and the absence or presence of affirmative evidence of good faith. Intent may be inferred when the inventor or his attorneys make an argument for patentability that could not have been made alongside the omitted information, withholds information relating to issues repeatedly raised during examination, or selectively withholds information from the Patent Office while disclosing that same information to the FDA. Intent may also be inferred from attorneys' deviations from normal or standard practice during prosecution.

<u>Authority</u>:     Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 5.3 (Mar. 1993), available at http://www.ded.uscourts.gov/JuryMain.htm (Rev. 3/24/2006), (modified); *Cargill, Inc. v. Canbra Foods, Ltd.*, 2007 U.S. App. LEXIS 3222 (Fed. Cir. Feb. 14, 2007); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1239 (Fed. Cir. 2003); *Brasseler, U.S.A .I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1375-76, 1386 (Fed. Cir. 2001); *GFI, Inc. v. Franklin*

*Corp.*, 265 F.3d 1268, 1274-75 (Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315 (Fed. Cir. 2000); *Elk Corp. of Dallas v. GAF Building Materials Corp.*, 168 F.3d 28 (Fed. Cir. 1999); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997); *Merck & Co. v. Danbury Pharmacal*, 873 F.2d 1418, 1422 (Fed. Cir. 1989).

**Talecris' Objection to Baxter's Proposed Instruction 5.3:**

Talecris objects to each proposed instruction in this section, and to this section in its entirety, for the following reasons: (1) the proposed instructions are entirely irrelevant to any claim or issue in the case.   Baxter has no viable inequitable conduct claim, as its motion for leave to amend is *sub judice*, and Talecris has opposed the motion; (2) inequitable conduct is an equitable consideration for the Court, not the jury; (3) if Baxter's motion is granted, Talecris reserves the right to move to bifurcate; (4) Talecris was not in a position to meaningfully negotiate or discuss any of Baxter's proposed jury instructions on unenforceability at the time the pretrial submissions were due, as Talecris was without knowledge of the contours of Baxter's alleged inequitable conduct claim (*see, e.g.*, Fed. R. Civ. P. 9); and (5) Talecris reserves the right to further negotiate any proposed language pertaining to inequitable conduct, and hereby preserves all of its objections thereto, given that the claim is currently not in the case.

## 5.4    BALANCING (<u>BAXTER'S PROPOSED INSTRUCTION</u>)

You must determine whether the withheld information or misrepresentation satisfies a threshold level of materiality.  You must also determine whether the conduct of Dr. Alonso or Mr. Giblin satisfies a threshold showing of intent to mislead.  Assuming satisfaction of the thresholds, materiality and intent must be balanced.

The more material the withheld or misrepresented information is, the less stringent is the requirement to prove intent by clear and convincing evidence.  In other words, withholding or misrepresentation of a highly material piece of information requires a lower level of proven intent, thereby allowing you to infer intent.  You must be the judge of this balance.

If you find that Baxter has proved by clear and convincing evidence that there was a material withholding or a material misrepresentation of information and that Dr. Alonso or Mr. Giblin acted with intent to deceive the examiner, then you must balance these two factors to determine whether or not, in your view, there was inequitable conduct.

<u>Authority</u>:    Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 5.4 (Mar. 1993), available at http://www.ded.uscourts.gov/JuryMain.htm (Rev. 3/24/2006), (modified); *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, 326 F.3d 1226, 1234 (Fed. Cir. 2003); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274-75 (Fed. Cir. 2001); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1319 (Fed. Cir. 2000); *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321 (Fed. Cir. 1998); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253 (Fed. Cir. 1997).

**Talecris' Objection to Baxter's Proposed Instruction 5.4:**

Talecris objects to each proposed instruction in this section, and to this section in its entirety, for the following reasons: (1) the proposed instructions are entirely irrelevant to any claim or issue in the case.   Baxter has no viable inequitable conduct claim, as its motion for leave to amend is *sub judice*, and Talecris has opposed the motion; (2) inequitable conduct is an equitable consideration for the Court, not the jury; (3) if Baxter's motion is granted, Talecris reserves the right to move to bifurcate; (4) Talecris was not in a position to meaningfully negotiate or discuss any of Baxter's proposed jury instructions on unenforceability at the time the pretrial submissions were due, as Talecris was without knowledge of the contours of Baxter's alleged inequitable conduct claim (*see, e.g.*, Fed. R. Civ. P. 9); and (5) Talecris reserves the right to further negotiate any proposed language pertaining to inequitable conduct, and hereby preserves all of its objections thereto, given that the claim is currently not in the case.

## 6    DAMAGES

## 6.1    GENERALLY (<u>DISPUTED</u>)

If, after considering all of the evidence and the law as I have stated it, you have determined either that: (1) no asserted claim is infringed by Baxter; or (2) clear and convincing evidence shows that any infringed claim is invalid **[or unenforceable][12]**, then your verdict should be for Baxter and you need go no further in your deliberations.  If at least one asserted claim is infringed and is not invalid **[or unenforceable][13]**, you should then turn to the issue of damages.

Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 5.1 (2004).

---

[12]**Talecris objects for the following reasons: (1)  Baxter has no claim for inequitable conduct in this case, as it is the subject of a pending motion for leave to amend, which Talecris has opposed; (2) inequitable conduct is an equitable consideration for the Court, not the jury; (3)  if Baxter's motion is granted, Talecris reserves the right to move to bifurcate; and (4) Talecris reserves its right to negotiate the substance of any of Baxter's proposed language pertaining to inequitable conduct, and hereby preserves all of its objections thereto, given that the claim is currently not in the case.**
[13]*See* **footnote 38.**

**6.2    COMPENSATORY DAMAGES IN GENERAL (<u>DISPUTED</u>)**

**<u>Talecris' Proposed Instruction 6.2:</u>**

The patents law provide that in the case of infringement of a valid patent claim, the licensee shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

It is not relevant to the question of damages whether Baxter benefitted from, realized profits, or even lost money as a result of the acts of infringement.  It is also not relevant if Baxter did not foresee that it would cause Talecris damage at the time that it infringed the asserted claims.  The only issue is the amount necessary to adequately compensate Talecris for Baxter's infringement.  Adequate compensation should return Talecris to the position it would have occupied had there been no infringement.

<u>Authority:</u>      Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 5.2 (2004) (modified).

124

**Baxter's Objection to Talecris' Proposed Instruction 6.2:**

Baxter objects to the first two sentences in the second paragraph of Talecris' proposed instruction because it includes instructions for which there is no evidentiary foundation and thereby invites the jury to speculate on irrelevant issues. *See Kovoor v. Sch. Dist. of Philadelphia*, 93 Fed. Appx. 356, 359 (3d Cir. Feb. 26, 2004); *United States v. Scout*, 112 F.3d 955, 961 (8th Cir. 1997). These sentences are unnecessary and confuse the issues to be found by the jury on damages in violation of Federal Rule of Evidence 403.

Moreover, Baxter objects to this instruction because it does not fairly and adequately reflect the issues that will be presented to the jury on compensatory damages. Talecris' proposed instruction fails to acknowledge that it is not seeking lost profits. Rather, Talecris' proposed instruction 6.7 addresses lost profits solely in the context of reasonable royalty. (*See* Baxter's objections to Talecris proposed instruction 6.7.) Thus, to avoid jury confusion, the jury should be instructed that there are two types of damages, lost profits and reasonable royalty, and that Talecris is not seeking lost profits.

**Baxter's Proposed Instruction 6.2:**

If, after considering all of the evidence and the law as I have stated it, you are convinced that the patent is not infringed or is invalid or unenforceable, your verdict must be for Baxter and you need go no further in your deliberations. On the other hand, if you decide that one or more of the asserted claims of the '191 patent is infringed, and that all asserted claims are not invalid and the '191 patent is not unenforceable, then you must turn to the issue of damages.

The patent laws provide that in the case of infringement of a valid patent claim, the owner of the patent shall be awarded damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer. Damages are compensation for all losses suffered as a result of the infringement.

There are two common but alternative methods for computing damages in a patent infringement case. One is called "lost profits" damages and the other is called "reasonable royalty" damages. In this case, Talecris is not seeking lost profits. Thus, the only issue is the amount proven to adequately compensate Talecris for Baxter's infringement based on a reasonable royalty. Adequate compensation should return Plaintiff to the position it would have occupied had there been no infringement.

Authority:    Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 5.1, 5.2, 5.5 (2004) (modified); 35 U.S.C. § 284 (2004); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964); *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-1109 (Fed.

126

Cir. 1996); *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993); *Fromson v. W. Litho Plate & Supply Co.,* 853 F.2d 1568, 1574 (Fed. Cir. 1988).

**Talecris' Objection to Baxter's Proposed Instruction 6.2:**

Talecris objects to Baxter's proposed instruction because it is misleading and confusing.  Baxter's instruction states that Talecris is not asserting lost profits, but this is likely to be confusing to a jury because lost profits is a consideration in Talecris' Proposed Instruction 6.7 (Hypothetical Negotiation - Infringement Continues).  Talecris' Proposed Instruction 6.2 accurately states the law, and Talecris' Proposed Instruction 6.5 makes this clear.

**6.3     BURDEN OF PROOF (<u>DISPUTED</u>)**

  Talecris has the burden of proving damages by what is called a preponderance of the evidence and is entitled to all damages that can be proven with "reasonable certainty."  On the one hand, reasonable certainty does not require proof of damages with mathematical precision.  Mere difficulty in ascertaining damages is not fatal to Talecris' right to recover.  On the other hand, Talecris is not entitled to speculative damages; that is, you should not award any amount of loss that, although possible, is wholly remote or the result of mere conjecture.  You may base your evaluation of reasonable certainty on opinion evidence. **[Any doubts regarding the computation of the amount of damages should be resolved against Baxter and in favor of Talecris.][14]**

<u>Authority:</u>  Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 5.3 (2004).

---

[14]**Baxter objects to this sentence as misleading, prejudicial, and biased in favor of the patentee in violation of Federal Rule of Evidence 403.  This sentence at the end of this instruction could unfairly bias the jury towards finding damages should there be any doubt, to Baxter's prejudice.**

**6.4    DATE DAMAGES MAY BEGIN (<u>STIPULATED</u>)**

In this case, if you find infringement of a valid claim, you should begin calculating

damages as of September 26, 2005.

<u>Authority:</u>    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at
5.4 (2004) (modified).

**6.5    REASONABLE ROYALTY AS A MEASURE OF DAMAGES (<u>DISPUTED</u>)**

<u>**Talecris' Proposed Instruction 6.5:**</u>

In this case, Talecris is seeking damages in the amount of a reasonable royalty. A reasonable royalty is an amount of money that someone pays a patentee to be able to use the patented invention.

A reasonable royalty is the minimum permissible measure of damages set by the patent law and is not necessarily the actual measure of damages, but is merely the floor below which damages may not fall. Accordingly, you may find damages in excess of a reasonable royalty if you find that the facts so warrant, but you may not award less than a reasonable royalty.

A reasonable royalty is the amount of money that would be agreed to in a hypothetical arm's-length negotiation between Talecris and Baxter, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused process and product.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would begin, which in this case would be the September 26, 2005 time period.

In the hypothetical arm's-length negotiation, you must assume that both parties are willing participants. You must assume that the person negotiating on behalf of Baxter was willing to take a license and would have known that the asserted claims were valid, enforceable, and infringed by Baxter. You must also assume that Talecris would have been willing to grant a license. Further, you must assume that the parties would have contemplated two situations: (1) Baxter was willing to take a license and cease infringement; or (2) Baxter was willing to take a license but would continue to infringe in the absence of a license.

Finally, you must assume that both Talecris and Baxter knew all pertinent information at the time of the hypothetical negotiation.

Having that in mind, you may consider events after the date the infringement began and any other relevant fact as a basis for determining the reasonable royalty for Baxter's use of the patented invention, including the opinion testimony of experts.

Authority:     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware (2004) p.76 (modified); *Ebay Inc. v. Mercexchange, LLC*, 126 S.Ct. 1837 (2006); *Praxair, Inc. v. ATMI, Inc.*, 2007 U.S. Dist. LEXIS 21589 (D. Del. Mar. 27, 2007); *St. Clair Intellectual Property Consultants, Inc. v. Canon, Inc.*, 2004 U.S. Dist. 19475 (D. Del. Sep. 28, 2004).

**Baxter's Objection to Talecris' Proposed Instruction 6.5:**

Baxter objects to Talecris' proposed instruction in entirety as cumulative, misleading and prejudicial to Baxter in violation of Federal Rule of Evidence 403.  Talecris proposes three instructions on reasonable royalty  thereby placing undue emphasis on the patentee's putative right to damages.  This needless repetition would unfairly bias the jury toward awarding damages without actual proof.  Moreover, Baxter objects to this instruction because it fails to instruct the jury that Talecris is not seeking lost profits in this case even if it may discuss lost profits in the context of reasonable royalty.  *See also* Baxter's Objections to Talecris' Proposed Final Jury Instruction No. 6.7.  Baxter offers as an alternative its proposed jury instruction which fairly and accurately states the law and guides the jury to avoid jury confusion.

**Baxter's Proposed Instruction 6.5:**

In this case, Talecris is seeking damages based upon a reasonable royalty and admits it is not entitled to lost profits. The patent law specifically provides that the amount of damages that defendants must pay for infringing a patent may not be less than a reasonable royalty. Talecris is entitled to a reasonable royalty for all infringing sales in the United States.

A reasonable royalty in this case is the amount of money that would be agreed to in a hypothetical arms length negotiation between Talecris and Baxter, with both operating under the assumption that the negotiated patent is valid and would be infringed by the accused process. In addition, you must assume that the person negotiating on behalf of Talecris would have been willing to grant a license and the person negotiating on behalf of Baxter would have been willing to take a license. In considering the nature of the negotiation, the focus is on what expectations Talecris and Baxter would have had had they entered into an agreement and acted reasonably in their negotiations.

The reasonable royalty must be calculated as of the point in time just prior to when infringement would have begun. Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the patented invention, including the opinion testimony of experts.

<u>Authority:</u>    Draft Uniform Jury Instructions For Patent Cases in the United States District of Delaware at 5.14 (2004) (modified); 35 U.S.C. Section 284; *Golight, Inc., v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446, 1448 (Fed. Cir. 1990); *State Indus., Inc. v. Mor-Flo*

134

*Indus., Inc.*, 883 F.2d 1573, 1581 (Fed. Cir. 1989); *Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1575-76 (Fed. Cir. 1988); *Studiengesellschaft Kohle, mbH v. Dart Indus.*, Inc., 862 F.2d 1564, 1571-72 (Fed. Cir. 1988).

**<u>Talecris' Objection to Baxter's Proposed Instruction 6.5:</u>**

Talecris objects to Baxter's proposed instruction because it ignores the Supreme Court's decision in *Ebay Inc. v. Mercexchange, LLC*, 126 S.Ct. 1837 (2006). Talecris' Proposed Instruction 6.5 more accurately states the law *post-eBay* by taking into consideration a situation where the infringer was willing to take a license and cease infringement and a situation where the infringer was willing to take a license but would continue to infringe in the absence of a license.

**6.6    HYPOTHETICAL NEGOTIATION - INFRINGEMENT CEASES (TALECRIS' PROPOSED INSTRUCTION)**

Assuming during the hypothetical negotiation that the parties would have contemplated that Baxter would be willing to take a license, you may consider evidence on any of the following factors in determining the amount of a reasonable royalty:

1.    The rates paid by Talecris, Baxter, or others for the use of other patents comparable to the '191 patent;

2.    The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of territory, or with respect to whom the manufactured product may be sold;

3.    The commercial relationship between Talecris and Baxter, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventors or promoters;

4.    The duration of the patent and the length of the licenses;

5.    The established profitability of the product made under the patent, its commercial success, and its current popularity;

6.    The utility and advantages of Talecris' patented invention over the old modes or devices, if any, that had been used for working out similar results;

7.    The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Talecris, and the benefits to those who have used the invention;

8.    The extent to which Baxter has made use of the invention, and any evidence

137

that shows the value of that use;

9.      The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

10.     The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Baxter;

11.     The opinion testimony of qualified experts; and

12.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.


Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware 5.14.1 (2004) (modified).

**Baxter's Objection to Talecris' Proposed Instruction 6.6:**

       Baxter objects to Talecris' proposed instruction as an incomplete and inaccurate statement of the law.  *See* Baxter's Objections to Talecris' Proposed Final Jury Instruction No. 6.5. The instruction improperly imposes upon the jury a finding of fact that the proper date for a hypothetical negotiation is September 2005, which is a matter the jury should decide.  In addition, Talecris' proposed instruction omits two *Georgia-Pacific* factors discussed by both parties' experts:  (1) the royalties received by both Plaintiffs for the '191 patent or other comparable patents and (2)  Plaintiffs' policy or programs to either maintain their patent exclusivity or grant licenses.  Baxter offers as an alternative its proposed instruction 6.8, which fairly and accurately states the law.

## 6.7    HYPOTHETICAL NEGOTIATION - INFRINGEMENT CONTINUES (TALECRIS' PROPOSED INSTRUCTION)[15]

Assuming during the hypothetical negotiation that the parties would have contemplated that Baxter would be willing to take a license but would continue to infringe the '191 patent in the absence of a license, the reasonable royalty rate must account for Baxter's continued presence in the marketplace with the accused product under compulsory license from Talecris.  In such a situation, the parties would have considered the anticipated lost profits that Talecris would expect to realize in the future due to the presence of Baxter's GAMMAGARD® Liquid in the market and its resulting impact on a reasonable royalty.

In order to analyze the value of such future lost profits, Talecris must show:

1.    There is a demand for the patented product;

2.    Talecris has the ability to meet the market demand;

3.    No acceptable non-infringing substitutes are or will become available; and

4.    The amount of profit Talecris would make.

Talecris need not negate every possibility that purchasers of Baxter's products might buy another product or no product at all.  The mere existence of a competing device does not make that product an acceptable substitute.  To be an acceptable non-infringing substitute, a proposed competitive substitute must be both "available" and "acceptable."  A non-infringing substitute is "available" if the infringer had all of the necessary equipment, know-how, and experience to use the alternative during the time of  infringement as well as the economic incentive to do so.  To be "acceptable," a non-infringing substitute must have had the

---

[15]Baxter objects to the placement of Talecris' proposed instruction prior to Baxter's proposed instructions on the *Georgia-Pacific* factors, which is the counterpart instruction to Talecris' proposed Final Jury Instruction No. 6.6.

advantages of the patented technology.

Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware
              (2004), p.70 (modified); *Grain Processing Corp. v. American Maize-Products
              Co.*, 185 F.3d 1341, 1346-49 (Fed. Cir. 1999); *Micro Chem., Inc. v. Lextron,
              Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003); *Standard Havens Prods. v.
              Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991).

**Baxter's Objection to Talecris' Proposed Instruction 6.7:**

Talecris' proposed instruction is subject to Baxter's pending Motion *in limine* No. 5 (D.I. 251) and Baxter incorporates by reference all the arguments in Baxter's motion and reply brief. Should the Court grant Baxter's motion, this instruction is unnecessary and should be eliminated in entirety.

Furthermore, Baxter objects to Talecris' proposed instruction as an incomplete and inaccurate statement of the law. *See* Baxter's Objections to Talecris' Proposed Final Jury Instruction No. 6.5. The instruction improperly imposes upon the jury a finding of fact that the proper date for a hypothetical negotiation is September 2005, which is a matter the jury should decide. Baxter further objects to the third paragraph regarding non-infringing substitutes as misleading and an inaccurate statement of the law on available and acceptable non-infringing substitutes. *See Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1166 (Fed. Cir. 1991). Contrary to Talecris' proposed instruction, a non-infringing substitute is available if it is in the marketplace, irrespective of whether the accused infringer possessed all of the necessary equipment, know-how, and experience. *See SmithKline*, 926 F.2d at 1166. Finally, Baxter objects to the use of "the infringer" language in the context of discussing Baxter as absolutely prejudicial in violation of Federal Rule of Evidence 403.

**6.8     FACTORS FOR DETERMINING REASONABLE ROYALTY (<u>BAXTER'S PROPOSED INSTRUCTION</u>)**

In determining such a reasonable royalty, you may consider the following factors, which attorneys refer to as the "*Georgia-Pacific* factors":

1.     the royalties received by Talecris Biotherapeutics and Bayer Healthcare LLC for  licensing others under the '191 patent or other patents comparable to the '191 patent;

2.     the rates paid by Baxter for the use of other patents comparable to the '191 patent;

3.     the nature and scope of the license, as exclusive or non-exclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold;

4.     whether Talecris Biotherapeutics and Bayer Healthcare LLC have or had an established policy and marketing program to maintain their patent exclusivity by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that exclusivity;

5.     the commercial relationship between the Talecris and Baxter, such as, whether they are competitors in the same territory in the same line of business, or whether they are inventors or promoters;

7.     the duration of the '191 patent and the term of the license;

8.     the established profitability of any product made under the '191 patent, its commercial success, and its current popularity;

143

9.      the utility and advantages of the patented invention over the old methods, if

        any, that had been used for working out similar results;

10.     the nature of the patented invention, the character of the commercial

        embodiment of it, if any, as owned and produced by Bayer Healthcare LLC

        and Talecris Biotherapeutics, and the benefits to those who have used the

        invention;

11.     the extent to which Baxter has made use of the invention, and any evidence

        probative of the value of that use;

12.     the portion of the profit or of the selling price that may be customary in the

        particular business or in comparable businesses to allow for the use of the '191

        patent invention or analogous inventions;

13.     the portion of the realizable profit that should be credited to the '191 patent

        invention as distinguished from non-patented elements, the manufacturing

        process, business risks, or significant features or improvements added by the

        infringer;

14.     the opinion testimony of qualified experts; and

15.     any other economic factor that a normally prudent businessperson would,

        under similar circumstances, take into consideration in negotiating the

        hypothetical license.


Authority:      Draft Uniform Jury Instructions For Patent Cases in the United States District
                of Delaware at 5.14.1 (2004) (modified); *Georgia-Pacific Corp. v. United
                States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

144

**<u>Talecris' Objection to Baxter's Proposed Instruction 6.8:</u>**

Talecris objects to Baxter's proposed instruction because it includes *Georgia-Pacific* factors that are inapplicable and thus irrelevant to this case and will confuse the jury.  Talecris' Proposed Instructions 6.6 and 6.7 more accurately recite the current state of the law.

**6.9    INTEREST (<u>STIPULATED</u>)**

None of the parties' calculations include interest.  Therefore, in arriving at your

damage calculation, you should not consider interest in any way because it is the function of

the Court to award interest.


<u>Authority:</u>       Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at
                5.15 (2004).

146

**6.10    CLOSING STATEMENT - DAMAGES (<u>STIPULATED</u>)**

The fact that I have instructed you regarding damages should not be construed as suggesting which party is to prevail in this case.  Instructions regarding damages are given for your guidance in the event that the evidence leads you to find in favor of Talecris.  Finally, if you find Talecris is entitled to damages, you may not include or add to the award any sum for purposes of punishing Baxter or to set an example.


<u>Authority:</u>      Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 5.16 (2004) (modified).

# 7    DELIBERATIONS AND VERDICT

## 7.1    INTRODUCTION (<u>STIPULATED</u>)

My instructions on the law are now finished.  I will end by explaining how you will conduct your deliberation in the jury room and about your possible verdicts.

When you start deliberating, do not talk to the jury officer, to me, or to anyone but each other about the case.  If you have any questions or messages, you must write them on a piece of paper, sign them, and give them to the jury officer.  The officer will then give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror Number 1.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  Your votes should stay secret until you are finished.

<u>Authority:</u>    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 6.1 (2004).

## 7.2     UNANIMOUS VERDICT (__STIPULATED__)

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after an impartial consideration of the evidence with your fellow jurors.  Talk with each other, listen carefully and respectfully to everyone's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges - judges of the facts, and, in the end, your vote must be exactly that - your own vote.  Your sole interest is to seek the truth from the evidence in this case.

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in and date the form, and you will all sign the form.  You will then return to the courtroom and your foreperson will give your verdict.

It is proper to add the caution that nothing said in these instructions and nothing in the verdict form is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Authority:    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware
(2004) p.83 (modified).

**7.3    DUTY TO DELIBERATE (<u>STIPULATED</u>)**

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to consult with each other, talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences. No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

<u>Authority:</u>    Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 6.3 (2004) (modified).

**7.4     COURT HAS NO OPINION (<u>STIPULATED</u>)**

Let me finish by repeating something that I said to you earlier.  Nothing that I have said or done during this trial, nothing about my instructions, and nothing about the form of the verdict was meant to convey what I think your verdict should be or to influence your decision in any way.  You must decide the case yourselves based solely on the evidence presented.

<u>Authority:</u>     Draft Uniform Jury Instructions for Patent Cases in the District of Delaware at 6.4 (2004).

<u>**CERTIFICATE OF SERVICE**</u>

152

I hereby certify on this 14th day of May, 2007 I electronically filed the foregoing **Joint Proposed Final Jury Instructions** with the Clerk of Court using CM/ECF which will send notification of such filing to the following:

| | |
|---|---|
| Philip A. Rovner, Esquire<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>P. O. Box 951<br>Wilmington, DE  19899<br>(302) 984-6140<br>provner@potteranderson.com | Susan Spaeth, Esquire<br>Townsend and Townsend and Crew LLP<br>379 Lytton Avenue<br>Palo Alto, CA 94301-1431<br>(415) 576-0200<br>smspaeth@townsend.com |

I also hereby certify that a true copy of the foregoing document was served upon the following in the manner indicated on May 14, 2007.

| **Via Hand Delivery and E-Mail** | **Via Federal Express and E-Mail** |
|---|---|
| Philip A. Rovner, Esquire<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>P. O. Box 951<br>Wilmington, DE  19899<br>(302) 984-6140<br>provner@potteranderson.com | Susan Spaeth, Esquire<br>Townsend and Townsend and Crew LLP<br>379 Lytton Avenue<br>Palo Alto, CA 94301-1431<br>(415) 576-0200<br>smspaeth@townsend.com |

   */s/ Jeffrey B. Bove*
Jeffrey B. Bove (#998)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE  19801
Telephone: (302) 658-9141
jbove@cblh.com
*Attorneys for Talecris Biotherapeutics, Inc. and Bayer Healthcare LLC*

153

## CERTIFICATE OF SERVICE

I hereby certify on this 14th day of May, 2007 I electronically filed the foregoing **Joint**

**Proposed Final Jury Instructions** with the Clerk of Court using CM/ECF which will send

notification of such filing to the following:

| | |
|---|---|
| Philip A. Rovner, Esquire<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>P. O. Box 951<br>Wilmington, DE  19899<br>(302) 984-6140<br>provner@potteranderson.com | Susan Spaeth, Esquire<br>Townsend and Townsend and Crew LLP<br>379 Lytton Avenue<br>Palo Alto, CA 94301-1431<br>(415) 576-0200<br>smspaeth@townsend.com |

I also hereby certify that a true copy of the foregoing document was served upon the

following in the manner indicated on May 14, 2007.

| **Via Hand Delivery and E-Mail** | **Via Federal Express and E-Mail** |
|---|---|
| Philip A. Rovner, Esquire<br>Potter Anderson & Corroon LLP<br>Hercules Plaza<br>P. O. Box 951<br>Wilmington, DE  19899<br>(302) 984-6140<br>provner@potteranderson.com | Susan Spaeth, Esquire<br>Townsend and Townsend and Crew LLP<br>379 Lytton Avenue<br>Palo Alto, CA 94301-1431<br>(415) 576-0200<br>smspaeth@townsend.com |

　　*/s/ Jeffrey B. Bove*　　　　　　
Jeffrey B. Bove (#998)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
 1007 North Orange Street
Wilmington, DE  19801
Telephone: (302) 658-9141
jbove@cblh.com
*Attorneys for Talecris Biotherapeutics, Inc. and
Bayer Healthcare LLC*

154