**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TALECRIS BIOTHERAPEUTICS, INC.
and BAYER HEALTHCARE LLC,

      Plaintiffs,

    v.

BAXTER INTERNATIONAL INC., and
BAXTER HEALTHCARE CORPORATION,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)

Civil Action No.:  05-349-GMS

**PUBLIC VERSION**

---

BAXTER HEALTHCARE CORPORATION,

      Counterclaimant,

    v.

TALECRIS BIOTHERAPEUTICS, INC. and
BAYER HEALTHCARE LLC,

      Counterdefendants.

)
)
)
)
)
)
)
)
)
)

**AMENDED ANSWER TO AMENDED AND SUPPLEMENTAL COMPLAINT;**

**COUNTERCLAIM FOR DECLARATORY JUDGMENT**

    Baxter International Inc. ("BII") and Baxter Healthcare Corporation ("BHC")

(collectively, "Baxter") hereby amend their answer to the Amended and Supplemental

Complaint filed by Talecris Biotherapeutics, Inc. ("Talecris") and Bayer Healthcare LLC

("Bayer") as follows:

**NATURE OF THE ACTION**

    1.  Baxter admits that Talecris and Bayer filed an action based on alleged

infringement of United States Patent No. 6,686,191 ("the '191 patent") and that Plaintiffs'

action purports to arise under the patent laws of the United States.  Except as specifically

admitted, Baxter denies the allegations of paragraph 1.

## THE PARTIES

2.    Baxter admits the allegations of paragraph 2.

3.    Baxter admits the allegations of paragraph 3.

4.    Baxter admits the allegations of paragraph 4.

5.    Baxter admits the allegations of paragraph 5.

6.    Baxter admits the allegations of paragraph 6.

## JURISDICTION AND VENUE

7.    Baxter admits the allegations of paragraph 7.

8.    Baxter admits the allegations of paragraph 8.

9.    Baxter admits venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).

## THE '191 PATENT

10.    Baxter admits that on its face the '191 patent is entitled "Preparation of Virally Inactivated Intravenously Injectable Immune Serum Globulin" and appears to have issued on February 3, 2004 based on an application filed by William R. Alonso. Baxter further admits that on its face the '191 patent appears to have been assigned to Bayer HealthCare LLC.  Baxter further admits that a copy of the '191 patent is attached to the Amended and Supplemental Complaint as Exhibit A.  Except as specifically admitted, Baxter denies the allegations of paragraph 10.

11.    Baxter is without sufficient information or belief to admit or deny the allegation of paragraph 11 and on that basis denies the allegation of paragraph 11.

12.    Baxter admits that the language of claims 1 and 23 are reflected in

paragraph 12 of the Amended and Supplemental Complaint. Except as specifically admitted, Baxter denies the allegations of paragraph 12.

13.    Baxter admits that Talecris alleges that it is the exclusive licensee of the '191 patent with the right to enforce said patent. Except as specifically admitted, Baxter denies the allegations of paragraph 13.

## FACTUAL ALLEGATIONS

14.    Baxter admits that on April 27, 2005, the United States Food and Drug Administration ("FDA") approved Baxter's biologics license application for Immune Globulin Intravenous (Human), 10% Solution for manufacture and introduction or delivery into interstate commerce. Baxter further admits that the FDA advised that Baxter may label its product with the proprietary name "GAMMAGARD LIQUID." Baxter also admits that a copy of the letter approving Baxter's Biologic License Application ("BLA") is attached to the Amended and Supplemental Complaint as Exhibit B. Except as specifically admitted, Baxter denies the allegations of paragraph 14.

15.    Baxter admits that the BLA for GAMMAGARD® LIQUID [Immune Globulin Intravenous (Human)] 10% ("GAMMAGARD LIQUID") identifies BHC as the manufacturer. Baxter further admits that the April 27, 2005 letter approves the manufacture of GAMMAGARD LIQUID at Baxter's Lessines, Belgium, facility. Except as specifically admitted, Baxter denies the allegations of paragraph 15.

16.    Baxter admits that Baxter has publicly announced its intention to launch GAMMAGARD LIQUID in the fourth quarter of 2005. Baxter further admits that Exhibit C is a copy of a Baxter news release dated May 2, 2005. Except as specifically admitted, Baxter denies the allegations of paragraph 16.

17.    Baxter admits that it publicly announced its launch of sales of GAMMAGARD LIQUID in the United States on September 26, 2005 and has commenced sales of GAMMAGARD LIQUID in the United States.  Baxter further admits that Exhibit D is a copy of a Baxter news release dated September 26, 2005. Except as specifically admitted, Baxter denies the allegations of paragraph 17.

18.    Baxter admits that it has begun importing and selling GAMMAGARD LIQUID in the United States.  Except as specifically admitted, Baxter denies the allegations of paragraph 18.

19.    Baxter admits that the labeling information for GAMMAGARD LIQUID describes solvent/detergent treatment, 35 nm nanofiltration and low pH incubation at increased temperature.  Except as specifically admitted, Baxter denies the allegations of paragraph 19.

20.    Baxter denies the allegations of paragraph 20.

21.    Baxter denies the allegations of paragraph 21.

### FIRST CLAIM FOR RELIEF:

### INFRINGEMENT

### OF THE '191 PATENT UNDER 35 U.S.C. § 271(g)

22.    Baxter realleges and incorporates herein its responses to paragraphs 1 through 21 above.

23.    Baxter admits that Plaintiffs purport to raise this count under the patent laws of the United States.  Except as specifically admitted, Baxter denies the allegations of paragraph 23.

24.    Baxter denies the allegations of paragraph 24.

25.    Baxter denies the allegations of paragraph 25.

26.    Baxter denies the allegations of paragraph 26.

27.    Baxter denies the allegations of paragraph 27.

28.    Baxter denies the allegations of paragraph 28.

29.    Baxter denies the allegations of paragraph 29.

30.    Baxter denies the allegations of paragraph 30.

31.    Baxter denies the allegations of paragraph 31.

## SECOND CLAIM FOR RELIEF:

## INFRINGEMENT

## OF THE '191 PATENT UNDER 35 U.S.C. § 271(a)

32.    Baxter realleges and incorporates herein its responses to paragraphs 1 through 31 above.

33.    Baxter admits that Plaintiffs purport to raise this count under the patent laws of the United States. Except as specifically admitted, Baxter denies the allegations of paragraph 33.

34.    Baxter denies the allegations of paragraph 34.

35.    Baxter denies the allegations of paragraph 35.

36.    Baxter denies the allegations of paragraph 36.

37.    Baxter denies the allegations of paragraph 37.

38.    Baxter denies the allegations of paragraph 38.

39.    Baxter denies the allegations of paragraph 39.

40.    Baxter denies the allegations of paragraph 40.

## THIRD CLAIM FOR RELIEF:

## INDUCING INFRINGEMENT OF THE

## '191 PATENT UNDER 35 U.S.C. § 271(b)

41.    Baxter realleges and incorporates herein its responses to paragraphs 1 through 40 above.

42.    Baxter admits that Plaintiffs purport to raise this count under the patent laws of the United States.  Except as specifically admitted, Baxter denies the allegations of paragraph 42.

43.    Baxter denies the allegations of paragraph 43.

44.    Baxter denies the allegations of paragraph 44.

45.    Baxter denies the allegations of paragraph 45.

46.    Baxter denies the allegations of paragraph 46.

47.    Baxter denies the allegations of paragraph 47.

48.    Baxter denies the allegations of paragraph 48.

Baxter denies all remaining express or implied allegations of the Amended and Supplemental Complaint that have not been expressly admitted.

## AFFIRMATIVE DEFENSES

Answering further, Baxter raises the following affirmative defenses to the causes of action set forth in the Amended and Supplemental Complaint.

## FIRST AFFIRMATIVE DEFENSE

1.    The Amended and Supplemental Complaint fails to allege facts sufficient to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

2.     Plaintiffs are barred from obtaining any relief sought in the Amended and Supplemental Complaint because Baxter has not infringed and is not infringing, literally or equivalently, either directly or indirectly, any valid and enforceable claim of the '191 patent.

## THIRD AFFIRMATIVE DEFENSE

3.     Plaintiffs are barred from obtaining any relief sought in the Amended and Supplemental Complaint because the '191 patent, and each claim thereof, is invalid for failing to meet one or more of the conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112.

## FOURTH AFFIRMATIVE DEFENSE

4.     Plaintiffs are barred from obtaining any relief sought in the Amended and Supplemental Complaint by the doctrine of prosecution history estoppel, and Plaintiffs are estopped from claiming that the '191 patent covers or includes the accused Baxter product.

## FIFTH AFFIRMATIVE DEFENSE

5.     Plaintiffs are barred from obtaining any relief sought in the Amended and Supplemental Complaint because the '191 patent is unenforceable due to inequitable conduct and/or fraud on the U.S. Patent Office during the prosecution of the '191 patent, including failing to disclose prior art or experimental data material to the prosecuted claims and making false and/or misleading statements to the examiner concerning the experimental data, as discussed more fully in the Counterclaim below.

## COUNTERCLAIM

Baxter Healthcare Corporation ("BHC") counterclaims against Talecris and Bayer as follows:

## THE PARTIES

1.    BHC is and at all relevant times has been a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at One Baxter Parkway, Deerfield, Illinois 60015.

2.    Upon information and belief, Talecris is and at all relevant times has been a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 4101 Research Commons, 79 TW Alexander Drive, Research Triangle Park, North Carolina 27709.

3.    Upon information and belief, Bayer is and at all relevant times has been a limited liability company organized and existing under the laws of the State of Delaware, having a place of business at 511 Benedict Avenue, Tarrytown, New York 10591.

## JURISDICTION AND VENUE

4.    This is a counterclaim for declaratory relief under the patent laws of the United States.  This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1338, 2201 and 2202.

5.    This Court has jurisdiction over Talecris because it is a corporation organized and existing under the laws of the State of Delaware and because it has availed itself of this jurisdiction by filing the instant action.  This Court also has jurisdiction over Bayer because it is a limited liability company organized and existing under the laws of Delaware and because, on information and belief, Bayer has purposefully conducted

business in this judicial district.

6.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

## THE CONTROVERSY

7.    Upon information and belief, Talecris is a pharmaceutical company that acquired the assets of Bayer's plasma products business.

8.    Upon information and belief, Bayer is part of a worldwide pharmaceutical company having different divisions, including a Biological Products division. Further upon information and belief, Bayer sold its worldwide plasma products business to NPS Biotherapeutics, a temporary holding company that became Talecris.

9.    BHC is a biotechnology and medical products/services company that provides critical therapies for people with life-threatening conditions through three key businesses (BioScience, Medication Delivery and Renal Therapies). BHC therapies, products and services are used to treat patients with many conditions including cancer, trauma, hemophilia, immune deficiencies, kidney disease and other disorders. BHC's BioScience business provides therapeutic proteins derived from human plasma or recombinant technology to treat hemophilia, immune deficiencies and other blood-related disorders. The therapeutic product relevant to this action is BHC's intravenous immunoglobulin product GAMMAGARD® LIQUID.

### A.    *Intravenous Immunoglobulins*

10.    Persons suffering from a variety of conditions, including Kawasaki Syndrome, Chronic Lymphocytic Leukemia and Idiopathic Thrombocytopenic Purpura are lacking certain antibodies called immune globulins or immunoglobulins that help

fight off infection. Immunoglobulin treatment can increase or provide the missing antibodies.

11.    BHC manufactures and provides purified plasma treatments containing immunoglobulins that help patients with immune deficiency conditions fight off infection. For example, BHC manufactures GAMMAGARD S/D Immune Globulin Intravenous (Human), an effective, highly purified therapy used in treatments of autoimmune diseases. GAMMAGARD S/D is provided in powder form, so must be reconstituted with sterile water prior to intravenous use. To facilitate the use of BHC's immunoglobulin treatment, BHC developed a new product, GAMMAGARD® LIQUID [Immune Globulin Intravenous (Human)] 10%, which is a ready-to-use, sterile preparation of highly purified and concentrated immunoglobulin G antibodies. GAMMAGARD LIQUID is manufactured in liquid form, rather than powder form, for ease of administration.

12.    The controversy between BHC and Talecris/Bayer arises in relation to Baxter's GAMMAGARD LIQUID product. In particular, the present controversy relates to the specific processes by which BHC's GAMMAGARD LIQUID product is made as well as the resulting product itself.

**B.**        *The '191 Patent*

13.    The United States application serial number 08/532,211 ("U.S. application"), which ultimately led to issuance of the '191 patent, was filed with the United States Patent Office ("Patent Office") on or about September 22, 1995. The claims in the U.S. application were pending before the Patent Office for almost nine years. The '191 patent issued on or about February 3, 2004. On information and belief,

the '191 patent was assigned to Bayer. The named inventor on the '191 patent is William R. Alonso.

14.    Bayer Corporation submitted to the Food and Drug Administration ("FDA") a report dated December 29, 1995, during prosecution of the U.S. application. This report was signed by Dr. Alonso and entitled "Product: Immune Globulin Intravenous (Human) Solvent-Detergent Treated Development of IGIV Treated with Solvent Detergent" ("Alonso Report"). The Alonso Report states that it is "[v]alid from: 11 August 1995," prior to the date the U.S. application was filed. The Alonso Report was submitted in support of Bayer Corporation's Product License Application ("PLA") submission for approval of the Gamimune 5% and 10% S/D treated products. Talecris/Bayer have contended in this litigation that these Gamimune 5% and 10% S/D products embody the claims of the '191 patent.

### 1.    *Failure to Disclose Material References*

15.    During prosecution of the '191 patent, Dr. Alonso and the attorneys prosecuting the '191 patent on Bayer's behalf failed to disclose to the Patent Office two references in the possession of Bayer and/or its prosecuting attorneys: (1) U.S. Patent No. 5,256,771 ("the Tsay patent"), issued October 26, 1993 and prosecuted by James A. Giblin (the same patent attorney who prosecuted the '191 patent); and (2) Ng, *et al.*, Process-Scale Purification of Immunoglobulin M Concentrate, Vox Sang 65:81-86 (1993). These references predate the filing of the '191 patent by more than one year, and were authored by other employees of Bayer's predecessor, Miles, Inc. In addition, the Tsay patent was assigned to Miles, Inc. Accordingly, at a minimum, these references were within the possession of Bayer (or its predecessor, Miles) or its patent attorney, Mr.

Giblin. This prior art was highly material to the patentability of at least Claim 1 of the '191 patent and, on information and belief, was not disclosed to the Patent Office with intent to deceive the Patent Office.

### 2.    *Failure to Disclose Material Prior Use*

16.    Additionally, Dr. Alonso and Bayer failed to disclose to the Patent Office the prior use of Bayer of the claimed invention described in issued Claim 23. Specifically, on information and belief, Dr. Alonso knew that Bayer manufactured an intravenously injectable immune serum globulin solution called "Gamimune N" (on information and belief, sold in the U.S. by at least 1992)

REDACTED

a pH between about 3.5 and about 5.0, an antibody concentration of about 10% wt./wt. and a glycine concentration of about 0.2M, as required by Claim 23. This prior use was highly material to the patentability of Claim 23 and, on information and belief, was not disclosed to the Patent Office with intent to deceive the Patent Office.

### 3.    *REDACTED*

17.    Dr. Alonso made consistent misrepresentations to the Patent Office that went to the core of his "invention." In particular, Dr. Alonso repeatedly told the PTO that solvent/detergent treatment always increased ACA levels,

REDACTED

Yet he

continually and persistently represented to the Patent Office throughout prosecution that

ACA levels were *always* increased by solvent/detergent treatment.

18.    Claim 1 of the '191 patent provides:

> A method of treating a solution of antibodies which may have virus activity, the method comprising
>
> a)    contacting the solution with a trialkylphosphate and a detergent under conditions sufficient to substantially reduce any virus activity and resulting in an increased level of anticomplement activity; and
>
> b)    then incubating the solution of step a) under conditions of controlled time, pH, temperature, and ionic strength, such that the increased anticomplement activity of the solution is reduced to an acceptable level suitable for intravenous administration.

19.    Dr. Alonso told the Patent Office:

> Elevated ACA levels were *always* detected at the sterile bulk stage (i.e., after compounding as 5% or 10% IGIV and filtration with 0.2 um sterile filters) of *all* tri-n-butyl phosphate (TNBP)/detergent treated IGIV preparations *regardless of process scale*.

Col. 2:10-14, emphases added.  Additionally:

> Elevated ACA levels were *always* detected at this stage of *all* TNBP/cholate treated IGIV preparations (*regardless of process scale*).

Col. 5:47-49, emphases added.  This theme was oft-repeated to the Patent Office during

prosecution of the U.S. application.  For example, Dr. Alonso represented:

> [T]he origin of the invention is the discovery by the applicant that *using the trialky[l]phosphate/detergent viral inactivation method of Neurath et al. . . . resulted in a surprising but undesirable <u>increase</u> in ACA*.  To treat the immune globulin preparation in a manner that assures substantial reduction of viral activity . . . *the conditions of the treatment of step (a) results in an <u>increased</u> ACA level*.  This increase is now a requirement in step (a) of the claimed methods.

Response to First O/A, May 23, 1996 p. 2 (underlining in original, other emphases

added).

- 13 -

> Thus, in looking at the enclosed revised figure one can see that the original level of ACA in the control ***must be first increased*** *by the TNBP treatment of step (a)* followed by a decrease caused by the incubation requirements of step (b).

*Id.* at 3 (underlining in original, other emphases added).

> Since step (a) of the claimed methods results in an increase in ACA from the starting material, a standard is provided. ***If there is no such increase, then step (b) of the invention, and the invention itself, is not even needed.***

Applicant's Appeal Brief, February 17, 1997, p. 3.

20.    In its decision allowing the amended claims, the Board confirmed that "the claimed subject matter requires that the [viral] inactivation step result in an ***increase*** in ACA levels, and a ***reduction in that claimed increase*** by the incubation step ***to a point where the solution is suitable for intravenous use***." Board of Patent Appeals and Interferences Decision, p. 5 (emphasis added).

*a)*    ***Failure to Disclose That***
REDACTED

21.    REDACTED

- 14 -

REDACTED

Dr. Alonso did not disclose this data to the Patent Office and continued to prosecute claims that would, on their face,      REDACTED                . This omission was material to the patentability of the prosecuted claims and, on information and belief, was not disclosed to the Patent Office with intent to deceive the Patent Office.

      *b)*     ***Failure to Disclose That REDACTED***

22.   REDACTED

REDACTED

Table 5 from the '191 patent is shown below:

## TABLE 5

| ACA of TNBP/cholate treated IGIV samples | |
|---|---|
| Sample Point | ACA ($CH_{50}$/mL) |
| **Intermediate Samples** | |
| Initial sterile bulk | >100 |
| Incubated 9 d. @ 5° C. | >100 |
| **Final Incubation** | |
| 21 d. @ 22° C. | 49 |
| 21 d. @ 5° C. | 71 |

The pH 7.0 data submitted in Table 5 of the '191 patent were used to argue to the Patent

Office that an increase of ACA levels (to above 100 $CH_{50}$ units/mL) was measured after solvent/detergent treatment in the initial sterile bulk sample.

REDACTED

This omission was material to the patentability of the prosecuted claims and, on information and belief, was not disclosed to the Patent Office with intent to deceive the Patent Office.

### 4. *Dr. Alonso Relied Heavily On "Outlier" Values To Support His Prosecuted Claims*

23.    A fair representation of the data Dr. Alonso obtained would have excluded "outlier" ACA values clearly out of line with the majority of values obtained

REDACTED

Dr. Alonso relied heavily on an outlier value to support a critical limitation of his prosecuted claims, without which the critical limitation would find no support.

24.    REDACTED

REDACTED

25.    In his U.S. application,    REDACTED

(122 $CH_{50}$ units/mL ACA value for sample A4) – a value almost ***three times*** the

other three samples.

TABLE 7

ACA of samples treated with TNBP/cholate at pH 5.8

| Sample | Sterile bulk (day zero) ($CH_{50}$/mL) | 10 days incubation at 20–27° C. ($CH_{50}$/mL) | 21 days incubation at 20–27° C. ($CH_{50}$/mL) |
|---|---|---|---|
| A1 (5% IGIV) | 43 | ND | 10 |
| A2 (5% IGIV) | 31 | 14 | 15 |
| A3 (5% IGIV) | 44 | 15 | 12 |
| A4 (5% IGIV) | 122 | 73 | 55 |

This number was critical to the prosecution of the U.S. application as its inclusion

resulted in a skewed "unacceptable" average ACA value after solvent/detergent treatment

(the average of samples A1-A4 is 60 $CH_{50}$ units/mL as reflected in the "No Incubation"

bar in Figure 1 of the U.S. application).  This inflated average ACA value was used to

argue to the Patent Office that the ACA increased (to an unacceptable level) after

solvent/detergent treatment.  Had the inflated 122 $CH_{50}$ units/mL ACA value not been

included, the "No Incubation" bar would have only averaged 39 $CH_{50}$ units/mL (for samples A1-A3), which would already be "acceptable" according to the '191 patent. This omission was material to the patentability of the prosecuted claims and, on information and belief, was not disclosed to the Patent Office with intent to deceive the Patent Office.

26.    On information and belief, Dr. Alonso and Bayer knew of all of the above material information and intended to deceive the Patent Office by omitting or misrepresenting such material information both in the U.S. application and throughout prosecution of the '191 patent that would risk the issuance of their patent.

27.    An actual and justiciable controversy exists between the parties regarding the noninfringement, invalidity and unenforceability of the '191 patent. BHC therefore seeks a judicial determination that it does not infringe any valid and enforceable claim of the '191 patent and that the '191 patent is invalid and unenforceable.

## FIRST CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT OF NONINFRINGEMENT
### OF THE '191 PATENT)

28.    BHC incorporates herein by reference Paragraphs 1 through 27 above.

29.    An actual controversy has arisen and now exists between BHC on the one hand and Talecris and Bayer on the other hand with respect to BHC's noninfringement of any valid claims of the '191 patent. Talecris and Bayer contends BHC, among others, infringes the '191 patent. BHC contends that it does not infringe any valid claim of the '191 patent.

30.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to the noninfringement of the '191 patent is

necessary and appropriate under the circumstances.

## SECOND CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT OF INVALIDITY OF THE '191 PATENT)

31.    BHC incorporates herein by reference Paragraphs 1 through 27 above.

32.    An actual controversy has arisen and now exists between BHC on the one hand and Talecris and Bayer on the other hand with respect to the invalidity of the '191 patent.  Talecris and Bayer contends the '191 patent is valid.  BHC contends that the '191 patent is invalid for failure to meet one or more of the conditions of patentability specified in 35 U.S.C. §§ 101, 102, 103 and/or 112.

33.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to the validity of the '191 patent is necessary and appropriate under the circumstances.

## THIRD CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '191 PATENT)

34.    BHC incorporates herein by reference Paragraphs 1-27 above.

35.    An actual controversy has arisen and now exists between BHC on the one hand and Talecris and Bayer on the other hand with respect to the unenforceability of the '191 patent.  Talecris and Bayer apparently believe the '191 patent is enforceable, as they have asserted it in this case.  BHC contends that the '191 patent is unenforceable based on Talecris and Bayer's inequitable conduct arising from its failure to comply with 37 C.F.R. §1.56 as described more fully in paragraphs 1-21, *supra*.

36.    Pursuant to 28 U.S.C. §§ 2201 and 2202, a judicial determination of the respective rights of the parties with respect to the enforceability of the '191 patent is

necessary and appropriate under the circumstances.

## PRAYER

WHEREFORE, Baxter International Inc. and Baxter Healthcare Corporation request entry of judgment in their favor and against Talecris Biotherapeutics, Inc. and Bayer Healthcare LLC as follows:

1.    Holding that Talecris Biotherapeutics, Inc. and Bayer Healthcare LLC take nothing by way of its Amended and Supplemental Complaint;

2.    Holding that Baxter Healthcare Corporation's GAMMAGARD® LIQUID [Immune Globulin Intravenous (Human)] 10% product does not infringe, either literally or under the doctrine of equivalents, either directly or indirectly, any valid claim of U.S. Patent No. 6,686,191;

3.    Declaring that Baxter Healthcare Corporation's GAMMAGARD® LIQUID [Immune Globulin Intravenous (Human)] 10% product does not infringe, either literally or under the doctrine of equivalents, either directly or indirectly, any valid claim of U.S. Patent No. 6,686,191;

4.    Declaring the claims of United States Patent No. 6,686,191 are invalid;

5.    Declaring the claims of United States Patent No. 6,686,191 unenforceable;

6.    Finding that this case be decreed an "exceptional case" within the meaning of 35 U.S.C. § 285 and reasonable attorney fees be awarded to Baxter International Inc. and Baxter Healthcare Corporation; and

7.    That Baxter International Inc. and Baxter Healthcare Corporation be awarded such other costs and further relief as the Court deems just and proper.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

James G. Gilliland, Jr.
Susan M. Spaeth
Anne M. Rogaski
TOWNSEND AND TOWNSEND AND
CREW LLP
379 Lytton Avenue
Palo Alto, California  94301
(650) 326-2400

Dated:  November 1, 2006

Public Version: June 15, 2007
801872

By: /s/ Philip A. Rovner
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    Email:  provner@potteranderson.com

*Attorneys for Defendant*
*Baxter International Inc. and*
*Defendant/Counterclaimant*
*Baxter Healthcare Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on June 15, 2007, the within document

was filed with the Clerk of the Court using CM/ECF which will send notification of such

filing(s) to the following; that the document was served on the following counsel as indicated;

and that the document is available for viewing and downloading from CM/ECF.

### BY HAND DELIVERY AND E-MAIL

Jeffrey B. Bove, Esq.
Mary W. Bourke, Esq.
Mark E. Freeman, Esq.
Jaclyn Mason, Esq.
Donna Hallowell
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
jbove@cblh.com, mbourke@cblh.com
mfreeman@cblh.com, jmason@cblh.com
dhallowell@cblh.com; cjeffers@cblh.com;
dhammond@cblh.com; mlambert@cblh.com

### BY EMAIL

Dana K. Hammond, Esq.
M. Curt Lambert, Esq.
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street
Wilmington, DE 19899
jhammond@cblh.com; mlambert@cblh.com

Christopher E. Jeffers, Esq.
Connolly Bove Lodge & Hutz LLP
1990 M. Street, NW
Washington, DC 20036-3425
cjeffers@cblh.com

I hereby certify that on June 15, 2007 I have sent by E-mail the foregoing

document to the following non-registered participants:

Bradford J. Badke, Esq.
Gabrielle Ciuffreda, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
bradford.badke@ropesgray.com; gabrielle.ciuffreda@ropesgray.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com