

Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

**Philip A. Rovner**
Partner
provner@potteranderson.com
(302) 984-6140   Direct Phone
(302) 658-1192   Fax

June 25, 2007

**BY E-FILE**

The Honorable Gregory M. Sleet
United States District Court
U.S. Courthouse
844 North King Street
Wilmington, DE  19801

> Re:   Talecris Biotherapeutics, Inc. v. Baxter International Inc. and Baxter Healthcare Corporation, D. Del., C.A. No. 05-349-GMS

Dear Judge Sleet:

    We write on behalf of defendant Baxter International Inc. and defendant/counterclaimant Baxter Healthcare Corporation.  Based on the Court's directives at the June 14 pretrial conference, the parties continue to engage in the meet and confer process, hopeful that many of the disputed issues can be resolved prior to trial without court intervention.  There is one issue, however -- plaintiffs' refusal to comply with the Court's directive to "significantly reduce" their list of proposed trial exhibits -- that prejudices Baxter's ability properly to prepare for trial and runs afoul of the parties' agreement that their meet and confer on objections to exhibits could be postponed on the express understanding that plaintiffs' exhibit list would be significantly reduced.

    That this remains an outstanding issue is surprising to say the least.  At the pretrial conference, plaintiffs' lengthy list of exhibits, more than 1,600, was specifically addressed by the Court.  Your Honor recognized that, in a timed trial, the parties will have a limited amount of time and "the jury can only digest but so much information"  (6/14/07 Tr. at 73) (Ex. A hereto).  Clearly, during a seven day trial, no party can use anywhere close to the 1600 exhibits that plaintiffs had identified.  Accordingly, the Court admonished plaintiffs, stating "there needs to be a **substantial reduction** in the number of exhibits contemplated for use by Talecris."  *Id.* (emphasis added)

    On Friday, June 22, 2007, Talecris circulated a "revised" exhibit list.  Despite Your Honor's clear directive, that list still contained approximately 1,400 proposed trial exhibits.

The Honorable Gregory M. Sleet
June 25, 2007
Page 2

Accordingly, Baxter requests that Talecris immediately be ordered to comply with the Court's earlier order and "significantly" reduce their exhibit list. At this point, less than two weeks before trial, Baxter suggests that plaintiffs' list not exceed 750 proposed exhibits and that plaintiffs provide that list no later than Friday, June 29.

                              Respectfully,

                              Philip A. Rovner
                              provner@potteranderson.com

PAR/mes/803732
Enc.
cc:   Jeffrey B. Bove, Esq. (by e-mail and hand delivery)
      Bradford J. Badke, Esq. (by email)

# EXHIBIT A

## Page 1

```
IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE DISTRICT OF DELAWARE
               - - -
TALECRIS BIOTHERAPEUTICS,    :  Civil Action
INC.,                        :
          Plaintiff,         :
    v.                       :
BAXTER INTERNATIONAL INC.    :
and BAXTER HEALTHCARE        :
CORPORATION,                 :
          Defendants.        :  No. 05-349-GMS
               - - -
BAXTER HEALTHCARE            :
CORPORATION,                 :
          Counterclaimant,   :
    v.                       :
TALECRIS BIOTHERAPEUTICS,    :
INC. and BAYER HEALTHCARE    :
LLC,                         :
          Counterdefendants. :
               - - -
            Wilmington, Delaware
            Thursday, June 14, 2007
                9:30 a.m.
            Pretrial Conference
               - - -
BEFORE: HONORABLE GREGORY M. SLEET, U.S.D.C.J.
```

## Page 2

```
APPEARANCES:

  JEFFREY B. BOVE, ESQ.,
  MARY W. BOURKE, ESQ.,
  JACLYN M. MASON, ESQ., and
  DANA K. HAMMOND, ESQ.
  Connolly Bove Lodge & Hutz LLP
       -and-
  BRADFORD J. BADKE, ESQ.
  Ropes & Gray
  (New York, N.Y.)

       Counsel for Plaintiff and
       Counterdefendants

  PHILIP A. ROVNER, ESQ.
  Potter Anderson & Corroon LLP
       -and-
  JAMES G. GILLILAND, JR., ESQ.,
  SUSAN M. SPAETH, ESQ.,
  ANNE M. ROGASKI, ESQ., and
  MEGAN M. CHUNG, ESQ.
  Townsend and Townsend and Crew
  (Palo Alto, CA)

       Counsel for Defendants and
       Counterclaimant

            - - -
```

## Page 3

09:33:13  1   THE COURT: Good morning. Please take your
09:33:16  2   seats. This is an office conference. We will dispense with
09:33:19  3   the formalities of Court, unless counsel prefer to stand up
09:33:22  4   and speak on your feet. Some do, and that is fine. But
09:33:25  5   feel free to sit at counsel table as we discuss the issues
09:33:28  6   that we need to talk about today.
09:33:30  7        Why don't we start with a round of
09:33:33  8   reintroductions, beginning with plaintiff's table.
09:33:36  9        MR. BOVE: Good morning, Your Honor. Jeff Bove
09:33:38 10   for Talecris and Bayer. And I have my co-lead counsel and
09:33:41 11   partner, Mary Bourke, my associate, Jaclyn Mason, my
09:33:44 12   associate, Dana Hammond, and also counsel for Bayer, Jim
09:33:48 13   Badke from Ropes & Gray.
09:33:49 14        THE COURT: Good morning.
09:33:50 15        (Counsel respond "Good morning.")
09:33:53 16        THE COURT: Mr. Rovner.
09:33:53 17        MR. ROVNER: Good morning, Your Honor. With me
09:33:56 18   from my left is Susan Spaeth, Megan Chung, Jim Gilliland,
09:34:01 19   Anne Rogaski, all from Townsend and Townsend and Crew. And
09:34:05 20   behind me is Jane Choi from Baxter.
09:34:07 21        THE COURT: It is good to see, we are seeing
09:34:08 22   more and more in-house counsel come, and I think that is a
09:34:12 23   good thing, having served as in-house counsel at one point.
09:34:14 24        MR. BOVE: Your Honor, I also wish to introduce,
09:34:17 25   so as not to forget, Chris Jeffers and Mark Freeman, also

## Page 4

09:34:22  1   associates at my firm.
09:34:23  2        THE COURT: Good morning.
09:34:24  3        It just happened, I don't know if you have seen
09:34:26  4   it yet, the ruling on the disqualification. There is a
09:34:33  5   summary judgment issue outstanding.
09:34:34  6        I am going to reject the notion that the claim
09:34:39  7   is indefinite. There will be an opinion issued forthwith.
09:34:47  8        Let me just tell you how we are going to
09:34:50  9   proceeded today. We are going to first address motions in
09:34:54 10   limine. We will have, hopefully, reasonably limited
09:34:58 11   discussion about these motions. Two of them, I think 3 and
09:35:05 12   4, Plaintiff's 3 and 4, which may encompass another motion,
09:35:31 13   I am going to deal with rather summarily. I will read a
09:35:33 14   ruling into the record. So I am not going to entertain
09:35:36 15   argument on those motions.
09:35:39 16        We will, not necessarily in this order, talk
09:35:44 17   about other things after the motions in limine, like voir
09:35:53 18   dire. We will address in some detail preliminary
09:35:57 19   instructions today. Time permitting, I want to discuss with
09:36:01 20   you the final jury instructions as well, to the extent that
09:36:04 21   we can. I don't know if there is a more recent iteration
09:36:08 22   that has been developed post the PTO submission. I have at
09:36:15 23   least in summary fashion read through your proposed final
09:36:22 24   jury instructions, and do have some thoughts about that.
09:36:24 25        Yes, Mr. Bove.

69

```
11:03:54  1         THE COURT: Let's see not so much what I think
11:03:55  2    at this point. Let's see what Baxter thinks.
11:04:01  3         MS. ROGASKI: I think the distinction is
11:04:04  4    critical here, Your Honor. This is a Super Sack issue.
11:04:07  5    Super Sack, of course, is a case that brought this out.
11:04:10  6         THE COURT: It sure is.
11:04:11  7         MS. ROGASKI: In that case it was a complete
11:04:13  8    covenant not to sue on the patent. In the two Merck cases
11:04:16  9    before you, it was a complete covenant not to sue on the
11:04:18 10    patent. In the Syngenta Seeds case, it was different. The
11:04:23 11    plaintiff continued to proceed on some of the claims but not
11:04:26 12    all. And jurisdiction was not divested by a partial
11:04:31 13    covenant not to sue on certain claims but not all. That is
11:04:35 14    the distinction here, and that's exactly what we have in
11:04:39 15    this case.
11:04:39 16         MR. BOVE: Your Honor, we will offer a covenant
11:04:42 17    not to sue on all claims but Claim 7. I believe, under
11:04:49 18    Supreme Court authority, that divests the Court of subject
11:04:52 19    matter jurisdiction over all claims but Claim 7.
11:05:00 20         MR. ROGASKI: I absolutely disagree.
11:05:02 21         THE COURT: So we have an issue that was not
11:05:05 22    exactly addressed by Syngenta.
11:05:08 23         MS. ROGASKI: In Syngenta, it was distinguishing
11:05:10 24    the Super Sack case, it said, Although the Federal
          25    Circuit --
```

70

```
11:05:15  1         THE COURT: Let me interrupt just for a second,
11:05:16  2    counsel.
11:05:17  3         Counsel for Talecris, Mr. Bove, Claim 7 includes
11:05:20  4    Claim 1.
11:05:22  5         MR. BOVE: Claim 7 is dependent on Claim 1, but
11:05:26  6    stands as a separate claim with a separate scope. That's
11:05:33  7    simply a matter of formality, to assert it as a dependent
11:05:36  8    claim. In other words, it could have been written with all
11:05:39  9    of the elements of Claim 1 plus the additional limitation
11:05:42 10    that Claim 7 imposes and stand alone. But as a matter of
11:05:47 11    claim-drafting practice, which is very routine, it was
11:05:52 12    styled as a dependent claim. That does not mean that Claim
11:05:55 13    1 is still at issue. It is Claim 7 as construed as a
11:06:01 14    separate claim, stand-alone claim, that is the only claim at
11:06:05 15    issue, particularly in light of the fact that the covenant
11:06:08 16    not to sue will be provided on all other claims.
11:06:13 17         THE COURT: Counsel, I interrupted you. Go
11:06:13 18    ahead and you can address Mr. Bove.
11:06:15 19         MS. ROGASKI: The Syngenta Seeds case
11:06:18 20    specifically said, Although the Federal Circuit in Super
11:06:21 21    Sack concluded that a promise by a patentee not to assert
11:06:25 22    patents against an infringer did divest the Court of
11:06:28 23    jurisdiction over the declaratory judgment, because there
11:06:32 24    was no longer a controversy, in that case the patentee
11:06:35 25    withdrew the entire patent from controversy, not just the
```

71

```
11:06:39  1    three claims, the Court finds the distinction substantial.
11:06:42  2    That is the distinction that we have here.
11:06:44  3         THE COURT: I am not going to rule on this at
11:06:48  4    the moment. I am debating whether I really need additional
11:06:52  5    submissions from you or not. What I would probably prefer
11:06:55  6    is a one- or two-page letter from you, citing any relevant
11:07:05  7    authority that you want me to consider. I am not unfamiliar
11:07:10  8    with the issue. I am quite familiar with it. But I would
11:07:13  9    like to again revisit.
11:07:15 10         MR. BOVE: It is an interesting question. That
11:07:18 11    is entirely appropriate.
11:07:19 12         THE COURT: It is. Yes. If you could make
11:07:21 13    those submissions, you can make them simultaneously, if you
11:07:24 14    would, by -- when can you?
11:07:28 15         MR. BOVE: I think next week would be fine.
11:07:31 16         THE COURT: How about midweek. How about by
11:07:33 17    Wednesday.
11:07:33 18         MR. BOVE: That would be fine, Your Honor. Just
11:07:35 19    so we are clear on the scope of the issue, it is whether or
11:07:39 20    not all other claims but Claim 1 and Claim 7 are now out of
11:07:43 21    the case, the issue is whether or not Baxter would still be
11:07:47 22    permitted to challenge Claim 1 as an invalidity counterclaim
11:07:51 23    or whether or not the Court has been divested of subject
11:07:54 24    matter jurisdiction by virtue of the covenant not to sue.
11:07:57 25         THE COURT: Does Baxter accept that
```

72

```
11:07:59  1    characterization of the issue?
11:08:01  2         MS. ROGASKI: Yes, the characterization that we
11:08:03  3    are talking about whether we may proceed under Claim 1,
11:08:06  4    invalidity, whether jurisdiction remains for that issue.
11:08:09  5         MR. BOVE: Very fine, Your Honor.
11:08:11  6         THE COURT: We are agreed. All right. That's
11:08:15  7    interesting, yes.
11:08:18  8         So let's just for a moment talk about exhibits,
11:08:20  9    since we were there, within the context of jury books.
11:08:24 10         Did you want to say something else, counsel?
11:08:26 11         MS. ROGASKI: I am not sure that we got an
11:08:29 12    answer on exhibits.
11:08:30 13         THE COURT: That's right.
11:08:32 14         MS. ROGASKI: Cutting them down.
11:08:33 15         THE COURT: Mr. Bove, Ms. Rogaski's request was,
11:08:42 16    in anticipation of the upcoming meet-and-confer, that
11:08:46 17    further paring down of your exhibit list would be the only
11:08:50 18    way the meet-and-confer could be meaningful. I think that
11:08:53 19    is a fair summarization of what she said.
11:08:54 20         MR. BOVE: That is absolutely our intent. We
11:08:56 21    are going to keep trimming.
11:08:59 22         MS. ROGASKI: "Keep trimming" concerns me only
11:09:02 23    because there is a lot of trimming that needs to be done.
11:09:04 24    If this is going to be tried in seven days, there is no way
11:09:07 25    that can happen with 1600 exhibits. It needs to be cut down
```

73

```
11:09:12   1   at least by a third.
11:09:14   2           THE COURT: I am a little reluctant to use
11:09:17   3   percentages.
           4           Mr. Rovner, do you want to weigh in?
11:09:20   5           MR. ROVNER: I have heard you say many times, we
11:09:23   6   once did the math, 1600 exhibits and you have a seven-day
11:09:26   7   trial, you are not going to put in 300 exhibits per day. I
11:09:29   8   am troubled by the fact that, as we put in our pretrial,
11:09:32   9   they had an original exhibit list and it just kept growing
11:09:35  10   as opposed to paring down. That is what we are concerned
11:09:37  11   about.
11:09:38  12           THE COURT: And the Court would be as well. I
11:09:39  13   am sure counsel would be -- you know you have a limited
11:09:41  14   amount of time. This is a timed trial. The time will be
11:09:45  15   divided equally, seven days times five and a half hours a
11:09:49  16   day, that is the multiplier. And so you want to consider
11:09:54  17   your presentations in this regard.
11:09:58  18           The jury can only digest but so much
11:10:02  19   information. So you need to keep that in mind.
11:10:06  20           So I am going to offer the general guidance that
11:10:09  21   in order to have a meaningful meet-and-confer, there needs
11:10:12  22   to be a substantial reduction in the number of exhibits
11:10:15  23   contemplated for use by Talecris.
11:10:19  24           MR. BOVE: Yes, sir.
11:10:21  25           THE COURT: I will offer to you the strong
```

74

```
11:10:26   1   suggestion that jury books should be provided independently
11:10:32   2   by each party. Right now we are talking about exhibits. We
11:10:40   3   need 12 of those books. They should be ready in time for
11:10:46   4   the jury to use them when they can be useful. I recently
11:10:50   5   had a situation where they were late in the preparation --
11:10:53   6   this was a patent trial, I was very surprised -- and that
11:10:56   7   the jury didn't -- they like to mark things up. They like
11:11:00   8   to tab. Sure, we are going to have a presentation screen, I
11:11:04   9   am sure. But these are not every-day matters with which you
11:11:08  10   are asking them to deal. So you should offer them as many
11:11:13  11   tools as you can. That is my guidance on that.
11:11:17  12           MR. GILLILAND: Your Honor, when you say
11:11:18  13   independently, you mean that there will be a book from the
11:11:20  14   plaintiff and a book from the defendant?
11:11:22  15           THE COURT: Yes. I think in a patent case that
11:11:25  16   is the only way we can do that.
11:11:27  17           MS. BOURKE: Your Honor, do you want them by
11:11:29  18   witness or by day?
11:11:30  19           THE COURT: Well, I have usually seen it by
11:11:34  20   witness, the books that are going to be used by the
           21   individual witnesses, and those that you want the Court to
11:11:43  22   have, of those exhibits about which that witness is going to
11:11:46  23   be questioned. In terms of the exhibits that you want the
11:11:49  24   jury to consider, that's a different issue, it seems to me.
11:11:53  25   You need to think about it, whether every exhibit in a
```

75

```
11:11:56   1   witness book needs to show up in a jury book, it seems to
11:12:00   2   me. I don't know that you want to do that, because it is
11:12:04   3   usually the case in my experience that witness books are
11:12:06   4   very different from jury exhibit books insofar as the
11:12:13   5   information contained therein.
11:12:14   6           You will need to make the call. I will not
11:12:16   7   micromanage that. You need to make a reasonable call.
11:12:19   8           MS. BOURKE: One further question. If there is
11:12:22   9   a dispute about admissibility of an exhibit, and you cannot
11:12:27  10   publish that exhibit until it is offered into evidence and
11:12:31  11   admitted, how do you handle the situation with the fact that
11:12:34  12   the exhibit may be in the jurors' exhibit book?
11:12:38  13           THE COURT: There are not going to be any
11:12:40  14   disputed exhibits in the jury book in the first instance.
11:12:45  15   The exhibits are admitted that have been propounded in the
11:12:57  16   pretrial order, subject to later objection. I expect that
11:13:03  17   in the main counsel is going to work out these objections on
11:13:06  18   your own. If there remain objections about exhibits that
11:13:12  19   need the Court's intervention, those will be brought
11:13:15  20   promptly to my attention either the morning of or, even if,
11:13:21  21   in the lead-up to your preparing your jury books, we need to
11:13:27  22   get on the phone and do that, to discuss objections that you
11:13:30  23   have, please telephone Ms. Walker and we will try to arrange
11:13:35  24   for a teleconference. Hopefully, we won't need that.
11:13:40  25           MS. ROGASKI: Your Honor, that does raise the
```

76

```
11:13:42   1   question already. There are quite a few exhibits that
11:13:46   2   appear on both Baxter's exhibit list and Talecris' exhibit
11:13:50   3   list. Baxter had suggested that those should be moved to
11:13:54   4   the joint exhibit list. Talecris did not agree. But Baxter
11:14:00   5   did not object to exhibits on Talecris' list that were also
11:14:03   6   on Baxter's list. Talecris generally did object to exhibits
11:14:07   7   on Baxter's list that were also on Talecris' list.
11:14:11   8           For purposes of providing a jury book, exhibits
11:14:16   9   are sometimes objected to and sometimes not. If they are
11:14:23  10   objected to by one party but not the other, even though they
11:14:26  11   appear on both parties' lists, can that not then be put into
11:14:30  12   a jury book?
11:14:31  13           THE COURT: I think I will offer this: Work it
11:14:35  14   out. Okay? Work it out. I don't micromanage that issue to
11:14:40  15   this extent. It is not time well-spent for me. You need to
11:14:44  16   work it out. I think your Delaware counsel can be helpful
11:14:50  17   to you. Of course we have Delaware counsel in this instance
11:14:53  18   over here (indicating), but in this instance they can be
11:14:56  19   helpful to you.
11:14:57  20           All right. At Schedule C, that is the first
11:15:03  21   place I have a tab, I guess this has to do with the
11:15:08  22   meet-and-confer that is coming up -- we just finished that
11:15:10  23   discussion -- on June 26. Good.
11:15:13  24           Okay. At Exhibit D, there is a footnote
11:15:23  25   indicating Baxter's objection to the inclusion of the
```