IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TALECRIS BIOTHERAPEUTICS, INC. and BAYER HEALTHCARE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BAXTER INTERNATIONAL INC. and BAXTER HEALTHCARE CORPORATION,<br><br>Defendants. | Civil Action No. 05-349-GMS<br><br>Jury Trial Demanded |
| BAXTER HEALTHCARE CORPORATION,<br><br>Counterclaimant,<br><br>v.<br><br>TALECRIS BIOTHERAPEUTICS, INC. and BAYER HEALTHCARE LLC,<br><br>Counterdefendants. | PUBLIC VERSION |

**MOTION OF DEFENDANTS BAXTER INTERNATIONAL INC. AND BAXTER HEALTHCARE CORPORATION FOR RECONSIDERATION OF THE DENIAL OF DEFENDANTS' MOTION *IN LIMINE* NO. 5 TO PROHIBIT ANY EVIDENCE OR ARGUMENT REGARDING PLAINTIFFS' ALTERNATIVE, "NON-INJUNCTION" ROYALTY**

OF COUNSEL:

James G. Gilliland, Jr.
Susan M. Spaeth
Anne M. Rogaski
TOWNSEND AND TOWNSEND and CREW LLP
379 Lytton Avenue
Palo Alto, California 94301
(650) 326-2400

Dated: June 26, 2007
Public Version: July 3, 2007

Philip A. Rovner (#3215)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, Delaware 19899-0951
(302) 984-6000
Email: provner@potteranderson.com

*Attorneys for Defendant Baxter International Inc. and Defendant/Counterclaimant Baxter Healthcare Corporation*

## I. INTRODUCTION

In their Motion *In Limine* No. 5 defendants Baxter International Inc. and Baxter Healthcare Corporation (collectively, "Baxter") asked the Court to exclude from evidence testimony regarding the "alternative, 'non-injunction' royalty rate" of REDACTED sponsored by Plaintiffs' damages expert, Christopher Bokhart. Defendants' motion asserted that the "non-injunction" scenario violated the principles of *Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), which presumes a hypothetical negotiation between a willing licensee and a willing licensor, such that after a license is entered, no injunction could be granted. Defendants also argued that Plaintiffs' alternative damage model improperly asked the jury to speculate regarding whether the Court would, or would not, issue an injunction, thereby forcing the jury to invade the equitable province of the Court to make such a determination.

At the oral argument of this motion plaintiffs' counsel represented that at trial no mention would be made of a possible injunction by Mr. Bokhart:

> How we are proposing to get this evidence in front of the jury is to, on his examination, ask him what his opinion on the reasonable royalty rate is if Baxter were using the '191 patent or if they were not using the '191 patent. That way we would not invade the province of the injunction in front of the jury.

Transcript of Proceedings, June 14, 2007 at 45:7-12 (attached as Ex. A). Accepting this restriction, the Court denied Baxter's motion: "I am going to deny [Baxter's] motion, subject to the limits you placed on the inquiry, Ms. Mason." *Id.* at 48:2-3.

Unfortunately, the limitation proposed by plaintiffs is wholly unworkable, and the limits set by the Court cannot be honored, because Mr. Bokhart's report is rife with references to the "injunction scenario" and the "non-injunction" scenario. Since a fundamental premise upon which Baxter's motion was denied cannot be met, the Court should reconsider its decision.

## II.   LEGAL STANDARD FOR MOTIONS FOR REARGUMENT

Delaware Local Rule 7.1.5 permits a party to move for reargument of a Court's order within 10 days after the Court issues its opinion or decision. *See* D. Del. L.R. 7.1.5. While motions for reargument are to be granted "sparingly," "a court should reconsider a prior decision if it overlooked facts or precedent that reasonably would have altered the result." *Chase Manhattan Bank v. Iridium Africa Corp.*, 2004 WL 1588295, at *1 (D. Del. July 8, 2004) (granting motion for reconsideration) (attached as Ex. B), *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991) (granting in part motion for reconsideration). Reargument may be granted "to correct manifest errors of law or fact or to present newly discovered evidence," *Harsco v. Zlotnicki*, 779 F.2d 906, 909 (3rd Cir. 1985), or where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Brambles USA, Inc. v. Blocker*, 735 F. Supp. 1239, 1241 (D. Del. 1990).

Motions for reargument provide a mechanism by which to "balance the need for finality in judicial decision making with a recognition that courts sometimes make mistakes." *Karr*, 768 F. Supp. at 1093. In considering a motion for reargument, "the court should keep an open mind, and should not hesitate to grant the motion if necessary to prevent manifest injustice or clear error." *Id.* (citing *Brambles*, 735 F. Supp. at 1240-41). When "the importance of achieving substantial justice outweighs the value of finality," the court should exercise its discretion to reconsider a prior ruling. *Id.* at 1094.

## III.   THE LIMITATIONS ON EXAMINATION OF MR. BOKHART PROFFERED BY PLAINTIFFS ARE IMPOSSIBLE TO ACHIEVE

Plaintiffs agree that the jury should not be asked to speculate about whether this Court will or will not issue an injunction halting the sale of GAMMAGARD Liquid should plaintiffs

2

prevail at trial. Ex. A at 45:5-6 & 45:11-13. However, because of the way Plaintiffs' expert structured his damages analysis and drafted his report, it is impossible to avoid testimony about whether or not an injunction will issue.

Unfortunately, Mr. Bokhart explicitly labeled his two hypothetical negotiations the "injunction" scenario and the "non-injunction" scenario. Excerpts of Mr. Bokhart's report are attached as Exhibit C. He uses the words and phrases, "injunction," "injunction scenario" and "non-injunction" scenario on pages 2, 3, 16, 17, 22, 29, 32 and 40 of the report as well as on exhibits 7 and 10. Since Mr. Bokhart will be examined and cross-examined about the report he wrote, the jury necessarily will learn that his two different royalty rates depend upon whether the Court subsequently does, or does not, impose an injunction.

Because Mr. Bokhart called his alternative scenarios the "injunction" and "non-injunction" scenarios, that same terminology was used throughout his deposition. Either Mr. Bokhart or the examining attorney used those phrases repeatedly. Excerpts of the deposition are attached as Exhibit D. The key words that are not supposed to be uttered at trial are used repeatedly on pages 24, 25, 26, 27, 34, 35, 36, 49, 60, 61, 92, 93, 94, 95, 98, 101, 115, 116, 138, 139, 147, 148, and 149 of the transcript. In order to effectively cross-examine Mr. Bokhart, reference to his deposition testimony undoubtedly will be required. And, once again, the jury will learn that the real issue is whether the Court later will or will not prohibit the sale of Baxter's GAMMAGARD Liquid product.

Finally, since Mr. Bokhart labeled his hypotheticals as "injunction" and "non-injunction" scenarios, Baxter's expert, Bruce Den Uyl, necessarily used the same language in his report and testimony. Exhibit E includes excerpts from Mr. Den Uyl's deposition showing that he discussed either the "injunction" or "non-injunction" scenario on pages 136, 190, 210, 211, 212, 213 and 221

3

of the transcript.

## IV. CONCLUSION

Allowing Mr. Bokhart to testify about two different royalty rates from two different hypothetical negotiations violates *Georgia-Pacific*. It also asks the jury to do the impossible – to speculate about whether or not the Court subsequently will halt the U.S. sales of GAMMAGARD Liquid. Because Mr. Bokhart explicitly labeled his alternatives the "injunction" and "non-injunction" scenarios it is inevitable that they will be discussed in those terms at trial. Indeed Baxter will be prejudiced if it cannot cross-examine Mr. Bokhart using the testimony that he gave at his deposition. Consequently, Baxter asks that the Court reconsider its prior ruling and, instead, grant Baxter's Motion *In Limine* No. 5 to Prohibit Any Evidence or Argument Regarding Plaintiffs' Alternative, "Non-Injunction" Royalty.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

James G. Gilliland, Jr.
Susan M. Spaeth
Anne M. Rogaski
TOWNSEND AND TOWNSEND AND CREW LLP
379 Lytton Avenue
Palo Alto, California 94301
(650) 326-2400

Dated: June 26, 2007

Public Version: July 3, 2007

805294

By: /s/ Philip A. Rovner
    Philip A. Rovner (#3215)
    Hercules Plaza
    P.O. Box 951
    Wilmington, Delaware 19899-0951
    (302) 984-6000
    Email: provner@potteranderson.com

*Attorneys for Defendant*
*Baxter International Inc. and*
*Defendant/Counterclaimant*
*Baxter Healthcare Corporation*

# EXHIBIT A

1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              IN AND FOR THE DISTRICT OF DELAWARE

 3                          -  -  -

 4   TALECRIS BIOTHERAPEUTICS,    :   Civil Action
     INC.,                        :
 5                                :
             Plaintiff,           :
 6                                :
         v.                       :
 7                                :
     BAXTER INTERNATIONAL INC.    :
 8   and BAXTER HEALTHCARE        :
     CORPORATION,                 :
 9                                :
             Defendants.          :   No. 05-349-GMS
10
                            -  -  -
11
     BAXTER HEALTHCARE             :
12   CORPORATION,                  :
                                   :
13           Counterclaimant,      :
                                   :
14       v.                        :
                                   :
15   TALECRIS BIOTHERAPEUTICS,     :
     INC. and BAYER HEALTHCARE     :
16   LLC,                          :
                                   :
17           Counterdefendants.:

18                          -  -  -

19                   Wilmington, Delaware
                    Thursday, June 14, 2007
20                         9:30 a.m.
                      Pretrial Conference
21
                            -  -  -
22
        BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.
23

24

25
```

should necessarily be compensated for the continued presence of an infringing product in the marketplace. That's common sense.

So Mr. Bokhart opined in the injunction and the non-injunction scenario. Obviously, we will not have him discussing an injunction in front of the jury.

How we are proposing to get this evidence in front of the jury is to, on his examination, ask him what his opinion on the reasonable royalty is if Baxter were using the '191 patent or if they were not using the '191 patent. That way we would not invade the province of injunction in front of the jury. Obviously, they are the fact-finders.

But we do think it is important for the jury to hear some expert opinion on this, because, as the fact-finders, it is their job to determine the reasonable royalty. That's our proposal.

As far as Baxter's criticisms of Mr. Bokhart and how he arrived at the higher royalty rate should Baxter continue to infringe, he uses the Panduit test, he uses acceptable methodologies to reach that opinion.

Again, this is just new. As Your Honor noted, just because it's new doesn't mean it is not grounded in the law and that it isn't a reasonable proposal in light of eBay.

          MS. MASON:  Thank you, Your Honor.

          THE COURT:  I am going to deny this motion, subject to the limits you placed on the inquiry, Ms. Mason.

          MS. MASON:  Of course, Your Honor.  Thank you.

          THE COURT:  I think that exhausts the motions in limine.

          Let's talk about, because I don't think it will take very long at all, the proposed voir dire.  It is Docket Item 320.

          At the time that the PTO came in, the Court had not ruled on inequitable conduct, so that is now in the case, so at least in part, Talecris objects to the proposed language at Page 2 of Docket Item 320, the proposed voir dire, insofar as the description of the case includes the words "and unenforceable."

          MR. BOVE:  Your Honor, perhaps this is an appropriate time to raise an issue that has come up that will bear on, potentially, the voir dire and the inequitable conduct.

          Baxter's inequitable conduct counterclaim did not, as we pointed out in our opposition to it, specify who, in other words, what individuals they were accusing of violating the duty of candor in the Patent Office, because, after all, inequitable conduct is grounded on the duty of candor, which is a duty that is applicable to individuals.

# EXHIBIT B



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1588295 (D.Del.)
(Cite as: 2004 WL 1588295 (D.Del.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
THE CHASE MANHATTAN BANK, As Collateral Agent, Plaintiff,
v.
IRIDIUM AFRICA CORPORATION; Iridium Canada, Inc.; Iridium China (Hong Kong) Ltd.; Iridium India Telecom Ltd.; Iridium Middle East Corporation; Iridium Sudamerica Corporation; Khrunichev State Research and Production Space Center; Korea Mobile Telecommunications Corporation; Lockheed Martin Corporation; Motorola, Inc.; Nippon Iridium (Bermuda) Ltd.; Pacific Electric Wire & Cable Co., Ltd.; Raytheon Company; Sprint Iridium, Inc.; Stet-Società Finanziaria Telefonica Per Azioni; Thai Satellite Telecommunications Co., Ltd.; and Vebacom Holdings, Inc., Defendants.
No. Civ.A.00-564 JJF.

July 8, 2004.

Stephen E. Jenkins, and Regina A. Iorii, of Ashby & Geddes, Wilmington, Delaware, Barry R. Ostrager, Mary Kay Vyskocil, and David J. Woll, of Simpson Thacher & Bartlett, New York, New York, for Plaintiff The Chase Manhattan Bank, as Collateral Agent, of counsel.

John S. Spadaro, of Murphy Spadoro & Landon, Wilmington, Delaware, Robert D. Mercurio, and Robert J. Malatak, of Windels Marx Lane & Mittendorf, LLP, New York, New York, for Defendant Pacific Electric Wire & Cable Co., Ltd., of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court are two motions, The Chase Manhattan Bank's ("Chase") Motion To Reconsider That Portion Of The Court's February 13, 2004, Order Which Denied Chase's Request That Pacific Electric Wire & Cable Co. ("PEWC") Be Required To Post A Bond (D.I.898), and PEWC's Motion For An Extension Of Time To Oppose Chase's Motion To Reconsider. (D.I.903.) For the reasons set forth below, the Court will deny PEWC's Motion and grant Chase's Motion.

BACKGROUND
In the February 13, 2004, Opinion and Order (D.I.892, 893) (the "February 13 Opinion"), the Court overruled Chase's objections to the Magistrate Judge's Report and Recommendation setting aside the default judgment entered against PEWC. Also in the February 13 Opinion, the Court denied Chase's request that the Court condition the set aside on PEWC's posting of a bond in the amount of the default judgment.

I. PEWC's Motion for an Extension to File an Opposition to Chase's Motion to Reconsider (D.I.903)

PEWC's attorneys request an extension of time to file an opposition brief to Chase's Motion for Reconsideration because of difficulties they experienced in gathering information about PEWC's finances during a power struggle for control between PEWC's board of directors. PEWC maintains that Chase will not be unfairly prejudiced by any such extension. Chase responds that it will be prejudiced by any further delay in resolving its Motion for Reconsideration because of the apparent precarious financial condition of PEWC.

After consideration of the parties' arguments, the Court finds that PEWC has had ample time by which to address the matters raised. Accordingly, the Court will deny the Motion for an Extension to ensure against dilatory tactics by PEWC.

II. Motion for Reconsideration (D.I.898)

A. *Standard of Review*

"As a general rule, motions for reconsideration should be granted 'sparingly.' " *Stafford v. Noramco of Delaware, Inc.,* 2001 WL 65738 at *1 (D.Del. Jan. 10, 2001) (quoting *Karr v. Castle,* 768 F.Supp. 1087, 1090 (D.Del.1991)). The purpose in granting motions for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicky,* 779 F.2d 906, 909 (3d Cir.1985) (citing *Keene Corp. v. Int'l Fidelity Ins.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Co., 561 F.Supp. 656, 665 (N.D. Ill.1983)). Parties should remain mindful that a motion for reconsideration is not merely an opportunity to "accomplish [the] repetition of arguments that were or should have been presented to the court previously." Karr, 768 F.Supp. at 1093 (citing Brambles U.S.A., Inc. v. Blocker, 735 F.Supp. 1239, 1240-41 (D.Del.1990). However, a court should reconsider a prior decision if it overlooked facts or precedent that reasonably would have altered the result. Id. (citing Weissman v. Fruchtman, 124 F.R.D. 559, 560 (S.D.N.Y.1989)).

B. *Contentions*

Chase contends that the Court's decision not to require PEWC to post a bond as a condition of setting aside the default judgment was in error. Chase maintains that a reconsideration is appropriate because there is both an error of fact and because new facts have developed demonstrating the financial problems and instability of PEWC. In addition, Chase contends that PEWC's evasive tactics in the past support the requirement that PEWC post a bond.

C. *Decision*

\*2 The Court concludes that new evidence has arisen that requires reconsideration of the decision refusing to order PEWC to post a bond. Rule 60(b) of the Federal Rules of Civil Procedure provides that a court may grant relief from a default judgment "upon such terms as are just." Fed.R.Civ.P. 60(b). Pursuant to Rule 60(b), courts may require that a defendant post a bond to secure the amount of the default judgment pending a trial on the merits. Wokan v. Alladin Int'l, Inc., 485 F.2d 1232, 1234 (3d Cir.1973) (citing Thorpe v. Thorpe, 364 F.2d 692, 694 (D.C.Cir.1966)); see also Charles Alan Wright & Arthur R. Miller, et al., 10A *Federal Practice & Procedure* § 2700 (noting that a court may ease the burden of reopening a default judgment by requiring the defaulting party to post a bond).

Chase has presented the Court with various news articles about PEWC that the Court views as strongly questioning PEWC's ability to satisfy a judgment entered against it in the future. A September 26, 2003, article reported that PEWC's chairman stepped down following PEWC's declaration of $734.4 million in losses. (D.I.897, Ex. F.) Further, on March 10, 2004, it was reported that PEWC would be delisted from the Taiwan Stock Exchange due to its failure to comply with disclosure requirements. (D.I.921, Ex. A.) Moreover, in an affidavit submitted by PEWC, which included a September 30, 2003, financial statement, PEWC represented that it had assets totaling $737,907,000--which, as Chase noted, is approximately a 63% decrease from PEWC's earlier representation that it had assets totaling $2.072 billion. In addition, PEWC's current ratio, calculated from the financial statements submitted by PEWC, is 0.6:1, which demonstrates that PEWC may have difficulty in covering the claims of short-term creditors with its current assets. See Charles R. Wright, *Understanding and Using Financial Data: An Ernst & Young Guide for Attorneys* 114 (2d ed.1996).

Further supporting the requirement that PEWC post a bond is that its liability has already been determined by the Court. In the March 2, 2004, Memorandum Opinion and Order, the Court sustained Chase's objections to the Magistrate Judge's Report and Recommendation denying Chase summary judgment on its breach of contract claim. (D.I.895.) And, as discussed in the February 13 Opinion, even if PEWC had transferred its interests in Iridium LLC to Pacific Asia Communications Ltd. ("Pacific Asia"), pursuant to the Agreement of Indirect Owner, PEWC contractually agreed to serve as the surety for Pacific Asia's obligation to pay its RCC obligations to Chase upon a proper demand. (D.I. 892 at 4-5; D.I. 647, Tab 1 at Ex. D.) Accordingly, PEWC may be responsible for the RCC obligation regardless of a transfer of its membership interests in Iridium LLC to Pacific Asia.

In sum, the Court is persuaded that newly discovered evidence and the grant of summary judgment against Defendants justifies reconsideration of the decision that PEWC not be required to post a bond as a condition of the setting aside of the default judgment entered against it on November 14, 2000.

CONCLUSION

\*3 For the reasons discussed, the Court will deny the Motion for an Extension filed by PEWC (D.I.903) and grant the Motion for Reconsideration filed by Chase. (D.I.898.)

An appropriate Order will be entered.

ORDER

At Wilmington, this *8* day of July, 2004, for the reasons discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:
1) Pacific Electric Wire and Cable Co., Ltd.'s ("PEWC") Motion For An Extension Of Time To

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1588295 (D.Del.)
**(Cite as: 2004 WL 1588295 (D.Del.))**

Page 3

Oppose Chase's Motion To Reconsider (D.I.903) is *DENIED;*

2) The Chase Manhattan Bank's Motion To Reconsider That Portion Of The Court's February 13, 2004 Order Which Denied Chase's Request That PEWC Be Required To Post A Bond (D.I.898) is *GRANTED.*

3) PEWC is ordered to post a bond for the amount of $10,872,999.05, plus interest accruing at a rate of 6.241 percent from November 14, 2000.

Not Reported in F.Supp.2d, 2004 WL 1588295 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

**THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY**

# EXHIBIT D

THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

# EXHIBIT E

# THIS EXHIBIT HAS BEEN REDACTED IN ITS ENTIRETY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Philip A. Rovner, hereby certify that on July 3, 2007, the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to the following; that the document was served on the following counsel as indicated; and that the document is available for viewing and downloading from CM/ECF.

**BY HAND DELIVERY AND E-MAIL**

Jeffrey B. Bove, Esq.
Mary W. Bourke, Esq.
Mark E. Freeman, Esq.
Jaclyn Mason, Esq.
Donna Hallowell
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899-2207
jbove@cblh.com; mbourke@cblh.com
mfreeman@cblh.com; jmason@cblh.com
dhallowell@cblh.com; cjeffers@cblh.com;
dhammond@cblh.com; mlambert@cblh.com

**BY EMAIL**

Dana K. Hammond, Esq.
M. Curt Lambert, Esq.
Connolly Bove Lodge & Hutz LLP
1007 N. Orange Street
Wilmington, DE 19899
jhammond@cblh.com; mlambert@cblh.com

Christopher E. Jeffers, Esq.
Connolly Bove Lodge & Hutz LLP
1990 M. Street, NW
Washington, DC 20036-3425
cjeffers@cblh.com

I hereby certify that on July 3, 2007 I have sent by E-mail the foregoing document to the following non-registered participants:

Bradford J. Badke, Esq.
Gabrielle Ciuffreda, Esq.
Ropes & Gray LLP
1211 Avenue of the Americas
New York, NY 10036-8704
bradford.badke@ropesgray.com; gabrielle.ciuffreda@ropesgray.com

/s/ Philip A. Rovner
Philip A. Rovner (#3215)
Potter Anderson & Corroon LLP
Hercules Plaza
P. O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com